FILED
2011 OCT 24 P 12:52
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Janet Lindner Spielberg (SBN 221926)
**LAW OFFICES OF JANET LINDNER SPIELBERG**
12400 Wilshire Boulevard, #400
Los Angeles, California 90025
Tel: (310) 392-8801
Fax: (310) 278-5938
Email: jlspielberg@jlslp.com

Michael D. Braun (SBN 167416)
**BRAUN LAW GROUP, P.C.**
10680 West Pico Boulevard, Suite 280
Los Angeles, California 90064
Tel: (310) 836-6000
Fax: (310) 836-6010
Email: service@braunlawgroup.com

Joseph N. Kravec, Jr. (*pro hac to be filed*)
Wyatt A. Lison (*pro hac to be filed*)
**STEMBER FEINSTEIN DOYLE & PAYNE LLC**
Allegheny Building, 17th Floor
429 Forbes Avenue
Pittsburgh, PA 15219
Tel: (412) 281-8400
Fax: (412) 281-1007
Email: jkravec@stemberfeinstein.com
Email: wlison@stemberfeinstein.com

***ATTORNEYS FOR PLAINTIFFS***

E-filing

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **TAMAR DAVIS LARSEN AND ARAN EISENSTAT, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**TRADER JOE'S COMPANY,**<br><br>**Defendant.** | CV 11 5188 MEJ<br>**CASE NO.:**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, by their attorneys, bring this class action against Defendant Trader Joe's Company ("Defendant" or "Trader Joe's"), on their own behalf and on behalf of all others similarly situated, and allege as follows based upon information and belief and the investigation of their counsel:

## INTRODUCTION

1. This is a class action brought on behalf of Plaintiffs and a nationwide class of consumers who, from October 24, 2007 through the present ("Class Period"), purchased Trader Joe's food products labeled as "All Natural" and "100% Natural"[1] even though they contain one or more of the following synthetic ingredients: ascorbic acid, potassium carbonate, sodium acid pyrophosphate, sodium citrate, xanthan gum, and vegetable mono- and diglycerides. Each of these ingredients is a recognized synthetic chemical or ingredient by federal regulations.[2] *See* 7 C.F.R. § 205.605(b).

2. Throughout the Class Period, Trader Joe's prominently makes the claim "All Natural" on the labels of its food products, cultivating a wholesome and healthful image in an effort to promote the sale of these products, even though its food products were actually not "All Natural." While the "All Natural" food products' labels did disclose that they contain ascorbic acid, cocoa processed with alkali, sodium acid pyrophosphate, sodium citrate, xanthan gum, and vegetable mono- and diglycerides, the labels did not disclose that these ingredients were synthetic. In light of the food labels' "All Natural" and representations, a reasonably prudent consumer would certainly not normally expect the food products to include synthetic or artificial ingredients. Indeed, as a result of this false and misleading labeling, Defendant was able to sell these purportedly "All Natural" and products to thousands of unsuspecting consumers in California and throughout the United States and to profit handsomely from these transactions.

---

[1] Trader Joe's has used both the terms "All Natural" and "100% Natural" on its products containing synthetic ingredients. Hereinafter, Plaintiffs will refer collectively to those two claims by use of the term "All Natural."

[2] As used throughout this Complaint, Trader Joe's foods or food products include the products identified in paragraph 24 of this Complaint.

3. Plaintiffs allege that Trader Joe's conduct gives rise to common law fraud, violates the unlawful, unfair, and fraudulent prongs of California's Business and Professions Code sections 17200, *et seq.* (the "UCL"), violates California's Business and Professions Code sections 17500, *et seq.* (the "FAL"), and violates the Consumers Legal Remedies Act of the California Civil Code §§ 1750, *et seq.* (the "CLRA"). Plaintiffs also allege that Trader Joe's conduct is grounds for restitution on the basis of quasi-contract/unjust enrichment.

4. Trader Joe's has its headquarters in Monrovia, California, and manages and directs its nationwide sales and business operations from its offices in California. It has distribution centers in San Jose, California, and in Stockton, California. Trader Joe's has major manufacturing, storage and distribution facilities in California, from which Trader Joe's operates and directs the majority, or at least a substantial proportion, of its nationwide sales and business operations. It is therefore believed and averred that a substantial portion of the misleading labeling and related misconduct at issue in this Complaint occurred, were conducted and/or were directed and emanated from California, including, but not limited to: a) the design of Trader Joe's products' packaging; b) the review, approval and revision of the products and labeling; and c) selection and integration of ingredients for the products.

