Janet Linder Spielberg (Bar No. 221926)
**LAW OFFICE OF JANET LINDER**
   **SPIELBERG**
12400 Wilshire Blvd., Suite 400
 Los Angeles, CA 90025
Tel: (310) 392-8801
Fax: (310) 278-5938
Email: jlspielberg@jlslp.com

Michael D. Braun (Bar No. 167416)
**BRAUN LAW GROUP, P.C.**
10680 W. Pico Blvd., Suite 280
Los Angeles, CA 90025
Tel: (310) 836-6000
Fax: (310) 836-6010
Email: service@braunlawgroup.com

Joseph N. Kravec, Jr. (admitted *pro hac vice*)
Wyatt A. Lison (*pro hac* to be filed)
**STEMBER FEINSTEIN DOYLE**
   **PAYNE & KRAVEC, LLC**
429 Forbes Avenue, 17th Floor
Pittsburgh, PA 15219
Tel: (412) 281-8400
Fax: (412) 281-1007
Email: jkravec@stemberfeinstein.com
       wlison@stemberfeinstein.com

*ATTORNEYS FOR PLAINTIFFS*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **TAMAR DAVIS LARSEN AND ARAN EISENSTAT, on behalf of themselves and all others similarly situated,**<br><br>    **Plaintiffs,**<br><br>    **v.**<br><br>**TRADER JOE'S COMPANY, a California Corporation,**<br><br>    **Defendant.** | **CASE NO.:  3:11-cv-05188-SI**<br><br>**CLASS ACTION**<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, by their attorneys, bring this class action against Defendant Trader Joe's Company ("Defendant" or "Trader Joe's"), on their own behalf and on behalf of all others similarly situated, and allege as follows based upon information and belief and the investigation of their counsel:

## INTRODUCTION

1.    This is a class action on behalf of Plaintiffs and a nationwide class of consumers who, from October 24, 2007 through the present ("Class Period"), purchased Trader Joe's food products labeled, marketed and sold as being "All Natural" and/or "100% Natural"[1] even though they contained one or more of the following synthetic ingredients: Ascorbic Acid, Potassium Carbonate, Sodium Acid Pyrophosphate, Xanthan Gum, and Vegetable Mono and Diglycerides.  Each of these ingredients is recognized as a synthetic chemical or ingredient by federal regulations.  *See* 7 C.F.R. § 205.605(b).[2]

2.    Throughout the Class Period, Trader Joe's prominently made the claim "All Natural" on the Trader Joe's Products, cultivating a wholesome and healthful image in an effort to promote the sale of these products, even though its food products were actually <u>not</u> all natural.  While the "All Natural" Trader Joe's Products' labels did disclose that they contained Ascorbic Acid, Sodium Acid Pyrophosphate, Xanthan Gum, and Vegetable Mono and Diglycerides, the labels did not disclose that these ingredients were synthetic.  Moreover, Trader Joe's never disclosed the Potassium Carbonate in any of the Trader Joe's Products, listing it instead as cocoa (processed with alkali) as further described in Paragraph 24, *infra*.  In light of the "All Natural" representations on the Trader Joe's Products' labels, a reasonably prudent consumer would certainly not normally expect the food products to include synthetic or artificial ingredients.  Indeed, as a result of this false and misleading labeling, Trader Joe's was able to sell these purportedly "All Natural" Trader Joe's Products to

_____

[1] Trader Joe's has used both the terms "All Natural" and "100% Natural" on its products containing synthetic ingredients.  Hereinafter, Plaintiffs will refer to those two claims collectively by use of the term "All Natural."

[2] As used throughout this Second Amended Complaint, Trader Joe's food products (collectively, the "Trader Joe's Products"), include and refer to the products identified in Paragraph 39 of this Second Amended Complaint and shown in Exhibit 1 attached hereto.

thousands of unsuspecting consumers in California and throughout the United States and to profit handsomely from these transactions.

3.      Plaintiffs allege that Trader Joe's conduct violates the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* (the "MMWA"), gives rise to common law fraud, violates the unlawful, unfair, and fraudulent prongs of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* (the "UCL"), violates the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* (the "FAL"), and violates the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* (the "CLRA").  Plaintiffs also allege that Trader Joe's conduct is grounds for restitution on the basis of quasi-contract/unjust enrichment.

4.      Trader Joe's has its headquarters in Monrovia, California, and operates, manages and directs its nationwide sales and business operations from its offices in California.  Trader Joe's also maintains distribution centers in San Jose, California, and in Stockton, California.  Trader Joe's has major manufacturing, storage and distribution facilities in California, from which Trader Joe's operates and directs the majority, or at least a substantial proportion, of its nationwide sales and business operations.  It is therefore believed and averred that a substantial portion of the misleading labeling and related misconduct at issue in this Second Amended Complaint occurred, was conducted and/or was directed and emanated from California, including, but not limited to: a) the design of the Trader Joe's Products' packaging; b) the review, approval and revision of the Trader Joe's Products and labeling; c) the selection and integration of ingredients into the Trader Joe's Products; d) the distribution of the Trader Joe's Products nationwide; and e) the management and supervision of sales operations to Plaintiffs and the Class (as defined herein).

5.      Plaintiffs also seek injunctive and declaratory relief based upon Trader Joe's conduct asserted in this Second Amended Complaint. As of the date of this Second Amended Complaint, retail stores in California and throughout the United States are selling Trader Joe's Products labeled as "All Natural," even though they contain synthetic ingredients. Moreover, even if Trader Joe's elects to remove the "All Natural" representation from the labels, Trader Joe's is not presently enjoined from putting the "All Natural" representation back on its labels at any time it so decides, even if its food products still contain unnatural, synthetic, or artificial ingredients. Accordingly,

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief; Case No.: 3:11-cv-05188-SI

1   Plaintiffs seek declaratory and injunctive relief to ensure that Trader Joe's removes any and all of the

2   "All Natural" representations from labels on its food products available for purchase, and to prevent

3   Trader Joe's from making the "All Natural" representation on its food products' labels in the future

4   as long as the food products continue to contain synthetic or artificial ingredients.

5                                              **PARTIES**

6           6.       Plaintiff Tamar Davis Larsen is currently a resident of Berkeley, California.  From at

7   least 2004 to the present, Ms. Larsen was domiciled in California, residing first in Oakland and then

8   in Berkeley, California.  Ms. Larsen is, and throughout the entire class period asserted herein has

9   been, very concerned about and tries to avoid consuming foods that are not natural, such as foods

10  containing synthetic, artificial or chemical ingredients.  For this reason, Ms. Larsen is willing to pay

11  and has paid a premium for foods that are all natural, and has endeavored to refrain from buying

12  equivalent foods which are not natural and which do contain synthetic, artificial, or chemical

13  ingredients.  During the Class Period, she purchased on average, one box of Trader Joe's Joe-Joe's

14  Chocolate Vanilla Creme Cookies every four months from the Trader Joe's store located on College

15  Avenue in Oakland, California, and has purchased Trader Joe's Fresh Pressed Apple Juice

16  approximately once every four months, also from the Trader Joe's in Oakland, California.  After

17  filing her original complaint on October 24, 2011 in which she stated that she believed purchased

18  other Trader Joe's "All Natural" food products that she did not then recall the identity of, Ms. Larsen

19  saw labels for additional Trader Joe's products labeled as being "All Natural," and remembered that

20  in addition to the above, she purchased Trader Joe's Chocolate Sandwich Cream Cookies once every

21  3 months for the past three years from the Trader Joe's located on College Avenue in Oakland,

22  California; Trader Joe's Jumbo Cinnamon Rolls once a year for the past three years from the Trader

23  Joe's located on College Avenue in Oakland, California; Trader Joe's Buttermilk Biscuits twice a

24  year over the past two-and-a-half years from the same store; and Trader Joe's Trader Giotto's 100%

25  Natural Fat Free Ricotta Cheese twice a year for the past two years from the same Trader Joe's store

26  in Oakland, California.  Ms. Larsen has not purchased any of these products since learning in

