United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   TAMAR DAVIS LARSEN and ARAN                    No. C 11-05188 SI
     EISENSTAT,
12                                                  **ORDER GRANTING IN PART AND
                    Plaintiffs,                     DISMISSING IN PART DEFENDANT'S
13                                                  MOTION TO DISMISS**
           v.
14
     TRADER JOE'S CO.,
15
                    Defendant.
16   _____/

17

18         The motion by defendant Trader Joe's Company to dismiss various of the claims in the Second

19   Amended Complaint is currently scheduled for hearing on June 15, 2012.  Pursuant to Civil Local Rule

20   7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby

     VACATES the hearing.  For the reasons set forth below, the Court GRANTS IN PART and DENIES
21
     IN PART defendant's motion to dismiss.
22

23
                                           **BACKGROUND**
24
           Plaintiffs Tamar Davis Larsen and Aran Eisenstat filed this putative class action on October 24,
25
     2011, asserting eight causes of action against Trader Joe's.  Plaintiffs' claims relate to Trader Joe's
26
     alleged labeling, marketing and sale of "All Natural" and  "100% Natural" products which, plaintiffs
27
     allege, in fact contained one or more synthetic and/or non-natural ingredients as defined by the FDA.
28
     Compl. ¶ 2., Dkt. 1.  The Trader Joe's-brand products implicated in this litigation include: Trader Joe's
     Joe Joe's Chocolate Vanilla Creme Cookies; Trader Joe's Joe Joe's Chocolate Sandwich Cream

1  Cookies; Trader Joe's Fresh Pressed Apple Juice; Trader Joe's Jumbo Cinnamon Rolls; Trader Joe's

2  Buttermilk Biscuits; Trader Joe's Trader Giotto's 100% Natural Fat Free Ricotta Cheese; and Trader

3  Joe's Crescent Rolls. Second Amended Complaimt ("SAC"), Dkt. 33, ¶ 6. Plaintiffs attest to

4  purchasing these products at least once between October 2004 and the present (the "Class Period"),

5  except that neither plaintiff has purchased the Trader Joe's Crescent Rolls. *Id.* ¶¶ 6, 8. Plaintiffs allege

6  that each of these products contains one or more of the following synthetic ingredients: ascorbic acid;

7  sodium acid pyrophosphate; xanthan gum; and vegetable mono and dyglycerides. *Id.* ¶ 2. Plaintiffs

8  assert that Trader Joe's profited unfairly by marketing and selling these "All Natural" products to health-

9  conscious consumers at a premium. *Id.* ¶¶ 2, 7-8. Plaintiffs allege causes of action under the Magnuson

10  Moss Warranty Act, 15. U.S.C. §§ 2301, *et seq.* (the "MMWA"); common law fraud; Unfair

11  Competition Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* (the "UCL"); False Advertising in violation

12  of Cal. Bus. & Prof. Code §§ 17500, *et seq.* (the "FAL"); and the Consumers Legal Remedies Act, Cal.

13  Civ. Code §§ 1750, *et seq.* (the "CLRA"). Plaintiffs also claim restitution on the basis of quasi-

14  contract/unjust enrichment. SAC, ¶ 3.

15       On April 20, 2012, defendant filed a motion to dismiss the following claims: the first cause of

16  action for violation of the MMWA; all claims for injunctive relief; particular items arising under the

17  seventh cause of action for violation of the CLRA; all claims with respect to Trader Joe's Crescent

18  Rolls; and plaintiffs' eighth cause of action for unjust enrichment. Plaintiffs' filed an opposition to

19  defendant's motion on May 14, 2012; Trader Joe's replied on May 25, 2012.