5. Plaintiffs also seek injunctive and declaratory relief based upon Trader Joe's conduct asserted in this Complaint. As of the date of this Complaint, retail stores in California and throughout the United States are selling Trader Joe's food products labeled as "All Natural," even though they contain synthetic ingredients. Moreover, even if Trader Joe's elects to remove the "All Natural" representations from the labels, Trader Joe's is not presently enjoined from putting the "All Natural" representation back on its labels at any time it so decides, even if its food products still contain synthetic or artificial ingredients. Accordingly, Plaintiffs seek declaratory and injunctive relief to ensure that Trader Joe's removes any and all of the "All Natural" representations from labels on its food products available for purchase, and to prevent Defendant from making the "All Natural" representations on its food labels in the future as long as the food products continue to contain synthetic or artificial ingredients.

## PARTIES

6. Plaintiff Tamar Davis Larsen is currently a resident of Berkeley, California. From at least 2004 to the present, Ms. Larsen was domiciled in California, residing first in Oakland and then in Berkeley, California. Ms. Larsen is and, throughout the entire class period asserted herein, has been, very concerned about and tries to avoid consuming foods that are not natural, such as foods using synthetic or artificial chemical ingredients. For this reason, Ms. Larsen is willing to and has paid a premium for foods that are all natural and has refrained from buying their counterparts that were not all natural. During the Class Period, she purchased on average, one box of Joe-Joe's Chocolate Vanilla Creme Cookies every four months from the Trader Joe's located on College Avenue in Oakland, California. In the past year, she has purchased Trader Joe's Fresh Pressed Apple Juice approximately every four months, also from the Trader Joe's in Oakland, and may have purchased other Trader Joe's "All Natural" products from this store during the Class Period. Based on the "All Natural" representation on the Trader Joe's "All Natural" products labels, Ms. Larsen believed that the Trader Joe's "All Natural" products she purchased were all natural and relied on this representation in making her purchases. However, the Trader Joe's "All Natural" products Ms. Larsen purchased contained synthetic ingredients. While touting its products as "All Natural," the labels that Ms. Larsen relied on neither disclosed that synthetic ingredients were used in the products. Ms. Larsen not only purchased the Trader Joe's "All Natural" products because the label said it was "All Natural," but she paid more money for the Trader Joe's "All Natural" products she purchased than she would have had to pay for other similar products that were not all natural in that they contained synthetic or artificial ingredients. Had Ms. Larsen known the truth that Trader Joe's "All Natural" products were not all natural, she would not have purchased Trader Joe's "All Natural" products, but would have purchased other brands that were truly all natural or, if one was not available, would have purchased other non-natural products that were less expensive than Trader Joe's "All Natural" products. Ms. Larsen did not receive the "All Natural" products she bargained for when she purchased Trader Joe's "All Natural" products, and has lost money as a result in the form of paying a premium for Trader Joe's products because they were purportedly "All Natural," rather than paying the lesser amount for non-natural alternatives.

7. Plaintiff Aran Eisenstat is currently a resident of Ventura County, California. From at least October 5, 2007 to the present, Mr. Eisenstat was domiciled in California. Mr. Eisenstat is and, throughout the entire class period asserted herein, has been, very concerned about and tries to avoid consuming foods that are not natural. For this reason, Mr. Eisenstat is willing to and has paid a premium for foods that are all natural and has refrained from buying their counterparts that were not all natural. During the Class Period, Mr. Eisenstat purchased Trader Joe's Joe-Joe's Chocolate Sandwich Cream Cookies at least five times from the Trader Joe's stores in Agoura Hills, California and Thousand Oaks, California. Based on the "All Natural" representation on the Trader Joe's labels, Mr. Eisenstat believed that the products he purchased were all natural and relied on this representation in making his purchases. However, the Trader Joe's "All Natural" products Mr. Eisenstat purchased contained synthetic ingredients. While touting its products as "All Natural," the labels that Mr. Eisenstat relied on did not disclose that synthetic ingredients were used in these products. Mr. Eisenstat not only purchased Trader Joe's "All Natural" products because the labels said they "All Natural," but he paid more money for the products he purchased than he would have had to pay for other similar products that were not all natural. Had Mr. Eisenstat known the truth that Trader Joe's products were not all natural, he would not have purchased Trader Joe's products, but would have purchased other brands that were truly all natural or, if one was not available, would have purchased other non-natural products that were less expensive than Trader Joe's products. Mr. Eisenstat did not receive the "All Natural" products he bargained for when he purchased Trader Joe's "All Natural" products, and has lost money as a result in the form of paying a premium for these products because they were purportedly all natural, rather than paying the lesser amount for non-natural alternatives.

8. Trader Joe's, a privately held company, is a grocery chain with about 360 stores in about 29 states, approximately half of which are located in California. It was started as a Los Angeles convenience store chain called Pronto Markets in 1958, changed its name to Trader Joe's Company in 1967, and was bought in 1979 by two Germans, Karl and Theo Albrecht, who also founded the ALDI food chain. Trader Joe's is incorporated in California and maintains its headquarters at 800 S. Shamrock Avenue, Monrovia, CA 91016.