27  September 2011 that Trader Joe's "All Natural" food products contain synthetic ingredients.

28

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief; Case No.: 3:11-cv-05188-SI

7.     Based on the "All Natural" representation on Trader Joe's labels, Ms. Larsen believed that the Trader Joe's "All Natural" products she purchased were all natural and relied on this representation in making her purchases.  However, the Trader Joe's "All Natural" products Ms. Larsen purchased contained synthetic ingredients.  While touting its products as "All Natural," the labels that Ms. Larsen relied on did not disclose that synthetic ingredients were used in the products. Ms. Larsen not only purchased Trader Joe's "All Natural" products because the label said they was "All Natural," but she paid more money for Trader Joe's "All Natural" products she purchased than she would have had to pay for other similar products that were not all natural in that they contained synthetic or artificial ingredients.  Had Ms. Larsen known the truth that Trader Joe's "All Natural" products were not all natural, she would not have purchased Trader Joe's products, but would have purchased other brands that were truly all natural or, if one was not available, would have purchased other non-natural products that were less expensive than Trader Joe's "All Natural" products.  Ms. Larsen did not receive the "All Natural" products she bargained for when she purchased Trader Joe's "All Natural" products, and has lost money as a result in the form of paying a premium for Trader Joe's products because they were purportedly "All Natural," rather than paying the lesser amount for non-natural alternatives.

8.     Plaintiff Aran Eisenstat is currently a resident of Ventura County, California.  From at least October 24, 2007 to the present, Mr. Eisenstat was domiciled in California.  Mr. Eisenstat is, and throughout the entire class period asserted herein has been, very concerned about and tries to avoid consuming foods that are not natural, such as foods containing synthetic, artificial or chemical ingredients.  For this reason, Mr. Eisenstat is willing to pay and has paid a premium for foods that are all natural, and has endeavored to refrain from buying equivalent foods which are not natural and which do contain synthetic, artificial, or chemical ingredients.  During the Class Period, Mr. Eisenstat purchased Trader Joe's Joe-Joe's Chocolate Sandwich Cream Cookies at least five times from the Trader Joe's stores in Agoura Hills, California and Thousand Oaks, California.  Based on the "All Natural" representation on Trader Joe's labels, Mr. Eisenstat believed that the Trader Joe's "All Natural" product he purchased was all natural and relied on this representation in making his purchases.  However, the Trader Joe's "All Natural" product Mr. Eisenstat purchased contained

synthetic ingredients.  While touting its products as "All Natural," the labels that Mr. Eisenstat relied on did not disclose that synthetic ingredients were used in the product.  Mr. Eisenstat not only purchased Trader Joe's "All Natural" product because the label said it was "All Natural," but he paid more money for the Trader Joe's "All Natural" product he purchased than he would have had to pay for other similar products that were not all natural in that they contained synthetic or artificial ingredients.  Had Mr. Eisenstat known the truth that Trader Joe's "All Natural" product was not all natural, he would not have purchased Trader Joe's product, but would have purchased another brand that was truly all natural or, if one was not available, would have purchased another non-natural product that was less expensive than Trader Joe's "All Natural" product.  Mr. Eisenstat did not receive the "All Natural" product he bargained for when he purchased Trader Joe's "All Natural" product, and has lost money as a result in the form of paying a premium for Trader Joe's products because they were purportedly "All Natural," rather than paying the lesser amount for a non-natural alternative.

9.      Trader Joe's, a privately held company, is a grocery chain with about 385 stores in about 35 states and Washington, D.C., nearly half of which are located in California.[3]  It was started as a Los Angeles convenience store chain called Pronto Markets in 1958, changed its name to Trader Joe's Company in 1967, and was bought in 1979 by two Germans, Karl and Theo Albrecht, who also founded the ALDI food chain.  Trader Joe's is incorporated in California and maintains its headquarters at 800 S. Shamrock Avenue, Monrovia, CA  91016.

10.      Trader Joe's offers upscale grocery fare such as health foods, organic produce, and nutritional supplements.  The company brags that, "[i]f you see Trader Joe's on a label, then you can know that the product contains NO artificial flavors, colors or preservatives; NO genetically modified ingredients; NO MSG; and NO added Trans Fats. What does it contain? Quality

---

[3] *See* http://www.traderjoes.com/pdf/locations/all-llocations.pdf (last accessed March 19, 2012).

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief; Case No.: 3:11-cv-05188-SI

ingredients."[4]  Trader Joe's specialty is its line of more than 2,000 private-labeled products.  In 2009, its annual sales were roughly $8 billion.

## JURISDICTION AND VENUE

11.    Jurisdiction of this Court is proper under 28 U.S.C. §1332(d)(2).   Diversity jurisdiction exists as Representative Plaintiffs Larsen and Eisenstat are California residents, residing in Alameda and Ventura Counties, respectively with the products at issue being purchased by them in Alameda, Los Angeles and Ventura Counties.  Trader Joe's is incorporated in California and has its principal place of business in California.  The nationwide class ("Class") consists of citizens and residents of states across the country.[5]   The amount in controversy exceeds $5,000,000 for Representative Plaintiffs and Class members collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiffs and the Class, and the profits reaped by Trader Joe's from its transactions with Plaintiffs and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

12.    Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of herein occurred and affected persons and entities are in this judicial district, and Trader Joe's has received substantial compensation from such transactions and business activity in this judicial district, including as the result of purchases of the Trader Joe's "All Natural" Products from retail locations herein.  Further, Trader Joe's inhabits and/or may be found in this judicial district, and the interstate trade and commerce described herein is and has been carried out in part within this judicial district.

---

[4]  *See* Trader Joe's Products FAQ at http://www.traderjoes.com/about/product-faq.asp, question 1, attached hereto as Exhibit 2.

[5]  If a national class is not certified, Plaintiffs reserve the right, in the alternative, to seek class certification of a multi-state class against Trader Joe's for those counts for which a nationwide Class has been asserted.

# BACKGROUND

13.     Webster's New World Dictionary defines "natural" as "produced or existing in nature; not artificial or manufactured."[6]  "All" is defined as "the whole extent or quantity of," (*Id.*, "all," definition no. 1 at p. 36) and 100% is synonymous with "all."  Thus, the combined use of "All Natural" or "100% Natural" on the labels of Trader Joe's Products indicates to the average reasonable person that "the whole extent or quantity of" the ingredients contained in the food products are "produced or existing in nature; not artificial or manufactured."

14.     Trader Joe's made a far broader and more encompassing representation by labeling the Trader Joe's Products as "All Natural" as opposed to simply saying they were "natural."  While federal regulators have established policies or regulations addressing the meaning of "natural" when used in food labeling, no regulations have specifically addressed the broader representation made by labeling a product as "all natural," and the only policy to address "all natural" labeling requires disclosure of any synthetic or artificial ingredients so as to indicate they are not natural.  However, it is noteworthy that although the broader "All Natural" representation was made on the Trader Joe's Products' labels, the presence of synthetic or artificial ingredients in them also violates the federal regulators' policy and regulations for the narrower "natural" representation.

15.     The United States Food and Drug Administration ("FDA") – which has responsibility for regulating the labeling of the food products at issue in this case as well as many other foods – has not promulgated regulations defining the terms "natural" or "all natural."  However, the agency has established a policy defining the outer boundaries of the use of the term "natural" by clarifying that a product is ***not*** natural if it contains color, artificial flavors, or synthetic substances.  http://www.fda.gov/ForConsumers/ConsumerUpdates/ucm094536.htm[7]                                and http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868.htm.[8]     Specifically, the FDA

---

[6] *Webster's New World Dictionary of the American Language*, 2nd College Ed. (Simon & Schuster, 1984), "natural," definition no. 2 at p.947.

[7] Attached hereto as Exhibit 3.