20

21  **LEGAL STANDARD**

22       Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it

23  fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss

24  is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer

25  evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). In answering this

26  question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable

27  inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

28  However, a district court should grant a motion to dismiss when plaintiffs have not pleaded "enough

facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A court need not accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact contained in the complaint. *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754-755 (9th Cir. 1994). "[W]here the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F. 3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**1.     The Magnuson-Moss Warranty Act**

Plaintiffs bring their first cause of action under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* ("MMWA"). SAC, Dkt. 33, ¶ 58. The MMWA creates a federal cause of action for consumers who have been damaged by a supplier's failure to comply with a "written warranty." *Id.* Section 2301 defines a written warranty as:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is *defect free* or will meet a *specified level of performance over a specified period of time.*

15 U.S.C. § 2301(A) (emphasis added). Plaintiffs assert that the statements "All Natural" and/or "100% Natural" are written warranties promising the food products are "defect free," and further that the quality of being "synthetic" or "artificial" is a "type of defect." *Id.* ¶¶ 62-63. Defendant counters that "All Natural" and "100% Natural" are simply product descriptions, do not promise the product is defect free, and therefore are not actionable written warranties under the statute. Def. Mot., Dkt. 38 at 9.

United States District Court
For the Northern District of California

1    Defendants argue that reading these product statements as written warranties would "drastically expand

2    coverage under [the MMWA]." *Id.*

3         In support of its position that the statements are not written warranties within the meaning of the

4    MMWA, defendant cites *In re Sears, Roebuck & Co. Tools Mktg. and Sales Practices Litig.,* MDL No.

5    1703, 2012 WL 1015806 (N.D. Ill. March 22, 2012). In *Sears,* the court ruled that the label "Made in

6    the USA" was a "product description that does not inform consumers that the tools are defect-free or

7    make any representation about performance at a specified level over a specified time . . . [and therefore]

8    fails to satisfy the defect-free/performance prong of § 2301 (6)(A)." *Id.* at *3. Plaintiffs counter that

9    *Sears* is not dispositive because that court based its ruling upon the finding that "Made in the USA" was

10   a geographical description that did not pertain to the "material or workmanship" of the product. Pls.'

11   Opp., Dkt. 39 at 10. Plaintiffs argue that unlike a geographical description, "All Natural" and "100%

12   Natural" directly relate to the material and/or workmanship of the food products.

13        Defendant also relies on a case decided after plaintiffs submitted their opposition, *Charles*

14   *Hairston v. South Beach Beverage Company, Inc., et al.*, Case No. CV 12-1429-JFW (C.D. Cal., May

15   18, 2012) (Walter, J.), which raised similar issues to the instant case. In *Hairston*, plaintiffs charged that

16   SoBe's Lifewater beverage violated the MMWA because the labels represented that the beverage was

17   "all natural" and "with vitamins," when in fact the beverages contained synthetic ingredients, including

18   the vitamins, which had been created through chemical processing. The Court dismissed plaintiffs'

19   MMWA claims, finding that "the challenged statements . . . are product descriptions rather than

20   promises that Lifewater is defect-free or guarantees of specific performance levels." *Id.*

21        Plaintiffs here assert that a warranty exists *solely* on the basis of the "defect free" provision of

22   § 2301, pointing out, correctly, that the statutory definition in Section 2301 is written in the disjunctive

23   (written warranty is "any written affirmation . . . that such material or workmanship is defect free or will

24   meet a specified level of performance over a specified period of time"). The Court will therefore

25   analyze that prong independently.

26        The word "defect" is not defined within the MMWA, nor is there case law explicitly interpreting

27   the term. However, based on the plain meaning of the word, this Court is not persuaded that being

28   "synthetic" or "artificial" is a "defect." The Oxford English Dictionary defines "defect" as "the fact

4

United States District Court
For the Northern District of California

1  of being wanting or falling short; a blemish [or] flaw." The synthetic ingredients at issue were

2  presumably knowingly and purposely added or used in the process of making these food products. As

3  a defect primarily indicates an omission or an aberration, the deliberate use of these ingredients does

4  not comport with the plain meaning of the word "defect." For these reasons, the Court GRANTS

5  defendant's motion to dismiss plaintiffs' claims under the MMWA. Because plaintiffs cannot amend

6  to state a claim, the dismissal is with prejudice.