9. Trader Joe's offers upscale grocery fare such as health foods, organic produce, and nutritional supplements. The company brags that, "[i]f you see Trader Joe's on a label, then you can know that the product contains NO artificial flavors, colors or preservatives; NO genetically modified ingredients; NO MSG; and NO added Trans Fats. What does it contain? Quality ingredients."[3] Trader Joe's specialty is its line of more than 2,000 private products. In 2009, its annual sales were roughly $8 billion.

## JURISDICTION AND VENUE

10. Jurisdiction of this Court is proper under 28 U.S.C. §1332(d)(2). Diversity jurisdiction exists as Representative Plaintiffs Larsen and Eisenstat are California residents, residing in Alameda and Ventura Counties, respectively with the products at issue being purchased by them in Alameda, Los Angeles and Ventura Counties. Trader Joe's is incorporated in California and has its principal place of business in California. The nationwide class ("Class") consists of citizens and residents of states across the country.[4] The amount in controversy exceeds $5,000,000 for Representative Plaintiffs and Class members collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiffs and the Class, and the profits reaped by Trader Joe's from its transactions with Plaintiffs and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

11. Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of herein occurred and affected persons and entities are in this judicial district, and Trader Joe's has received substantial compensation from such transactions and business activity in this judicial district, including as the result of purchases of Trader Joe's "All Natural" food products from retail locations herein. Further, Trader Joe's inhabits and/or may be found in this judicial district, and the interstate trade and commerce described herein is and has been carried out in part within this judicial district.

---

[3] http://www.traderjoes.com/about/product-faq.asp.

[4] If a national class is not certified, Plaintiffs preserve the right, in the alternative, to seek class certification of a multi-state class as well as a California-wide sub-class against Trader Joe's.

## BACKGROUND

12. Although the Food and Drug Administration ("FDA") does not directly regulate the term "natural," the FDA has established a policy defining the outer boundaries of the use of that term by clarifying that a product is not natural if it contains color, artificial flavors, or synthetic substances. http://www.fda.gov/ForConsumers/ConsumerUpdates/ucm094536.htm and http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868.htm. Specifically, the FDA states: "the agency will maintain its policy (Ref. 32) regarding the use of 'natural,' as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food." 58 Fed. Reg. 2302, 2407 (Jan. 6, 2003).

13. Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes." 7 U.S.C. § 6502(21).

14. **Potassium carbonate (a/k/a "Cocoa Processed with Alkali").** Unsweetened baking Cocoa is typically rendered in one of two forms: Unalkalized cocoa or a version known as alkalized or Dutch-process cocoa. Unalkalized cocoa is light in color and somewhat acidic with a strong chocolate flavor. Alkalized cocoa is processed with an alkali to neutralize its acidity making it slightly milder in taste, with a deeper and warmer color than unalkalized cocoa. In order for cocoa to be used in its alkalized form, a Dutching or alkalization takes place during the processing of the cocoa beans. During this process an alkali—usually either potassium carbonate or sodium carbonate[5]—is suspended in water to neutralize acids and alter the pH level of the beans. This alkalizing agent darkens the cocoa, makes it milder in flavor and increases its dispersability. The FDA requires that "when any optional alkali ingredient" is used, "the name of the food shall be

---

[5] Besides the commonly used potassium carbonate and sodium carbonate, there are other less commonly used alkali substances approved for use in processing cocoa not listed herein that are identified at 21 C.F.R. § 163.112(b)(1). Significantly, sodium carbonate and sodium bicarbonate appear to be the only "safe and suitable" non-synthetic alkali substances approved for use in alkalizing cocoa. *Id.* Compare 7 C.F.R. § 205.605.

accompanied by the statement 'Processed with alkali', or 'Processed with ------', the blank being filled in with the common or usual name of the specific alkali ingredient used in the food." 21 C.F.R. § 163.112(c)(1). Trader Joe's foods that list the ingredient as "Cocoa Processed with Alkali" without identifying the alkalizing agent are processed with potassium carbonate, a recognized synthetic ingredient by regulation.[6] 7 C.F.R. § 205.605(b). Significantly, the other commonly used alkali in making alkalized cocoa—sodium carbonate—is a recognized non-synthetic, natural substance. 7 C.F.R. § 205.605(a).

15. **Ascorbic acid.** Ascorbic acid is an artificial, chemically modified form of Vitamin C used in foods as an antioxidant and as a preservative, and is a recognized synthetic by federal regulation. 7 C.F.R. § 205.605(b). Ascorbic acid is generally produced from corn or wheat starch being converted to glucose, then to sorbitol and then to ascorbic acid through a series of chemical processes and purification steps.

16. **Sodium acid pyrophosphate.** Sodium acid pyrophosphate (SAPP) is a recognized synthetic chemical by federal regulation (7 CFR § 205.605(b)) that is often used as a leavening agent in baked goods, in canning seafood to prevent grit from forming, and to prevent discoloration of potatoes and sugar syrups.