[8] Attached hereto as Exhibit 4.

states: "the agency will maintain its policy (Ref. 32) regarding the use of 'natural,' as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food." 58 Fed. Reg. 2302, 2407 (Jan. 6, 2003). Although this definition is not a regulation, it is the "most definitive statement of the agency's view." [9]

16.     Courts and trade members have requested that the FDA provide a regulatory definition of "natural," however, the FDA has declined to provide a determination because the time required to conduct a public hearing "would take two to three years to complete," and the agency's resources are currently devoted to other, higher priorities."[10]

17.     Similar to the FDA, the United States Department of Agriculture ("USDA"), which regulates the labeling of meat and poultry, has also set limits on the use of the term "natural."   The USDA's Food Safety and Inspection Service states that the term "natural" may be used on labeling of meat and poultry products so long as "(1) the product does not contain any artificial flavor or flavorings, color ingredient, or chemical preservative … or any other artificial or synthetic ingredient, and (2) the product and its ingredients are not more than minimally processed."[11]

18.     According to the USDA, "[m]inimal processing may include: (a) those traditional processes used to make food edible or to preserve it or to make it safe for human consumption, e.g., smoking, roasting, freezing, drying, and fermenting, or (b) those physical processes which do not fundamentally alter the raw product and/or which only separate a whole, intact food into component parts, e.g., grinding meat, separating eggs into albumen and yolk, and pressing fruits to produce

---

[9] *See* letter from Michael M. Landa, Acting Director, Center for Food Safety and Applied Nutrition to Judge Jerome B. Simandle dated September 16, 2010, filed in *Ries et al., v. Hornell Brewing Co., Inc.*, Case No. 10-1139 (N.D. Cal.), Docket No. 54, attached hereto as Exhibit 5.

[10] *See Id.* (Letter to Judge Simandle).

[11] *See* the United States Department of Agriculture Food Standards and Labeling Policy book available at http://www.fsis.usda.gov/OPPDE/larc/Policies/Labeling_Policy_Book_082005.pdf (last visited March 19, 2012), excerpts also attached hereto as Exhibit 6 at p. 5.

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief; Case No.: 3:11-cv-05188-SI

juices."[12]  However, "[r]elatively severe processes, e.g., solvent extraction, acid hydrolysis, and chemical bleaching would clearly be considered more than minimal processing."[13]

19.     Under the USDA's guidelines, if a product is severely processed, the product can be labeled "All Natural" if the ingredient would not significantly change the character of the product to the point that it could no longer be considered a natural product.  However, even in that case, ***"the natural claim must be qualified to clearly and conspicuously identify the ingredient, e.g., all natural or all natural ingredients except dextrose, modified food starch, etc."***[14] (emphasis added).

20.     The terms "synthetic" and "artificial" closely resemble each other and in common parlance are taken as synonymous.  The scientific community defines "artificial" as something not found in nature, whereas a "synthetic" is defined as something man-made, whether it merely mimics nature or is not found in nature.[15]  In the scientific community, "synthetic" includes substances that are also "artificial," but a synthetic substance also can be artificial or non-artificial.[16]  However, the common understanding of "artificial" resembles the scientific community's definition of "synthetic." Indeed, Webster's New World Dictionary defines "artificial" as "anything made by human work, especially if in intimation of something natural," whereas "synthetic" is defined as "a substance that is produced by chemical synthesis and is used as a substitute for a natural substance which it resembles."[17]

21.     Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted

---

[12] Id.

[13] Id.

[14] Id.

[15] Peter E. Nielsen, *Natural-synthetic-artificial!*, Artificial DNA: PNA & XNA, Volume 1, Issue 1 (July/August/September 2010), available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3109441/ and attached hereto as Exhibit 7.

[16] Id.

[17] Webster's New World Dictionary of the American Language, 2nd College Ed. (Simon & Schuster, 1984), "artificial," definition SYN at p.79.

from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes."  7 U.S.C. § 6502(21).  *See also* 7 C.F.R. § 205.2 (defining, in USDA's National Organic Program regulations, a "nonsynthetic" as "a substance that is derived from mineral, plant, or animal matter and does not undergo a synthetic process as defined in section 6502(21) of the Act (7 U.S.C. § 6502(21)").

22.    In addition to defining "synthetic," federal authorities have also expressly recognized numerous chemicals as synthetics, as discussed in the following paragraphs.

### SYNTHETIC INGREDIENTS

23.    **Ascorbic Acid**. Ascorbic acid is a chemically modified form of vitamin C used in foods as a chemical preservative (21 C.F.R. § 182.3013) that is a recognized synthetic by federal regulation.  7 C.F.R. 205.605(b).  Unlike natural vitamin C, synthetic Ascorbic Acid is generally produced from corn or wheat starch being converted to glucose, then to sorbitol and then to Ascorbic Acid through a series of chemical processes and purification steps.

24.    **Potassium Carbonate**. Unsweetened baking cocoa is typically rendered in one of two forms: un-alkalized cocoa or a version known as alkalized or Dutch-processed cocoa. Un-alkalized cocoa is light in color and somewhat acidic with a strong chocolate flavor. Alkalized cocoa is processed with an alkali to neutralize its acidity making it slightly milder in taste, with a deeper and warmer color than un-alkalized cocoa. In order for cocoa to be used in its alkalized form, a "Dutching" or alkalization takes place during the processing of the cocoa beans.  During this process an alkali – usually either Potassium Carbonate or sodium carbonate[18] – is suspended in water to neutralize acids and alter the pH level of the beans.  This alkalizing agent darkens the cocoa, makes it milder in flavor and increases its dispersability.  The FDA requires that "when any optional alkali ingredient" is used, "the name of the food shall be accompanied by the statement 'Processed with alkali', or 'Processed with ------', the blank being filled in with the common or usual name of the

---

[18] Besides the commonly used Potassium Carbonate and sodium carbonate, there are other less commonly used alkali substances approved for use in processing cocoa not listed herein that are identified at 21 C.F.R. § 163.112(b)(1). Significantly, sodium carbonate and sodium bicarbonate appear to be the only "safe and suitable" non-synthetic alkali substances approved for use in alkalizing cocoa. *Id.* Compare 7 C.F.R. § 205.605.

specific alkali ingredient used in the food." 21 C.F.R. § 163.112(c)(1).  Trader Joe's foods that list the ingredient as "Cocoa Processed with Alkali" without identifying the alkalizing agent are processed with potassium carbonate, a recognized synthetic ingredient by regulation.[19]  7 C.F.R. § 205.605(b).  Significantly, the other commonly used alkali in making alkalized cocoa – sodium carbonate – is a recognized non-synthetic, natural substance.  7 C.F.R. § 205.605(a).

25.    **Sodium Acid Pyrophosphate**. Sodium Acid Pyrophosphate (also frequently known as SAPP, disodium dihydrogen pyrophosphate, or disodium dihydrogen diphosphate)[20] is a recognized synthetic chemical by federal regulation.  7 C.F.R. § 205.605(b).   Sodium Acid Pyrophosphate is a chemical preservative often used as a leavening agent in baked goods, in canning seafood to prevent grit from forming, and to prevent discoloration of potatoes and sugar syrups.  The FDA recently issued a warning letter to another company indicating that the use of the term "All Natural" on the label of a food product containing Sodium Acid Pyrophosphate renders the product's label false and misleading.[21]

26.    **Vegetable Mono and Diglycerides.**  Glycerides, also called acylglycerols, are ester forms of glycerol.  Mono and Diglycerides are made from fatty acids by heating oil (often palm oil) for up to three hours at a high temperature and passing hydrogen gas through it in the presence of a metal catalyst.  Mono and Diglycerides are recognized synthetic chemicals by federal regulation (7

---

[19]   To the extent Trader Joe's may claim some of its products may have to some degree used alkalized cocoa processed with one or more of these less commonly used alkali substances, it is believed and therefore averred by Plaintiffs that Trader Joe's Products did not contain alkalized cocoa processed with one of the non-synthetic alkali substances, and instead contained alkalized cocoa processed with one of the synthetic alkali substances.