7

8  **2.    Article III Standing to Seek Injunctive Relief**

9       Plaintiffs seek injunctive relief regarding the seven Trader Joe's products at issue in this case.

10  SAC, Dkt. 33 ¶ 5. In its motion, defendant argues that plaintiffs lack standing to seek injunctive relief

11  because they cannot "show they are 'realistically threatened by a repetition of the violation'" as required

12  by Article III. Def.'s Mot. at 10 (*citing Gest v. Bradbury,* 443 F.3d 1177 (9th Cir. 2006)). Defendant

13  points to statements in the record in which plaintiffs affirm they would not have bought the Trader Joe's

14  products if they had known about the synthetic ingredients, and have not purchased any of these

15  products since. *Id.* at 11, citing SAC, Dkt. 33 ¶ 6-8. Defendant urges that these statements demonstrate

16  plaintiffs are not under any "realistic threat of a repetition of the alleged violation" because they will

17  not purchase the products again, and therefore cannot be harmed by Trader Joe's conduct in the future.

18  *Id.* at 11 (*citing Campion v. Old Republic Home Protection Co.*, 2012 WL 992104, at *6 (S.D. Cal.,

19  Mar. 23, 2012)). Therefore, according to defendant, plaintiffs do not have standing to seek injunctive

20  relief.

21       This argument was recently analyzed by Judge Matz in *Henderson v. Gruma Corp.* 2011 WL

22  1362188 (S.D. 2011). In that case, the plaintiffs brought similar claims under the UCL, FAL and CLRA

23  alleging, *inter alia*, that Mission Guacamole and Spicy Bean Dip products advertising "0 g transfat"

24  were misleading because they in fact contained high levels of transfat. *Id.* at *1. The defendant in

25  *Gruma* argued that the plaintiffs lacked Article III standing because the plaintiffs could not prove that

26  they were at risk for being harmed by the products in the future, since they would no longer purchase

27  them. Judge Matz disagreed:

28              If the Court were to construe Article III standing as narrowly as Defendant
               advocates, federal courts would be precluded from enjoining false advertising

1
      under California consumer laws because a plaintiff who had been injured would
2
      always be deemed to avoid the cause of the injury thereafter . . . and would never
      have Article III standing . . . Prevent[ing] them from bringing suit would surely
3
      thwart the objective of California's consumer protection laws. That objective is
      "to protect both consumers *and* competitors by promoting fair competition in
4
      commercial markets for goods and services." *Kwikset Corporation v. Superior*
      *Court of Orange County*, 51 Cal. 4th 310, 320 (2011).

5
*Henderson*, 2011 WL 1362188 at *7.

6         The Court agrees with that analysis and adopts it here. Construing Article III standing as

7 narrowly as defendant suggests in consumer protection cases would eviscerate the intent of the

8 California legislature in creating consumer protection statutes because it would effectively bar any

9 consumer who avoids the offending product from seeking injunctive relief.[1] *See also Fortyune v.*

10 *American Multi–Cinema, Inc.*, No. CV 10–5551, 2002 WL 32985838, *7 (C.D.Cal. Oct.22, 2002)

11 (Manella, J.) ("If this Court rules otherwise [and does not find standing], like defendants would always

12 be able to avoid enforcement of the ADA. This court is reluctant to embrace a rule of standing that

13 would allow an alleged wrongdoer to evade the court's jurisdiction so long as he does not injure the

14 same person twice."). For these reasons, the Court DENIES defendant's motion to dismiss plaintiffs'

15 claims seeking injunctive relief.