17. **Sodium citrate.** Sodium citrate is the sodium salt of citric acid made by reacting sodium carbonate with citric acid. It is a recognized synthetic under federal regulation (7 CFR 205.605(b)) that is used in food as a preservative and to provide a tart flavor in soft drinks, club soda, juices, and in some sausages.

18. **Xanthan gum.** Xanthan gum is a polysaccharide derived from the fermentation of sugars by the *Xanthomonas campesris* bacterium and purification using isopropyl alcohol. Xanthan gum is listed as a synthetic ingredient by federal regulation and is typically used as a thickening or stabilizing agent in beverages, and as an emulsifier in salad dressings. 7 C.F.R. § 205.605(b).

---

[6] To the extent Trader Joe's may claim some of its products may have to some degree used alkalized cocoa processed with one or more of these less commonly used alkali substances, it is believed and therefore averred by Plaintiff that Trader Joe's foods did not contain alkalized cocoa processed with one of the non-synthetic alkali substances, and instead contained alkalized cocoa processed with one of the synthetic alkali substances.

19. **Vegetable mono- or diglycerides.** Glycerides, also called acylglycerols, are ester forms of glycerol. Mono- and diglycerides are made from fatty acids by heating oil (often palm oil) for up to three hours at a high temperature and passing hydrogen gas through it in the presence of a metal catalyst. Mono- and diglycerides are recognized synthetic chemicals by federal regulation (7 CFR § 205.605(b)) and are most often added to foods as an emulsifier, but can also be added to baked goods, low-fat spreads, peanut butter and ice creams to control texture.

20. As explained in the next section of this Complaint, Trader Joe's "All Natural" food products have throughout the Class Period used one or more of the aforementioned synthetic ingredients, but its labeling never disclosed they were synthetic ingredients, despite the "All Natural" representation on its food product labels.

## TRADER JOE'S USE OF NON-NATURAL INGREDIENTS

21. American consumers are health conscious and look for wholesome, natural foods to keep a healthy diet so they frequently take nutrition information into consideration in selecting and purchasing food items. Product package labels, including nutrition labels, are vehicles that convey nutrition information to consumers that they can and do use to make purchasing decisions. As noted by FDA Commissioner Margaret Hamburg during an October 2009 media briefing, "[s]tudies show that consumers trust and believe the nutrition facts information and that many consumers use it to help them build a healthy diet."

22. The prevalence of claims about nutritional content on food packaging in the United States has increased in recent years as manufacturers have sought to provide consumers with nutrition information and thereby influence their purchasing decisions. The results of a recent FDA Food Label and Package Survey found that approximately 4.8 percent of food products sold in the United States had either a health claim or a qualified health claim on the food package, and that more than half (53.2%) of the food products reviewed had nutrient content claims on the packaging.

23. Trader Joe's food products labeled as "All Natural" contain synthetic ingredients as identified above.[7] While Trader Joe's "All Natural" food products' labels did disclose that they

---

[7] In the event discovery of this action reveals additional Trader Joe's "All Natural" food products contain synthetic or artificial ingredients, or reveals that those Trader Joe's "All Natural" food

contained these ingredients,[8] those labels did not disclose that these ingredients were synthetic. This omission is significant and material given Trader Joe's "All Natural" representation on the food products labels. Based on the "All Natural" representation, one would normally expect that none of the ingredients in Trader Joe's food products would be synthetic or artificial.

24. According to its labels, Trader Joe's food products contain the recognized synthetic ingredients identified herein, as follows:

a. Joe-Joe's Chocolate Vanilla Creme Cookies (potassium carbonate);

b. Joe-Joe's Chocolate Sandwich Creme Cookies (potassium carbonate);

c. Trader Joe's Jumbo Cinnamon Rolls (sodium acid pyrophosphate; xanthan gum; vegetable mono- and diglycerides);

d. Trader Joe's Buttermilk Biscuits (sodium acid pyrophosphate; xanthan gum);

e. Trader Joe's Crescent Rolls (sodium acid pyrophosphate; xanthan gum);

f. Trader Giotto's 100% Natural Fat Free Ricotta Cheese (xanthan gum);

g. Trader Joe's Fruit Jellies (sodium citrate; ascorbic acid); and

h. Trader Joe's Fresh Pressed Apple Juice (ascorbic acid).

25. The labeling of products as "All Natural" carries implicit health benefits important to consumers – benefits that consumers are often willing to pay a premium for over comparable products that are not "All Natural." Trader Joe's has cultivated and reinforced a corporate image that has catered to this "All Natural" theme and has boldly emblazed this claim on each and every one of its foods identified above, despite the fact Trader Joe's uses synthetic ingredients in the products identified above.

---

products identified herein contain additional synthetic or artificial ingredients not identified in this Complaint, Plaintiff reserves the right to amend her allegations to include such additional ingredients.

[8] The potassium carbonate contained in Trader Joe's food products described herein was not separately listed on Trader Joe's food labels, but was instead identified on the labels as "Cocoa Processed with Alkali."