[20]   For full list of synonyms of sodium acid pyrophosphate from the National Institute of Health, *see* http://pubchem.ncbi.nlm.nih.gov/summary/summary.cgi?cid=24451, also attached hereto as Exhibit 8.

[21]   *See* November 16, 2011 Warning Letter to Alexia Foods, Inc. online at http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm281118.htm ("[b]ecause your products contain this synthetic ingredient [disodium dihydrogen pyrophosphate], the use of the claim 'All Natural' on this product label is false and misleading, and therefore your product is misbranded under section 403(a)(1) of the Act"), also attached hereto as Exhibit 9.

CFR § 205.605(b)) and are most often added to foods as an emulsifier, but can also be added to baked goods, low-fat spreads, peanut butter and ice creams to control texture.

27. **Xanthan gum**. Xanthan Gum is a polysaccharide derived from the fermentation of sugars by the *Xanthomonas campesris* bacterium and purification using isopropyl alcohol. Xanthan Gum is listed as a synthetic ingredient by federal regulation and is typically used as a thickening or stabilizing agent in beverages, and as an emulsifier in salad dressings. 7 C.F.R. § 205.605(b).

28. As explained in the next section of this Second Amended Complaint, the Trader Joe's "All Natural" Products have throughout the Class Period used one or more of the aforementioned synthetic ingredients, but its labeling never disclosed they were synthetic ingredients despite the "All Natural" representation on the food products' labels.[22]

## TRADER JOE'S USE OF NON-NATURAL INGREDIENTS

29. American consumers are health conscious and look for wholesome, natural foods to keep a healthy diet, so they frequently take nutrition information into consideration in selecting and purchasing food items. Product package labels, including nutrition labels, are vehicles that convey nutrition information to consumers that they can and do use to make purchasing decisions. As noted by FDA commissioner Margaret Hamburg during an October 2009 media briefing, "[s]tudies show that consumers trust and believe the nutrition facts information and that many consumers use it to help them build a healthy diet."

30. The prevalence of claims about nutritional content on food packaging in the United States has increased in recent years as manufacturers have sought to provide consumers with nutrition information and thereby influence their purchasing decisions. The results of the FDA's recent Food Label and Package Survey found that approximately 4.8 percent of food products sold in the United States had either a health claim or a qualified health claim on the food package, and that more than half (53.2%) of the food products reviewed had nutrient content claims on the packaging.

---

[22] In the event that discovery of this action reveals additional Trader Joe's "All Natural" products that contain synthetic or artificial ingredients, or reveals that those Trader Joe's "All Natural" food products identified herein contain additional synthetic or artificial ingredients not identified in this Second Amended Complaint, Plaintiffs reserves the right to amend their allegations to include such additional products or ingredients.

31.     American consumers are increasingly seeking "All Natural" ingredients in the foods they purchase.  Although this segment of the health food market was once a niche market, natural foods are increasingly becoming part of the mainstream food landscape.  According to *Natural Foods Merchandiser*, a leading information provider for the natural, organic and healthy products industry, the natural food industry enjoyed over $81 billion in total revenue in 2010, and grew over 7% in 2009.[23]  The market for all natural and organic foods grew 9% in 2010 to $39 billion, and 2010 sales were 63% higher than sales in 2005.[24]  Consumer demand for all natural and organic foods is expected to grow 103% between 2010 and 2015 with annual sales exceeding $78 billion in 2015.[25]

32.     Consumers desire "All Natural" ingredients in food products for a myriad of reasons, including wanting to live a healthier lifestyle, perceived benefits in avoiding disease and other chronic conditions, as well as to increase weight loss and avoid chemical additives in their food. The "All Natural" branding also appears to appeal to individual consumers' interest in supporting sustainable living and environmentally sensitive food consumption, helping the environment, assisting local farmers, assisting factory workers who would otherwise be exposed to synthetic and hazardous substances, and financially supporting the companies that share these values.  As a result, consumers are willing to pay a higher price for "all natural" and organic food and beverages.

33.     According to an article in *The Economist*, "natural" products are a fast growing market because of the power of "mother nature" in the hands of marketers, which conjures up images of heart-warming wholesomeness and rustic simplicity.  According to this publication, a

---

[23] *See Natural and Organic Products Industry Sales Hit $81 Billion*, Natural Foods Merchandiser, (June 1, 2011), available at: http://www.prnewswire.com/news-releases/natural-and-organic-products-industry-sales-hit-81-billion-122958763.html and attached hereto as Exhibit 10.

[24] http://www.marketwire.com/press-release/natural-and-organic-food-and-beverage-market-to-double-by-2015-1525854.htm (last visited March 2, 2012) attached hereto as Exhibit 11.

[25] *Id.*

---

chief selling point of the organic-food industry is that no man-made chemicals are used in the production process.[26]

34.   In order to capture and tap into this growing market and the hunger of consumers for the perceived healthier, chemical free benefits of "all natural" foods, Trader Joe's labels and advertises the Trader Joe's Products as being "All Natural."

35.   A reasonable consumer's understanding of the term "natural" comports with federal regulators and common meaning.  That is, a reasonable consumer understands the term "natural" to mean that none of the ingredients are synthetic and none of the ingredients are artificial.  When the term "natural" is broadened to "All Natural" as Trader Joe's did, there is no question that a reasonable consumer understands the term "All Natural" to mean that none of the ingredients are synthetic and none of the ingredients are artificial.  In other words, by claiming that the Trader Joe's Products are "All Natural," Trader Joe's raised the bar and both warranted and represented to consumers that these products contain only natural ingredients, and that none of the components of these products is artificial or synthetic.

36.   Consumers lack the meaningful ability to test or independently ascertain the truthfulness of food labeling claims such as "all natural," especially at the point of sale.  Consumers would not know the true nature of the ingredients merely by reading the ingredient label; its discovery requires investigation beyond the grocery store and knowledge of food chemistry beyond that of the average consumer.  Thus, reasonable consumers must and do rely on food companies such as Trader Joe's to honestly report the nature of a food's ingredients, and food companies such as Trader Joe's intend and know that consumers rely upon food labeling statements in making their purchasing decisions.  Such reliance by consumers is also eminently reasonable, since food companies are prohibited from making false or misleading statements on their products under federal law.

---

[26] *Chemical Blessings: What Rousseau got Wrong*, The Economist, (February 4, 2008) available at: http://www.economist.com/node/10633398 and attached hereto as Exhibit 12.

37.     While Trader Joe's labeled and advertised the Trader Joe's Products as "All Natural," the products labeled as "All Natural" contained synthetic ingredients, including but not limited to the ingredients identified above in paragraphs 23 through 27.  While the Trader Joe's Products' labels did disclose that these products contained many of the synthetic substances, the labels did not disclose that these ingredients were synthetic, and in some cases did not identify that these components existed in the products at all (e.g., Potassium Carbonate).  These omissions are significant and material given the Trader Joe's Products' "All Natural" representation on the products' labels.  Based on the "All Natural" representations, one would normally expect that none of the ingredients in the "All Natural" Trader Joe's Products would be synthetic or artificial.

38.     Trader Joe's knew that it made the "All Natural" representation in regard to the Trader Joe's Products, as the statement appears on the products' packaging.  Trader Joe's also knew that this claim was false and misleading, because it knew what ingredients were contained in each of the products and had the ability to know, and did know, that many of the ingredients in the products are synthetic.   Indeed, all of the synthetic ingredients at issue in the Trader Joe's Products labeled "All Natural" are recognized as synthetic chemicals by federal regulations.