16

17 **3.      Article III Standing for Products Plaintiffs Did Not Purchase**

18         Defendant urges the Court to dismiss all claims relating to the Trader Joe's Crescent Rolls

19 because neither plaintiff purchased them and thus they cannot establish a legally cognizable injury under

20 Article III. *See also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (stating

21 plaintiffs must identify a particularized injury affecting them personally to bring a claim); *Daimler*

22

23

---

24         [1]Defendant relies on *Campion v. Old Republic Home Protection Co.*, 2012 WL 992104, at *6
25 (S.D. Cal., Mar. 23, 2012) (Adler, J.) There plaintiff claimed he was fraudulently induced to purchase
a warranty that he alleged defendants did not plan to honor, and sought injunctive relief under the CLRA
26 and UCL. The court found that plaintiff could not meet the requirements of Article III standing for
injunctive relief because he did not intend to purchase another home warranty. *See also Dietz v.*
27 *Comcast Corp.*, Case No. C 06-06352 WHA, 2006 WL 3782900 (N.D. Cal. Dec. 21, 2006) (where
plaintiff had already cancelled his cable service and did not express an intention to use Comcast again,
28 he could not bring claims for injunctive relief in his CLRA/false advertising suit). Insofar as these
decision are inconsistent with this Court's opinion, the Court disagrees with that portion of their
analysis.

1   *Chrysler Corp. v. Cuno,* 547 U.S. 332 ("plaintiff must demonstrate standing for each claim he seeks to

2   press").

3          In response, plaintiffs contend that whether the Crescent Rolls are within the scope of the claims

4   is a class certification issue that courts "routinely defer" until the Rule 23 certification stage.  Pls.' Opp.

5   at 14.  However, before a class can be certified, the named plaintiffs must have standing individually

6   to bring a claim that can survive a Rule 12(b)(6) motion.  In *Lewis v. Casey,* the Supreme Court held:

7           That a suit may be a class action ... adds nothing to the question of standing, for
        even named plaintiffs who represent a class must allege and show that they

8           personally have been injured, not that injury has been suffered by other,
        unidentified members of the class to which they belong and which they purport

9           to represent.

10   518 U.S. 343, 357 (1996) (quoting *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 29 (1976)).

11   At this stage plaintiffs must state a claim that can survive a Rule 12(b)(6) motion, irrespective of the

12   future class.  The Court finds plaintiffs do not have standing to bring this claim because they did not

13   purchase the Crescent Rolls and therefore, as a matter of law, could not have suffered a particularized

14   injury as required by Article III.  The claims related to the Crescent Rolls are therefore DISMISSED.

15

16   Because plaintiffs cannot amend to state a claim, the dismissal is with prejudice.

17

18   **4.**      **Plaintiffs' Compliance with the Consumer Legal Remedies Act ("CLRA")**

19          Defendant asserts that plaintiffs' CLRA claims pertaining to five products should be dismissed

20   with prejudice for failure to comply with the notice requirements set forth in the statute.  Def. Mot., Dkt.

21   38 at 12; Cal. Civ. Code § 1782.  The CLRA "established a nonexclusive statutory remedy for unfair

22   methods of competition and unfair or deceptive acts or practices undertaken by any person in a

23   transaction intended to result or which results in the sale or lease of goods or services to any consumer."

24   *Gallin v. Superior Court,* 230 Cal.App.3d 541, 545–546 (1991).  Under § 1782(a), a consumer is

25   required to provide 30 days notice before filing a suit for damages in order to "give the manufacturer

26   or vendor sufficient notice of the alleged defects to permit appropriate corrections or replacements."

27   *Stickrath v. Globalstar, Inc.,* 527 F.Supp. 2d 992 (N.D. Cal. 2007).  While a plaintiff must wait to seek

28   damages until this period has passed, they may file an action seeking *injunctive* relief prior to giving

United States District Court
For the Northern District of California

1   notice and later amend the complaint to include damages. Cal. Civ. Code § 1782(b). Defendant charges

2   that plaintiff did not send a timely letter regarding five of the products at issue before filing the original

3   Complaint, which included a request for damages. Def. Mot., Dkt. 38 at 13; *see also* Comp., Dkt. 1, ¶

4   76.