26. Trader Joe's has used the "All Natural" label to shape its brand and sell its foods. Yet, the existence of synthetic ingredients in its food products renders the use of the label "All Natural," false and misleading. In manufacturing its food products, Trader Joe's had a choice between using natural or synthetic and artificial ingredients. It chose to use synthetic ingredients, but nonetheless labeled its food products as "All Natural."

## CLASS ACTION ALLEGATIONS

27. Plaintiffs bring this action on behalf of themselves and on behalf of all other members of the Class ("Class"), defined as all persons who, on or after October 5, 2007, purchased in the United States Trader Joe's food products that were labeled "All Natural" but contained non-natural ingredients. Plaintiffs bring this Class pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2) and 23(b)(3).

28. Excluded from the Class are: (i) Trader Joe's and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned and any members of their immediate families.

29. Upon information and belief, there are tens of thousands of Class members who are geographically dispersed throughout the United States. Therefore, individual joinder of all members of the Class would be impracticable.

30. Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual class members. These common legal or factual questions include:

a. Whether Trader Joe's labels its food products as "All Natural;"

b. whether Trader Joe's uses ascorbic acid, potassium carbonate, sodium acid pyrophosphate, sodium citrate, xanthan gum, vegetable mono- and diglycerides or other ingredients recognized by federal regulation as synthetic or artificial in its food products labeled as "All Natural";

c. whether Trader Joe's "All Natural" labeling of its food products is likely to deceive class members or the general public;

d. whether Trader Joe's representations are unlawful; and

e. the appropriate measure of damages, resitutionary disgorgement and/or restitution.

31. Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs were consumers who purchased Trader Joe's "All Natural" food products in the United States that contained synthetic ingredients during the Class Period. Plaintiffs, therefore, are no different in any relevant respect from any other Class member, and the relief sought is common to the Class.

32. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation. Plaintiffs and their counsel will adequately protect the interests of the Class.

33. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member likely will be relatively small, especially given the relatively small cost of the food products at issue and the burden and expense of individual prosecution of the complex litigation necessitated by Trader Joe's conduct. Thus, it would be virtually impossible for Class members individually to effectively redress the wrongs done to them. Moreover, even if Class members could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

34. In the alternative, the Class may be certified because Trader Joe's has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to the Class.

**FIRST CAUSE OF ACTION**
**(Common Law Fraud)**

35. Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint and restate them as if they were fully written herein.

36. Trader Joe's uniformly misrepresented on its food products' labels during the Class Period that the food products were "All Natural," when in fact they contain synthetic ingredients,

including, but not limited to: ascorbic acid, potassium carbonate, sodium acid pyrophosphate, sodium citrate, xanthan gum, and vegetable mono- and diglycerides. While Trader Joe's's labels did uniformly disclose during the Class Period that its "All Natural" foods contained these ingredients,[9] the labels uniformly did not disclose during the Class Period that these ingredients are synthetic or disclose generally that the product contained ingredients that are synthetic or artificial.

37. Thus, the claim on Trader Joe's labels that the food products were "All Natural" constitutes an affirmative act of concealment and non-disclosure since ascorbic acid, potassium carbonate, sodium acid pyrophosphate, sodium citrate, xanthan gum, and vegetable mono- and diglycerides are synthetic ingredients. Trader Joe's had a duty to disclose this material information in light of its representation on its labels that its food was "All Natural."

38. Trader Joe's "All Natural" statements and representations and its affirmative concealments and omissions described herein were material in that there was a substantial likelihood that a reasonable prospective purchaser of its food products would have considered them important when deciding whether or not to purchase the foods.

39. Trader Joe's knew or recklessly disregarded that its food products were not "All Natural," and uniformly misrepresented its foods as "All Natural" and affirmatively concealed and omitted the truth with the intent and purpose of inducing consumers (*i.e.*, Plaintiffs and Class members) to purchase its food products.

40. Trader Joe's failed to disclose, misrepresented and/or concealed the foregoing material facts from Plaintiffs and the Class knowing that these facts may have justifiably induced them to refrain from purchasing Trader Joe's food products and instead to purchase another manufacturer's products that were actually all natural, or to purchase a less expensive non-natural substitute product.

41. As set forth in paragraphs 6 and 7 of this Complaint, Plaintiffs relied on Trader Joe's "All Natural" representations on its food labels as a material basis for her decisions to purchase

---

[9] Potassium carbonate contained in the alkalized cocoa as described herein was not separately listed on Trader Joe's food labels, but was instead identified on the labels as "Cocoa Processed with Alkali."

Trader Joe's food products. Moreover, based on the very materiality of Trader Joe's misrepresentations, concealments and omissions uniformly made on or omitted from its food products' labels, Class members' reliance on those misrepresentations, concealments and omissions as a material basis for their decision to purchase Trader Joe's "All Natural" foods may be presumed or inferred for all Class members.