39.     According to the ingredients listed on the Trader Joe's Products' labels (*see* Exhibit 1), and in direct contrast to Trader Joe's promises on those labels, the products labeled as "All Natural" each contain between one and three recognized synthetic ingredients identified herein, as follows:[27]

> a.  Joe-Joe's Chocolate Vanilla Creme Cookies:  Potassium Carbonate.
>
> b.  Joe-Joe's Chocolate Sandwich Creme Cookies:  Potassium carbonate.
>
> c.  Trader Joe's Jumbo Cinnamon Roll:  Sodium Acid Pyrophosphate, Xanthan Gum, and Vegetable Mono and Diglycerides.
>
> d.  Trader Joe's Buttermilk Biscuits:  Sodium Acid Pyrophosphate and Xanthan Gum.

---

[27] *See* Exhibit 13, a table showing the Trader Joe's Products and the synthetic ingredients included in each.

1          e.   Trader Joe's Crescent Rolls:  Sodium Acid Pyrophosphate and Xanthan Gum.

2          f.   Trader Giotto's 100% Natural Fat Free Ricotta Cheese:  Xanthan Gum.

3          h.   Trader Joe's Fresh Pressed Apple Juice:  Ascorbic acid.

4          40.    The labeling of products as "All Natural" carries implicit health benefits important to

5    consumers – benefits that consumers are often willing to pay a premium for over comparable

6    products that are not "All Natural."  Trader Joe's has cultivated and reinforced a corporate image

7    that has catered to this "natural" theme and has boldly emblazed the "All Natural" claim on the

8    Trader Joe's Products' labels, despite the fact that these products contain synthetic ingredients.

9          41.    Trader Joe's has used the "All Natural" label to shape its brand and sell its food

10   products.  Yet, the existence of synthetic ingredients in the Trader Joe's Products renders the use of

11   the label "All Natural" false and misleading.  Trader Joe's chose to use synthetic ingredients, but

12   nonetheless labeled the Trader Joe's Products as "All Natural."

13                    **TRADER JOE'S HAS REFUSED TO CEASE ITS WRONGDOING**

14         42.    Trader Joe's has been notified by Plaintiffs on behalf of themselves and all class

15   members that the Trader Joe's Products have been falsely and misleadingly labeled as "All Natural"

16   when they in fact contain synthetic and artificial substances. On April 1, 2011, Plaintiffs' counsel

17   notified Trader Joe's in writing that Trader Joe's Joe-Joe's Cookies were unlawfully labeled as "All

18   Natural" despite being made with a synthetic ingredient, potassium carbonate.  This letter demanded

19   that Trader Joe's take the following steps to cure these defects: remove the "All Natural" statement

20   from its Joe-Joe's Cookies' packaging, provide for an accounting of Trader Joe's profits from the

21   sale of its Joe-Joe's Cookies, pay restitution to Plaintiffs and all other putative class members, and

22   agree not to advertise its products containing potassium carbonate as natural.

23         43.    Trader Joe's responded to the April 1, 2011 letter in a letter dated May 5, 2011,

24   stating that it had "decided to remove the 'natural' descriptor" from its Joe-Joe's cookies.  Trader

25   Joe's did not indicate when it intended to affect this removal, and as of January 12, 2012, Joe-Joe's

26   Cookies including the "All Natural" label continue to be sold by Trader Joe's.  Trader Joe's did not

27   refund monies paid or take any other action to repair or rectify the problems associated with its

28   unlawful behavior detailed above, or promise to do so with respect to those persons, such as

---

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief; Case No.: 3:11-cv-05188-SI

1  Plaintiffs and the Class, who purchased Trader Joe's "All Natural" Joe-Joe's Cookies since October

2  2007.

3     44.    On January 13, 2012 Plaintiffs sent a second correspondence to Trader Joe's,

4  describing Plaintiffs' purchases of Trader Joe's Joe-Joe's Chocolate Vanilla Creme Cookies,

5  Chocolate Sandwich Cream Cookies, Fresh Pressed Apple Juice, Buttermilk Biscuits, Jumbo

6  Cinnamon Rolls, and Fat Free Ricotta Cheese, based upon these products' labels' assertion that they

7  were "All Natural."  This correspondence further notified Trader Joe's that these and other food

8  products sold by Trader Joe's and labeled as being "All Natural" contained Ascorbic Acid,

9  Potassium Carbonate, Sodium Acid Pyrophosphate, Xanthan Gum, and Vegetable Mono and

10  Diglycerides, and that each of these ingredients was not natural.  This letter reiterated the same cure

11  demands set forth in the April 1, 2011 letter for all of Trader Joe's products labeled as being "All

12  Natural" but containing non-natural ingredients.

13     45.    Although Trader Joe's has received ample notice that the Trader Joe's Products were

14  falsely and misleadingly labeled "All Natural" when the products contained synthetic substances,

15  and although Trader Joe's has had reasonable opportunity to cure or otherwise remedy the harms to

16  Plaintiffs and Class members caused by these defects, Trader Joe's has failed to do so.

17              **TRADER JOE'S FRAUDULENTLY CONCEALED ITS WRONGDOING**

18     46.    The Trader Joe's Products labeled "All Natural" contain synthetic ingredients as

19  identified above.  Trader Joe's did not disclose the identity of Potassium Carbonate on any of its

20  products' labels it is contain in.  A reasonably prudent consumer buying the Trader Joe's Products

21  would have no reason to suspect that the "All Natural" labeled products contained synthetic

22  Potassium Carbonate.

23     47.    Moreover, while the Trader Joe's "All Natural" Products' labels did include the

24  following in the ingredient list: Ascorbic Acid, Sodium Acid Pyrophosphate, Xanthan Gum, and

25  Vegetable Mono and Diglycerides, those labels did not disclose that any of these ingredients were

26  synthetic, and therefore not natural.  Nor did Trader Joe's otherwise disclose this information to

27  Plaintiffs and members of the Class.  Indeed, whether Ascorbic Acid, Sodium Acid Pyrophosphate,

28  Xanthan Gum, or Vegetable Mono and Diglycerides are synthetic or natural is not something

Plaintiffs or any other average reasonable consumer buying the Trader Joe's Products would know since that information is not common knowledge.  That, combined with Trader Joe's active concealment in representing the Trader Joe's Products as "All Natural" and not disclosing otherwise, gave the average reasonable consumer no reason to suspect that Trader Joe's representations on the packages that the products are "All Natural" were not true, and therefore consumers had no reason to investigate whether these ingredients are synthetic or natural.

48.     As such, Trader Joe's concealed the non-natural nature of the ingredients in the Trader Joe's Products.

## CLASS ACTION ALLEGATIONS

49.     Plaintiffs bring this action on behalf of themselves and on behalf of all other members of the Class ("Class"), defined as all persons who, on or after October 24, 2007, purchased in the United States Trader Joe's food products that were labeled "All Natural" or "100% Natural" but contained synthetic ingredients as identified in this Second Amended Complaint.  Plaintiffs bring this Class pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2) and 23(b)(3).

50.     Excluded from the Class are: (i) Trader Joe's and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned and any members of their immediate families.

51.     Upon information and belief, there are tens of thousands of Class members who are geographically dispersed throughout the United States. Therefore, individual joinder of all members of the Class would be impracticable.

52.     Common questions of law or fact exist as to all members of the Class.   These questions predominate over the questions affective only individual class members. These common legal or factual questions include:

        a.   Whether Trader Joe's labels its food products as "All Natural" or "100% Natural;"

        b.   whether the Trader Joe's Products that contain Ascorbic Acid, Potassium Carbonate, Sodium Acid Pyrophosphate, Vegetable Mono and Diglycerides, Xanthan Gum, or other ingredients recognized by federal regulation as synthetic or artificial are "All Natural" or "100% Natural;"

        c.   whether Trader Joe's "All Natural" or "100% Natural" labeling of its food products is likely to deceive Class members or the general public;

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief; Case No.: 3:11-cv-05188-SI

d.  whether Trader Joe's representations are unlawful; and

e.  the appropriate measure of damages, restitutionary disgorgement, or restitution.

53.     Plaintiffs' claims are typical of the claims of the Class, in that Plaintiffs were consumers who purchased Trader Joe's "All Natural" and "100% Natural" food products in the United States that contained synthetic ingredients during the Class Period.  Plaintiffs, therefore, are no different in any relevant respect from any other Class member, and the relief sought is common to the Class.