5       The timeline of events relating to the CLRA claim is as follows. On April 1, 2011, plaintiffs sent

6   an initial letter (the "Notice Letter") to Trader Joe's notifying the company of violations relating to

7   Trader Joe's Joe Joe's Cookies (which accounts for two products in this action, Vanilla and Chocolate)

8   and demanding it repair the problems in compliance with the CLRA. Ex. 1, Dkt. 32. Trader Joe's

9   responded on May 5, 2011 stating it had decided to remove the natural descriptor, but did not indicate

10   when it would do so nor offer compensation to plaintiffs. *Id.* Pursuant to 1782(b), plaintiffs filed their

11   initial Complaint on October 24, 2011, and included a request for damages. *See* Compl., Dkt. 1 ¶ 76.

12   Defendants contend that this initial Complaint seeks damages for both the Joe Joe's Cookies and the

13   remaining five products that plaintiffs had not yet sent required notice for. On January 12, 2011,

14   plaintiffs filed a First Amended Complaint ("FAC") clarifying that they were "not presently seeking

15   damages for these violations under the CLRA . . . detailed in Plaintiffs' supplemental letter." FAC, Dkt.

16   23 ¶ 80. The supplemental notice letter referred to was sent at the time of the filing of the FAC, and

17   complained of the remaining five products. More than 30 days later, on March 23, 2012, plaintiffs filed

18   a Second Amended Complaint ("SAC") that included a request for damages for the remaining five

19   products.

20       Defendants contend that because the initial Complaint contained a request for damages for

21   products not yet complained of in a pre-litigation CLRA notice letter, the CLRA claims against those

22   products must be dismissed with prejudice. Def.'s Mot. at 12 (*citing Cattie v. Wal-Mart Stores, Inc.*,

23   504 F. Supp 2d 939, 950 (S.D. Cal. 2007) ("[F]ailure to give notice before seeking damages necessitates

24   dismissal with prejudice, even if a plaintiff later gives notice and amends.")). However, the Court

25   disagrees with defendant's underlying premise: the initial Complaint did not request damages for the

26   five products not mentioned in the April 1, 2011 Notice Letter. Paragraph 76 of that Complaint

27   discusses Joe Joe's Cookies and the Notice Letter, states that Trader Joe's insufficiently responded, and

28

1    requests actual, statutory, and punitive damages therefor.  Compl. ¶ 76.  Paragraph 77 then discusses

2    the remaining products:

> 3    With respect to those violations of Civil Code § 1770 as to which notification
> was not previously sent, if Trader Joe's fails to respond adequately within 30
> 4    days of Plaintiffs' supplemental notice, pursuant to Civil Code § 1782(d),
> Plaintiffs hereby request, and may amend or seek leave to amend the
> 5    Complaint to request, damages as provided for in Civil Code § 1780.

6    Compl. ¶ 77.  The request for damages was conditional on the sending of a supplemental notice letter

7    and failure of Trader Joe's to adequately respond.  There was no present request for damages violative

8    of the CLRA notice requirements.   The Court therefore DENIES defendant's motion to dismiss

9    plaintiffs' CLRA claims on these grounds.

10

11   **5.       Plaintiffs' Claim for Unjust Enrichment**

12       Defendant moves to dismiss plaintiffs' claim for unjust enrichment, arguing that the majority

13   of California courts have held it is not an independent cause of action.  Def. Mot., Dkt. 38 at 17.  In

14   support of this assertion, defendant cites several California federal and state court decisions.  *See, e.g.*,

15   *Levine v. Blue Shield of Cal.,* 189 Cal. App. 4th 117 (2010) ("[T]here is no cause of action in California

16   for unjust enrichment"); *Jorgani v. Superior Court*, 165 Cal. App 4th 901 (2008) (dismissing unjust

17   enrichment claim but allowing UCL and breach of contract claims).  Defendant argues that rather than

18   an independent cause of action, unjust enrichment describes "a general principle, underlying various

19   legal doctrines and remedies."  *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779 (2003)

20   (dismissing unjust enrichment claim but allowing claims for breach of contract, declaratory relief, and