42. Trader Joe's carried out the scheme set forth in this Complaint willfully, wantonly and with reckless disregard for the interests of Plaintiffs and the Class.

43. By reason of the foregoing, Plaintiffs and members of the Class have been injured by purchasing foods represented to be "All Natural" which were not, and/or by paying a premium for those supposedly "All Natural" products over less expensive non-natural alternatives. Plaintiffs and the Class are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

**SECOND CAUSE OF ACTION**
**("Unlawful" Business Practices in Violation of**
**The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)**

44. Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint and restate them as if they were fully written herein.

45. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

46. A business act or practice is "unlawful" if it violates any established state or federal law.

47. California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Article 6, Section 110660 provides that: "Any food is misbranded if its labeling is false or misleading in any particular."

48. Trader Joe's has violated, and continues to violate the Sherman Law, Article 6, Section 110660, and hence has also violated and continues to violate the "unlawful" prong of the UCL, through its use of the term "All Natural" on the labels of its food products that contained one

or more of these synthetic ingredients: ascorbic acid, potassium carbonate, sodium acid pyrophosphate, sodium citrate, xanthan gum, and vegetable mono- or diglycerides. This identical conduct also violates the FDA Policy concerning what is "natural" as set forth in paragraph 12 and throughout this Complaint. This identical conduct also serves as the sole factual basis of each cause of action brought by this Complaint, and Plaintiffs do not seek to enforce any of the state law claims raised herein to impose any standard of conduct that exceeds that which would violate the FDA Policy concerning what is "natural."

49. By committing the acts and practices alleged above, Trader Joe's has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

50. Through its unlawful acts and practices, Trader Joe's has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiffs request that this Court cause Trader Joe's to restore this money to Plaintiffs and all Class members, to disgorge the profits Trader Joe's made on these transactions, and to enjoin Trader Joe's from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future as discussed herein. Otherwise, the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## THIRD CAUSE OF ACTION
**("Unfair" Business Practices in Violation of**
**The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)**

51. Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint and restate them as if they were fully written herein.

52. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

53. A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

54. Trader Joe's has and continues to violate the "unfair" prong of the UCL through its misleading description of its food products as "All Natural" when one or more of its ingredients are not natural. The gravity of the harm to members of the Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications and/or motives of Trader Joe's for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Trader Joe's has engaged, and continues to be engaged, in unfair business practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

55. Through its unfair acts and practices, Trader Joe's has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiffs request that this Court cause Trader Joe's to restore this money to Plaintiffs and all Class members, to disgorge the profits Trader Joe's has made on its food products, and to enjoin Trader Joe's from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future as discussed herein. Otherwise, the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**FOURTH CAUSE OF ACTION**
**("Fraudulent" Business Practices in Violation of**
**The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)**

56. Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint and restate them as if they were fully written herein.

57. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

58. A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

59. Trader Joe's acts and practices of mislabeling food products as "All Natural" despite the fact that they contain synthetic ingredients has the effect of misleading consumers into believing the product is something it is not.

60. As a result of the conduct described above, Trader Joe's has been, and will continue to be, unjustly enriched at the expense of Plaintiffs and members of the Class. Specifically, Trader Joe's has been unjustly enriched by the profits it has obtained from Plaintiffs and the Class from the purchases of food products made by Trader Joe's.

61. Through its unfair acts and practices, Trader Joe's has improperly obtained, and continues to improperly obtain, money from members of the Class. As such, Plaintiffs request that this Court cause Trader Joe's to restore this money to Plaintiffs and all Class members, to disgorge the profits Trader Joe's has made on its food products, and to enjoin Trader Joe's from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future as discussed herein. Otherwise, the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**FIFTH CAUSE OF ACTION**
**(False Advertising in Violation of**
**California Business & Professions Code §§ 17500, *et seq.*)**

62. Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint and restate them as if they were fully written herein.

63. Trader Joe's uses advertising on its packaging to sell its food products. Trader Joe's is disseminating advertising concerning its goods which by its very nature is deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§ 17500, *et seq.* because those advertising statements contained on Trader Joe's food labels are misleading and likely to deceive, and continue to deceive, members of the putative class and the general public.

64. In making and disseminating the statements alleged herein, Trader Joe's knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§ 17500, *et seq.*

65. The misrepresentations and non-disclosures by Trader Joe's of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§ 17500, *et seq.*

66. Through its deceptive acts and practices, Trader Joe's has improperly and illegally obtained money from Plaintiffs and members of the Class. As such, Plaintiffs request that this Court

cause Trader Joe's to restore this money to Plaintiffs and members of Class, and to enjoin Trader Joe's from continuing to violate California Business & Professions Code §§17500, *et seq.*, as discussed above. Otherwise, Plaintiffs and those similarly situated will continue to be harmed by Trader Joe's false and/or misleading advertising.