54.     Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation, including food mislabeling class actions such as this one.  Plaintiffs and their counsel will adequately protect the interests of the Class.

55.     A class action is superior to other available means for the fair and efficient adjudication of this dispute.  The damages suffered by each individual Class member likely will be relatively small, especially given the relatively small cost of the food products at issue and the burden and expense of individual prosecution of the complex litigation necessitated by Trader Joe's conduct.  Thus, it would be virtually impossible for Class members individually to effectively redress the wrongs done to them.  Moreover, even if Class members could afford individual actions, it would still not be preferable to class-wide litigation.  Individualized actions present the potential for inconsistent or contradictory judgments.   By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court

56.     In the alternative, the Class may be certified because Trader Joe's has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to the Class.

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief; Case No.: 3:11-cv-05188-SI

## FIRST CAUSE OF ACTION
### (Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*
### Violation of Written Warranty Under Federal Law)

57.     Plaintiffs hereby incorporate all other paragraphs of this Second Amended Complaint and restate them as if they were fully set forth herein.  This claim is brought by Plaintiffs on behalf of themselves and the Class solely for breach of federal law.  This claim is not based on any violation of state law.

58.     The MMWA, 15 U.S.C. §§ 2301 *et seq.*, creates a private federal cause of action for breach of a "written warranty" as defined by the Act.  15 U.S.C. § 2301(6) and § 2310(d)(1).

59.     The Trader Joe's Products are "consumer products" as that term is defined by 15 U.S.C. § 2301(1), as they constitute tangible personal property which is distributed in commerce and which is normally used for personal, family or household purposes.

60.     Plaintiffs and members of the Class are "consumers" as defined by 15 U.S.C. § 2301(3), since they are buyers of the Trader Joe's Products for purposes other than resale.

61.     Trader Joe's is an entity engaged in the business of making its food products available, either directly or indirectly, to consumers such as Plaintiffs and the Class.  As such, Trader Joe's is a "supplier" as defined in 15 U.S.C. § 2301(4).

62.     Through its labeling, Trader Joe's gave and offered a written warranty to consumers relating to the nature and quality of the ingredients in the Trader Joe's Products.  As a result, Trader Joe's is a "warrantor" within the meaning of 15 U.S.C. § 2301(5).

63.     Trader Joe's provided a "written warranty" within the meaning of 15 U.S.C. 2301(6) for the Trader Joe's Products by identifying the ingredients in the ingredients list on each of the food products, and then prominently affirming and promising in writing on the labeling of the food products that the food products were "All Natural" or "100% Natural" as described in this Second Amended Complaint.  These affirmations of fact regarding the nature and qualities of the ingredients in the Trader Joe's Products constituted, and were intended to convey to purchasers, a written promise that the ingredients in the products were free of a particular type of defect (i.e., that they were not synthetic or artificial).  As such, these written promises and affirmations were part of the basis of Plaintiffs' and the Class' bargain with Trader Joe's in purchasing the Trader Joe's Products.

64.     Trader Joe's breached the written warranty by failing to provide and supply the Trader Joe's Products containing only non-synthetic, non-artificial ingredients.  Since the ingredients in the Trader Joe's Products did not have the requisite qualities and character promised by Trader Joe's written warranty, the products were therefore not defect free, and did not comply with Trader Joe's obligation under the written warranty to supply "All Natural" or "100% Natural" products to Plaintiffs and the Class.

65.     Trader Joe's was provided notice and a reasonable opportunity to cure the defects in the Trader Joe's Products and remedy the harm to Plaintiffs and the Class, but failed to do so, as set forth above in paragraphs 42-45.

66.     Plaintiffs and members of the Class were injured by Trader Joe's failure to comply with its obligations under the written warranty, since Plaintiffs and members of the Class paid for products that did not have the promised qualities and nature, did not receive the non-synthetic, defect-free food products that were promised to them and that they bargained for, paid a premium for the Trader Joe's Products when they could have instead purchased other less expensive alternative food products, and lost the opportunity to purchase and consume other, truly all-natural food products that would provide the type of non-synthetic ingredients promised and warranted by Trader Joe's but which the Trader Joe's Products failed to provide or were incapable of providing.

67.     Plaintiffs and the Class therefore for this claim seek and are entitled to recover "damages and other legal and equitable relief" and "costs and expenses (including attorneys' fees based upon actual time expended)" as provided in 15 U.S.C. § 2310(d).

**SECOND CAUSE OF ACTION**
**(Common Law Fraud)**

68.     Plaintiffs hereby incorporate the foregoing paragraphs of this Second Amended Complaint and restate them as if they were fully written herein.

69.     Trader Joe's uniformly misrepresented on the Trader Joe Products' labels during the Class Period that the products were "All Natural" or "100% Natural," when in fact they contain synthetic ingredients, including, but not limited to: Ascorbic Acid, Potassium Carbonate, Sodium Acid Pyrophosphate, Xanthan Gum, and Vegetable Mono and Diglycerides.  While the Trader Joe's

Products' labels did uniformly disclose that the purportedly "All Natural" food products contained these ingredients,[28] the labels uniformly did not disclose that these ingredients were synthetic or artificial.

70.     Thus, the claim on Trader Joe's labels that the Trader Joe's Products were "All Natural" or "100% Natural" constitutes an affirmative act of concealment and non-disclosure since Ascorbic Acid, Potassium Carbonate, Sodium Acid Pyrophosphate, Xanthan Gum, and Vegetable Mono and Diglycerides are synthetic, non-natural ingredients.  Trader Joe's had a duty to disclose this material information in light of its representation on its labels that the Trader Joe's Products were "All Natural."

71.     Trader Joe's "All Natural" and "100% Natural" statements and representations and its affirmative concealments and omissions described herein were material in that there was a substantial likelihood that a reasonable prospective purchaser of the Trader Joe's Products would have considered them important when deciding whether or not to purchase the products.

72.     Trader Joe's knew or recklessly disregarded the likelihood that the Trader Joe's Products were not "All Natural" or "100% Natural," uniformly misrepresented the Trader Joe's Products as "All Natural" and "100% Natural" and affirmatively concealed and omitted the truth with the intent and purpose of inducing consumers (*i.e.,* Plaintiffs and the Class) to purchase the Trader Joe's Products.

73.     Trader Joe's failed to disclose, misrepresented and/or concealed the foregoing material facts from Plaintiffs and the Class knowing that these facts may have justifiably induced them to refrain from purchasing the Trader Joe's Products and instead to purchase another manufacturer's food products that were actually all natural, or to purchase less expensive non-natural substitute food products.

74.     As set forth in paragraphs 6-8 of this Second Amended Complaint, Plaintiffs relied upon Trader Joe's "All Natural" and "100% Natural" representations on the Trader Joe's Products'

---

[28]   Potassium carbonate contained in the alkalized cocoa as described herein was not separately listed on Trader Joe's food labels, but was instead identified on the labels as "cocoa processed with alkali."

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief; Case No.: 3:11-cv-05188-SI

labels as a material basis for their decisions to purchase the Trader Joe's Products. Moreover, based on the materiality of Trader Joe's misrepresentations, concealments, and omissions uniformly made on or omitted from the Trader Joe's Products' labels, reliance on those misrepresentations, concealments and omissions as a material basis for the decision to purchase the Trader Joe's Products may be presumed or inferred for all members of the Class.

75.     Trader Joe's carried out the scheme set forth in this Second Amended Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiffs and of the Class.

76.     By reason of the foregoing, Plaintiffs and members of the Class have been injured by purchasing the Trader Joe's Products represented to be "All Natural" which were not, and/or by paying a premium for those supposedly "All Natural" food products over less expensive non-natural alternatives. Plaintiffs and the Class are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

**THIRD CAUSE OF ACTION**
**("Unlawful" Business Practices in Violation of**
**The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)**

77.     Plaintiffs hereby incorporate the foregoing paragraphs of this Second Amended Complaint and restate them as if they were fully written herein.