21   accounting).   Defendant acknowledges that this Court has permitted unjust enrichment claims where

22   some other viable claim existed.  *See Boyter v. Wells Fargo Bank, N.A.*, Case No. C 11-03943 SI, 2012

23   WL 1144281 (N.D. Cal. Apr. 4, 2012).  However, defendant urges that this outcome is inappropriate

24   here because there is no asserted contract and plaintiffs have chosen to sue in tort.  *See Id* at *7 (citing

25   *Clear Channel Outdoor, Inc. v. Bently Holdings California LP,* No. C-11-2573 EMC, WL 6099394, at

26   *9 (N.D. Cal. Dec. 7, 2011) (holding unjust enrichment claims lie "either (1) in lieu of breach of

27   contract damages, . . . or (2) where the defendant obtained a benefit from the plaintiff by fraud . . . but

28   the plaintiff has chosen not to sue in tort.")).

**United States District Court**
For the Northern District of California

9

1    In opposition, plaintiff argues that regardless of whether unjust enrichment is an independent

2    cause of action under California law, a party may plead in the alternative for restitution based on a

3    quasi-contract claim, which they assert is the *result* of unjust enrichment.  Pls.' Opp., Dkt. 39 at 24.

4    Plaintiffs cite a number of cases which indicate unjust enrichment may be the basis for obtaining

5    restitution based on a quasi-contract. See *McKell v. Wash. Mut., Inc.,* 142 Cal.App.4th 1457, 1490 (Cal.

6    App. 2 Dist. 2006); *Paracor Finance, Inc. v. General Electric Capital Corp.,* 9 F3d 1151, 1167 (9th Cir.

7    1996) ("Under ... California ... law, unjust enrichment is an action in quasi-contract"); *Smith v. Ford*

8    *Motor Co.,* 2011 WL 6322200, *3 (9th Cir. 2011) ("[A]claim for unjust enrichment cannot stand alone

9    without a cognizable claim under a quasi-contractual theory or some other form of misconduct.").

10   Plaintiffs acknowledges that their theory of quasi-contract may ultimately be incompatible with a tort

11   recovery, but insist that they are pleading the eighth cause of action in the alternative.

12   Judge Hamilton analyzed this question in a similar "all natural" mislabeling case in *Astiana v.*

13   *Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, *11 (N.D. Cal. 2011).  She noted that though unjust

14   enrichment is not a stand-alone claim under California law, "plaintiffs assert the claim of unjust

15   enrichment as part of a claim of restitution on quasi contract.  In California, unjust enrichment is

16   typically alleged in connection with a quasi-contractual claim in order to avoid unjustly conferring a

17   benefit upon a defendant where there is no valid contract." *Id.*  She then allowed the claim to survive

18   the motion to dismiss.  *Id.*  Here, because plaintiffs adequately plead a claim for quasi-contract as part

19   of the claim for unjust enrichment in paragraphs 112-113 of the SAC, the Court finds that the claim can

20   survive defendant's motion to dismiss.  However, the Court agrees that the claim is inconsistent with

21   plaintiffs' tort claims.  Therefore, to the extent that plaintiffs are ultimately able to prevail under a tort

22   theory, they will be precluded from also recovering under a claim of unjust enrichment.  *See Oracle*

23   *Corp. v. SAP AG*, 2008 WL 5234260, *9 (N.D. Cal. Dec. 15, 2008) (Hamilton, J.).  For foregoing

24   reasons the Court hereby DENIES defendant's motion to dismiss plaintiffs' claim for unjust enrichment.

25

26   ///

27   ///

28

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendant's motion to dismiss plaintiffs' claims for injunctive relief; claims under the CLRA; and claim for unjust enrichment.  The Court hereby GRANTS defendant's motion to dismiss plaintiffs' MMWA claims and all claims relating to Trader Joe's Crescent Rolls with prejudice.

**IT IS SO ORDERED.**

Dated:  June 14, 2012

_____
SUSAN ILLSTON
United States District Judge