67. Pursuant to California Business & Professions Code § 17535, Plaintiffs seek an order of this Court ordering Trader Joe's to fully disclose the true nature of its misrepresentations. Plaintiffs additionally request an order requiring Trader Joe's to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Trader Joe's by means of such acts of false advertising, plus interest and attorneys fees so as to restore any and all monies which were acquired and obtained by means of such untrue and misleading advertising, misrepresentations and omissions, and which ill-gotten gains are still retained by Trader Joe's. Plaintiffs and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

68. Such conduct is ongoing and continues to this date. Plaintiffs and the Class are therefore entitled to the relief described below.

**SIXTH CAUSE OF ACTION**
**(Violation of the Consumers Legal Remedies Act,**
**California Civil Code §§ 1750, *et seq.*)**

69. Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint and restate them as if they were fully written herein. This action is brought on behalf of Plaintiffs, the Class and the general public.

70. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (the "CLRA").

71. Plaintiffs and each member of the proposed Class are "consumers" within the meaning of Civil Code §1761(d).

72. The purchases of Trader Joe's "All Natural" food products by consumers constitute "transactions" within the meaning of Civil Code § 1761(e) and the food products offered by Trader Joe's constitute "goods" within the meaning of Civil Code § 1761(a).

73. Trader Joe's has violated, and continues to violate, the CLRA in at least the following respects:

a. in violation of Civil Code §1770(a)(5), Trader Joe's represents that the transaction had characteristics which it did not have;

b. in violation of Civil Code § 1770(a)(7), Trader Joe's represents that its goods were of a particular standard, quality or grade, which they were not; and

c. in violation of Civil Code § 1770(a)(9), Trader Joe's advertised its goods with the intent not to provide what it advertised.

74. Plaintiffs and the members of the Class request that this Court enjoin Trader Joe's from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code § 1780(a)(2). Unless Trader Joe's is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Trader Joe's "All Natural" food products will be damaged by its acts and practices in the same way as have Plaintiffs and the members of the proposed Class.

75. Prior to filing their action, pursuant to Civil Code § 1782, on April 1, 2011, Plaintiffs' counsel notified Trader Joe's in writing of particular violations of the CLRA, and demanded that Trader Joe's repair, or otherwise rectify problems associated with its illegal behavior detailed above which are in violation of Civil Code § 1770. To the extent that additional violations of § 1770 have been identified since the time of the original notification, Plaintiffs are sending a supplemental letter to Trader Joe's that sets forth these additional violations.

76. Trader Joe's responded to the CLRA letter in a letter dated May 5, 2011, stated that it had "decided to remove the 'natural' descriptor" from its Joe-Joe's cookies. Trader Joe's did not indicate when it intended to affect this removal, and, on information and belief, Joe-Joe's cookies including the "All Natural" label continue to be sold. Trader Joe's did not refund monies paid or take any other action to repair or rectify the problems associated with its illegal behavior detailed above, or promise to do so with respect to those persons, such as Plaintiffs and the Class, who purchased Trader Joe's "All Natural" food products since October 2007. Trader Joe's has failed to adequately respond to Plaintiffs' demand within 30 days of Plaintiffs' notice, pursuant to Civil Code

1782(b). Accordingly, Plaintiffs hereby request the following damages as provided for in Civil Code 1780:

a. Actual damages in excess of the jurisdictional limits of this Court;

b. statutory damages allowable under Civil Code § 1780;

c. punitive damages; and

d. any other relief which the Court deems proper; and court costs and attorneys' fees.

77. With respect to those violations of Civil Code § 1770 as to which notification was not previously sent, if Trader Joe's fails to respond adequately within 30 days of Plaintiffs' supplemental notice, pursuant to Civil Code § 1782(d), Plaintiffs hereby request, and may amend or seek leave to amend the Complaint to request, damages as provided for in Civil Code § 1780:

a. Actual damages in excess of the jurisdictional limits of this Court;

b. statutory damages allowable under Civil Code § 1780;

c. punitive damages; and

d. any other relief which the Court deems proper; and court costs and attorneys' fees.

**SEVENTH CAUSE OF ACTION**
**(Restitution Based On Quasi-Contract/Unjust Enrichment)**

78. Plaintiffs hereby incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully rewritten herein. Plaintiffs plead this Count in the alternative.

79. Trader Joe's conduct in enticing Plaintiffs and the Class to purchase its food products through its false and misleading packaging as described throughout this Complaint is unlawful because the statements contained on its product labels are untrue. Trader Joe's took monies from Plaintiffs and Class members for foods promised to be "All Natural," even though the food products it sold are not natural as specified throughout this Complaint. Trader Joe's has been unjustly enriched at the expense of Plaintiffs and Class members as result of its unlawful conduct alleged

herein, thereby creating a quasi-contractual obligation on Trader Joe's to restore these ill-gotten gains to Plaintiffs and the Class.