78.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

79.     A business act or practice is "unlawful" if it violates any established state or federal law.

80.     California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Article 6, § 110660 provides that: "Any food is misbranded if its labeling is false or misleading in any particular."

81.     Trader Joe's violated, and continues to violate the Sherman Law, Article 6, § 110660, and hence also violated and continues to violate the "unlawful" prong of the UCL, through its use of the terms "All Natural" and "100% Natural" on the labels of food products that contain synthetic ingredients including, but not limited to, Ascorbic Acid, Potassium Carbonate, Sodium Acid

Pyrophosphate, Xanthan Gum, and Vegetable Mono and Diglycerides.   Trader Joe's identical conduct that violates the Sherman Law also violates the FDCA § 403(a)(1), 21 U.S.C. § 343(a)(1) which declares food misbranded under federal law if its "labeling is false and misleading in any particular."  This identical conduct serves as the sole factual basis of each cause of action brought by this Second Amended Complaint, and Plaintiffs do not seek to enforce any of the state law claims raised herein to impose any standard of conduct that exceeds that which would violate FDCA § 403(a)(1).

82.     The MMWA also makes the breach of either a "written warranty" or an "implied warranty" of merchantability a violation of federal law.  15 U.S.C. § 2310(d).  Trader Joe's violated, and continues to violate the MMWA as alleged in the First Cause of Action, and hence has also violated, and continues to violate, the "unlawful" prong of the UCL through its use of the terms "All Natural" and "100% Natural" on the labels of the Trader Joe's Products that contain synthetic ingredients including, but not limited to, Ascorbic Acid, Potassium Carbonate, Sodium Acid Pyrophosphate, Xanthan Gum, and Vegetable Mono and Diglycerides.

83.     By committing the acts and practices alleged above, Trader Joe's has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

84.     Through its unlawful acts and practices, Trader Joe's has obtained, and continues to unfairly obtain, money from members of the Class.  As such, Plaintiffs request that this Court cause Trader Joe's to restore this money to Plaintiffs and all Class members, to disgorge the profits Trader Joe's made on these transactions, and to enjoin Trader Joe's from continuing to violate the UCL or violating it in the same fashion in the future as discussed herein.  Otherwise, the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

### FOURTH CAUSE OF ACTION
### ("Unfair" Business Practices in Violation of
### The Unfair Competition Law ("UCL"), Bus. & Prof. Code, §§ 17200, *et seq.*)

85.     Plaintiffs hereby incorporate the foregoing paragraphs of this Second Amended Complaint and restate them as if they were fully written herein.

86.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

87.     A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

88.     Trader Joe's has and continues to violate the "unfair" prong of the UCL through its misleading description of the Trader Joe's Products as "All Natural" and "100% Natural" when indeed one or more ingredients in each of the Trader Joe's Products is synthetic.  The gravity of the harm to members of the Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications and/or motives of Trader Joe's for engaging in such deceptive acts and practices.  By committing the acts and practices alleged above, Trader Joe's has engaged, and continues to be engaged, in unfair business practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

89.     Through its unfair acts and practices, Trader Joe's has obtained, and continues to unfairly obtain, money from members of the Class.  As such, Plaintiffs request that this Court cause Trader Joe's to restore this money to Plaintiffs and all Class members, to disgorge the profits Trader Joe's has made on the Trader Joe's Products, and to enjoin Trader Joe's from continuing to violate the UCL or violating it in the same fashion in the future as discussed herein.  Otherwise, the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**FIFTH CAUSE OF ACTION**
**("Fraudulent" Business Practices in Violation of**
**The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)**

90.     Plaintiffs hereby incorporate the foregoing paragraphs of this Second Amended Complaint and restate them as if they were fully written herein.

91.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

92.     A business act or practice is "fraudulent" under the UCL if it actually deceives or is likely to deceive members of the consuming public.

93.     Trader Joe's acts and practices of mislabeling the Trader Joe's Products as "All Natural" or "100% Natural" despite the fact that they contain synthetic ingredients has the effect of misleading consumers into believing the products are something they are not.

94.     As a result of the conduct described above, Trader Joe's has been, and will continue to be, unjustly enriched at the expense of Plaintiffs and members of the Class. Specifically, Trader Joe's has been unjustly enriched by the profits it has obtained from Plaintiffs and the Class from the purchases of food products made by Trader Joe's.

95.     Through its unfair acts and practices, Trader Joe's has improperly obtained, and continues to improperly obtain, money from members of the Class.  As such, Plaintiffs request that this Court cause Trader Joe's to restore this money to Plaintiffs and all Class members, to disgorge the profits Trader Joe's has made on the Trader Joe's Products, and to enjoin Trader Joe's from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future as discussed herein.  Otherwise, the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**SIXTH CAUSE OF ACTION**
**(False Advertising in Violation of**
**California Business & Professions Code §§ 17500, *et seq.*)**

96.     Plaintiffs hereby incorporate the foregoing paragraphs of this Second Amended Complaint and restate them as if they were fully written herein.  This Cause of Action is brought on behalf of Plaintiffs, the Class and the general public.

97.     Trader Joe's uses advertising on its packaging to sell its food products.  Trader Joe's is disseminating advertising concerning its goods which by its very nature is deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§ 17500, *et seq.* because those advertising statements contained on Trader Joe's labels are misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief; Case No.: 3:11-cv-05188-SI

98.     In making and disseminating the statements alleged herein, Trader Joe's knew or should have known that the statements were untrue or misleading, and that it acted in violation of California Business & Professions Code §§ 17500, *et seq.*

99.     The misrepresentations and non-disclosures by Trader Joe's of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§ 17500, *et seq.*

100.     Through its deceptive acts and practices, Trader Joe's has improperly and illegally obtained money from Plaintiffs and members of the Class.  As such, Plaintiffs request that this Court cause Trader Joe's to restore this money to Plaintiffs and members of the Class, and to enjoin Trader Joe's from continuing to violate California Business & Professions Code §§ 17500, *et seq.*, as discussed above. Otherwise, Plaintiffs and those similarly situated will continue to be harmed by Trader Joe's false and/or misleading advertising.

101.     Pursuant to California Business & Professions Code § 17535, Plaintiffs seek an order of this Court ordering Trader Joe's to fully disclose the true nature of its misrepresentations. Plaintiffs additionally request an order requiring Trader Joe's to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Trader Joe's by means of such acts of false advertising, plus interest and attorneys fees so as to restore any and all monies which were acquired and obtained by means of such untrue and misleading advertising, misrepresentations and omissions, and which ill-gotten gains are still retained by Trader Joe's.  Plaintiffs and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

102.     Such conduct is ongoing and continues to this date. Plaintiffs and the Class are therefore entitled to the relief described below.

**SEVENTH CAUSE OF ACTION**
**(Violation of the Consumers Legal Remedies Act,**
**California Civil Code §§ 1750,** ***et seq.*)**

103.     Plaintiffs hereby incorporate the foregoing paragraphs of this Second Amended Complaint and restate them as if they were fully written herein. This Count is brought on behalf of Plaintiffs, the Class and the general public.

104.    This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq*. (the "CLRA").

105.    Plaintiffs and each member of the proposed Class are "consumers" within the meaning of Civil Code § 1761(d).

106.    The purchases of the Trader Joe's Products by consumers constitute "transactions" within the meaning of Civil Code § 1761(e) and the Trader Joe's Products offered by Trader Joe's constitute "goods" within the meaning of Civil Code § 1761(a).

107.    Trader Joe's has violated, and continues the violate, the CLRA in at least the following respects:

> a.    In violation of Civil Code § 1770(a)(5), Trader Joe's represented that the transaction had characteristics which it did not have;
>
> b.    in violation of Civil Code § 1770(a)(7), Trader Joe's represented that its goods (i.e., the Trader Joe's Products) were of a particular standard, quality, or grade, of which they were not; and
>
> c.    in violation of Civil Code § 1770(a)(9), Trader Joe's advertised its goods (i.e., the Trader Joe's Products) with the intent not to provide what it advertised.