80. As a direct and proximate result of Trader Joe's unjust enrichment, Plaintiffs and Class members are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

**PRAYER**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the Class, request award and relief as follows:

A. An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs be appointed Class Representatives and Plaintiffs' counsel be appointed Counsel for the Class.

B. Restitution in such amount that Plaintiffs and all Class members paid to purchase Trader Joe's "All Natural" food products or paid as a premium over non-natural alternatives, or restitutionary disgorgement of the profits Trader Joe's obtained from those transactions.

C. Compensatory damages.

D. Statutory damages allowable under Civil Code § 1780.

E. Punitive Damages.

F. A declaration and order enjoining Trader Joe's from advertising its products misleadingly, in violation of California's Sherman Food, Drug and Cosmetic Law and other applicable laws and regulations as specified in this Complaint.

G. An order awarding Plaintiffs their costs of suit, including reasonable attorneys' fees and pre and post-judgment interest.

H. An order requiring an accounting for, and imposition of, a constructive trust upon, all monies received by Trader Joe's as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein.

I. Such other and further relief as may be deemed necessary or appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all causes of action and/or issues so triable.

DATED: October 24, 2011

Respectfully Submitted,

Janet Lindner Spielberg (Bar No. 221926)

**LAW OFFICE OF JANET LINDNER SPIELBERG**
12400 Wilshire Blvd., Suite 400
Los Angeles, CA 90025
Phone: (310) 392-8801
Fax: (310) 278-5938
E-Mail: jlspielberg@jlslp.com

Joseph N. Kravec, Jr.
Wyatt A. Lison
**STEMBER FEINSTEIN DOYLE & PAYNE, LLC**
429 Forbes Avenue, 17th Floor
Pittsburgh, PA 15219
Tel: (412) 281-8400
Fax: (412) 281-1007
Email: jkravec@stemberfeinstein.com
wlison@stemberfeinstein.com

Michael D. Braun (Bar No. 167416)
**BRAUN LAW GROUP, P.C.**
10680 W. Pico Blvd., Suite 280
Los Angeles, CA 90064
Phone: (310) 836-6000
Fax: (310) 836-6010
E-Mail: service@braunlawgroup.com

***ATTORNEYS FOR PLAINTIFFS***

# EXHIBIT 1

Janet Lindner Spielberg (SBN 221926)
**LAW OFFICES OF JANET LINDNER SPIELBERG**
12400 Wilshire Boulevard, #400
Los Angeles, California 90025
Tel: (310) 392-8801
Fax: (310) 278-5938
Email: jlspielberg@jlslp.com

Michael D. Braun (SBN 167416)
**BRAUN LAW GROUP, P.C.**
10680 West Pico Boulevard, Suite 280
Los Angeles, California 90064
Tel: (310) 836-6000
Fax: (310) 836-6010
Email: service@braunlawgroup.com

Joseph N. Kravec, Jr. (*pro hac* to be filed)
Maureen Davidson-Welling (*pro hac* to be filed)
Wyatt A. Lison (*pro hac* to be filed)
**STEMBER FEINSTEIN DOYLE & PAYNE LLC**
Allegheny Building, 17th Floor
429 Forbes Avenue
Pittsburgh, PA 15219
Tel: (412) 281-8400
Fax: (412) 281-1007
Email: jkravec@stemberfeinstein.com
Email: mdavidsonwelling@stemberfeinstein.com
Email: wlison@stemberfeinstein.com

***ATTORNEYS FOR PLAINTIFFS***

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**TAMAR DAVIS LARSEN and ARAN EISENSTAT, on behalf of themselves and all others similarly situated,**

**Plaintiff,**

**v.**

**TRADER JOE'S COMPANY,**

**Defendant.**

**CASE NO.:**

**CLASS ACTION**

**DECLARATION OF TAMAR DAVIS LARSEN PURSUANT TO CIVIL CODE § 1780(d)**

1. I, Tamar Davis Larsen, submit this declaration pursuant to Cal.Civ.Code § 1780(d) of the Consumers Legal Remedies Act, which provides that an action seeking damages, an injunction, restitution, punitive damages or other relief under the CLRA may only be commenced in a county in which the defendant resides, has its principal place of business, or is doing business, or in the county where the transaction at issue took place or any substantial portion thereof occurred.

2. I currently reside in Berkeley, California and am a named plaintiff in the Complaint filed in the above-entitled action.

3. Trader Joe's Company is doing business in Alameda County because I have been to its store in Oakland, Alameda County, California and have seen products subject to the Complaint in Trader Joe's store in Oakland, Alameda County, California.

4. I purchased Trader Joe's Joe-Joe's Chocolate Vanilla Creme Cookies and Fresh Pressed Apple Juice, which are subjects of the Complaint, in Alameda County, California at a Trader Joe's store located in Oakland, Alameda County, California.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9 day of September, 2011, at 1:30 p.m.

T. Larsen

Tamar Davis Larsen