108.    Plaintiffs and the members of the Class request that this Court enjoin Trader Joe's from continuing to engage in the unlawful and deceptive methods, acts, and practices alleged above, pursuant to California Civil Code § 1780(a)(2).  Unless Trader Joe's is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Trader Joe's "All Natural" and "100% Natural" food products will be damaged by its acts and practices in the same way as have Plaintiffs and members of the proposed Class.

109.    As set forth in paragraphs 42-45, prior to filing this action, Plaintiffs notified Trader Joe's in writing of the particular violations of Civil Code § 1770 and demanded that Trader Joe's repair or otherwise rectify the problems associated with its illegal behavior detailed above, which actions are in violation of Civil Code § 1770.  Trader Joe's failed to adequately respond to Plaintiffs' demands within 30 days of Plaintiffs' notices pursuant to Civil Code 1782(b) as Trader Joe's did not refund moneys paid by Plaintiffs or the Class, or take any other action to repair or rectify the problems associated with its illegal behavior as set forth herein, or promise to do so with respect to

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief; Case No.: 3:11-cv-05188-SI

those persons, such as Plaintiffs and the Class, who purchased Trader Joe's supposedly "All Natural" and "100% Natural" Trader Joe's Products that contained non-natural, synthetic ingredients.

110.    As Trader Joe's failed to adequately respond to Plaintiffs' notices, Plaintiffs hereby request damages from Trader Joe's as provided for in Civil Code § 1780:

      a.    Actual damages in excess of the jurisdictional limits of this Court;

      b.    statutory damages allowable under Civil Code § 1780;

      c.    punitive damages;

      d.    any other relief which the Court deems proper; and

      e.    court costs and attorney's fees.

## EIGHTH CAUSE OF ACTION
### (Restitution Based On Quasi-Contract/Unjust Enrichment)

111.    Plaintiffs hereby incorporate the foregoing paragraphs of this Second Amended Complaint and restate them as if they were fully written herein.  Plaintiffs plead this Count in the alternative.

112.    Trader Joe's conduct in enticing Plaintiffs and the Class to purchase the Trader Joe's Products through its false and misleading packaging as described throughout this Second Amended Complaint is unlawful because the statements contained on the Trader Joe Products' labels are untrue.  Trader Joe's took monies from Plaintiffs and Class members for products promised to be "All Natural" or "100% Natural," even though the food products it sold are not all natural as specified throughout this Second Amended Complaint, and contained synthetic ingredients as specified throughout this Second Amended Complaint.  Trader Joe's has been unjustly enriched at the expense of Plaintiffs and the Class as result of its unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Trader Joe's to restore these ill-gotten gains to Plaintiffs and the Class.

113.    As a direct and proximate result of Trader Joe's unjust enrichment, Plaintiffs and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the Class, and for the Causes of Action so applicable on behalf of the general public, request award and relief as follows:

A.      An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs be appointed Class Representatives and Plaintiffs' Counsel be appointed Counsel for the Class.

B.      Restitution in such amount that Plaintiffs and all Class members paid to purchase the Trader Joe's Products, or paid as a premium over non-natural alternatives, or restitutionary disgorgement of the profits Trader Joe's obtained from those transactions, for Causes of Action for which they are available.

C.      Compensatory damages for Causes of Action for which they are available.

D.      Statutory damages allowable under Civil Code § 1780.

E.      Punitive Damages for Causes of Action for which they are available.

F.      A declaration and order enjoining Trader Joe's from advertising its products misleadingly, in violation of California's Sherman Food, Drug and Cosmetic Law and other applicable laws and regulations as specified in this Second Amended Complaint.

G.      An order awarding Plaintiffs their costs of suit, including reasonable attorneys' fees and pre- and post-judgment interest.

H.      An order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Trader Joe's as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein.

I.      The prayers for relief requested herein as they pertain to the First Cause of Action (¶¶ 57-67, herein) do not and shall not be read to exceed the "[d]amages and other legal and equitable relief" and "costs and expenses (including attorneys' fees based upon actual time expended)" as provided in 15 U.S.C. § 2310(d).

J.      Such other and further relief as may be deemed necessary or appropriate.

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief; Case No.: 3:11-cv-05188-SI

1

**DEMAND FOR JURY TRIAL**

2

Plaintiffs hereby demand a trial by jury on all causes of action and/or all issues so triable.

3

4

Dated:  March 23, 2012

**STEMBER FEINSTEIN DOYLE
PAYNE & KRAVEC, LLC**

5

6

By:   s/Joseph N. Kravec, Jr.

7

Joseph N. Kravec, Jr.
(admitted *pro hac vice*)

8

9

Wyatt A. Lison (*pro hac* to be filed)

10

429 Forbes Avenue, 17th Floor
Pittsburgh, PA 15219

11

Tel:     (412) 281-8400
Fax:     (412) 281-1007

12

Email: jkravec@stemberfeinstein.com
wlison@stemberfeinstein.com

13

Michael D. Braun (Bar No. 167416)

14

**BRAUN LAW GROUP, P.C.**
10680 W. Pico Blvd., Suite 280

15

Tel:     (310) 836-6000
Fax:     (310) 836-6010

16

Email: service@braunlawgroup.com

17

Janet Linder Spielberg

18

(Bar No. 221926)

19

**LAW OFFICE OF JANET LINDER
SPIELBERG**

20

12400 Wilshire Blvd., Suite 400
Los Angeles, CA 90025

21

Tel:     (310) 392-8801
Fax:     (310) 278-5938

22

Email: jlspielberg@jlslp.com

23

24

*ATTORNEYS FOR PLAINTIFFS*

25

26

27

28

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief; Case No.: 3:11-cv-05188-SI

**PROOF OF SERVICE**

STATE OF PENNSYLVANIA        )
                            )ss.:
COUNTY OF ALLEGHENY         )

        I am employed in the county of Allegheny, Commonwealth of Pennsylvania, I am over the

age of 18 and not a party to the within action; my business address is The Allegheny Building, 17th

Floor, 429 Forbes Avenue, Pittsburgh, Pennsylvania 15219.

        On March 23, 2012, I caused a copy of the within document(s):

**SECOND AMENDED COMPLAINT FOR DAMAGES, EQUITABLE,
DECLARATORY AND INJUNCTIVE RELIEF**

to be delivered on the interested parties in this action as indicated below:

| | |
|---|---|
| Carla Christofferson | Randall W. Edwards |
| Margaret A. Moeser | O'Melveny & Myers, LLP |
| Kate Ides | Two Embarcadero Center |
| O'Melveny & Myers, LLP | 28th Floor |
| 400 South Hope Street | San Francisco, CA 94111 |
| Los Angeles, CA 90071 | Phone: 415-984-8700 |
| Phone: 213-430-6000 | redwards@omm.com |
| cchrisofferson@omm.com | |
| mmoeser@ornrn.corn | |
| kides@omrn.corn | |

**[ X ]    BY ELECTRONIC TRANSMISSION USING THE COURT'S ECF SYSTEM:**
I caused the above document(s) to be transmitted by electronic mail to those ECF registered parties
listed on the Notice of Electronic Filing (NEF) pursuant to Fed.R.Civ.P. 5(d)(1) and by first class
mail to those non-ECF registered parties listed on the Notice of Electronic Filing (NEF). *"A Notice
of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an
electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall
constitute the proof of service as required by Fed.R.Civ.P. 5(d)(1). A copy of the NEF shall be
attached to any document served in the traditional manner upon any party appearing pro se."*

        Executed on March 23, 2012, at Pittsburgh, Pennsylvania.

                                      s/Joseph N. Kravec, Jr.
                                     Joseph N. Kravec, Jr.