Janet Lindner Spielberg (SBN 221926)
**LAW OFFICES OF JANET LINDNER**
  **SPIELBERG**
12400 Wilshire Boulevard, Suite 400
Los Angeles, California 90025
Tel: (310) 392-8801
Fax: (310) 278-5938
Email: jlspielberg@jlslp.com

Michael D. Braun (SBN 167416)
**BRAUN LAW GROUP, P.C.**
10680 West Pico Boulevard, Suite 280
Los Angeles, California 90064
Tel:  (310) 836-6000
Fax:  (310) 836-6010
Email:  service@braunlawgroup.com

Joseph N. Kravec, Jr. (admitted *pro hac vice*)
Wyatt A. Lison (admitted *pro hac vice*)
McKean J. Evans (admitted *pro hac vice*)
**FEINSTEIN DOYLE PAYNE**
  **& KRAVEC, LLC**
Allegheny Building, 17th Floor
429 Forbes Avenue
Pittsburgh, PA  15219
Tel: (412) 281-8400
Fax: (412) 281-1007
Email:  jkravec@fdpklaw.com
    wlison@fdpklaw.com
    mevans@fdpklaw.com

*ATTORNEYS FOR PLAINTIFFS*

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| TAMAR DAVIS LARSEN AND ARAN EISENSTAT, on behalf of themselves and all others similarly situated,<br><br>    **Plaintiffs,**<br><br>    v.<br><br>TRADER JOE'S COMPANY, a California Corporation,<br><br>    **Defendant.** | CASE NO.:  3:11-cv-05188-WHO<br><br><u>CLASS ACTION</u><br><br>**NOTICE OF MOTION AND MOTION IN SUPPORT OF PLAINTIFFS' COUNSEL'S REQUEST FOR  AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PLAINTIFF INCENTIVE AWARDS**<br><br>Hon. William H. Orrick<br><br>Date:  July 9, 2014<br>Time:  2:00 p.m.<br>Location: Courtroom 2, 17th Floor |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................2

II.    ARGUMENT..........................................................................................................4

       A.     Plaintiffs' Counsel's Fee Request is Fair Reasonable and Justified.......................4

       B.     The Common Fund Analysis Supports Plaintiffs' Counsel's Fee Request ............6

              1.     The Results Achieved Were Very Favorable to the Settlement
                     Class...............................................................................................................8

              2.     There Are Substantial Risks Associated With Continued Litigation ..........9

              3.     Skill & Efficiency of Plaintiffs' Counsel...................................................10

              4.     Counsel's Fee and Expenses Are Contingent...........................................11

              5.     Awards Made in Similar Cases are Consistent with Counsel's
                     Request ........................................................................................................12

       C.     A Lodestar-Multiplier Cross-Check Confirms the Reasonableness of
              Counsel's Requested Fees ...................................................................................14

              1.     A Lodestar Multiplier is Justified..............................................................15

       D.     Plaintiffs' Counsel's Request for Reimbursement of Expenses are
              Reasonable ...........................................................................................................17

       E.     Plaintiffs' Incentive Awards are Reasonable and Should be Approved...............17

III.   CONCLUSION.....................................................................................................19

# **TABLE OF AUTHORITIES**

*AllianceOne*, Case No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) ............................16

*Antonopulos v. N. Am. Thoroughbreds, Inc.*, Case No. 87-0979G (CM), 1991 U.S. Dist.
    LEXIS 12579 (S.D. Cal. May 6, 1991) .........................................................13

*Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 U.S. Dist. LEXIS 1640
    (N.D. Cal. Jan. 7, 2014) ................................................................................10

*Bebchick v. Washington Metropolitan Area Transit Com.*, 805 F.2d 396, 408
    (D.C. Cir. 1986) ...............................................................................................9

*Blum v. Stenson*, 465 U.S. 886 (1994). .....................................................................6, 15

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ..........................................................6, 7

*Brazil v. Dell Inc.*, 2012 U.S. Dist. LEXIS 47986 (N.D.Cal. Apr. 4, 2012). .....................5

*Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014 (9th Cir. 2000).............................14

*Chemical Bank v. City of Seattle (In re Washington Pub. Power Supply Sys. Sec. Litig.)*,
    19 F.3d 1291, 1299-1300 (9th Cir. 1994). ............................................10, 15

*Chu v. Wells Fargo Investments, LLC*, 2011 U.S. Dist. LEXIS 15821* 5
    (N.D. Cal. Feb. 16, 2011) ..............................................................................18

*Craft v. County of San Bernardino*, 2008 U.S. Dist. LEXIS 27526 (C.D. Cal. 2008) .................13

*Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008)......................16

*De Mira v. Heartland Empl. Serv.*, 2014 U.S. Dist. LEXIS 33685
    (N.D. Cal. Mar. 13, 2014)..............................................................................12

*Ferland v. Conrad Credit Corp.*, 244 F.3d 1145 (9th Cir. 2001). ................................14

*Fischel v. Equitable Life Assur. Soc'y of the United States*, 307 F.3d 997
    (9th Cir. Cal. 2002)........................................................................................15

*Fitzgerald v. City of Los Angeles*, 2003 U.S. Dist. LEXIS 27382 (C.D. Cal. Dec. 8, 2003) ........18

*Garner v. State Farm*, 2010 U.S. Dist. LEXIS 49482 (N.D. Cal. Apr. 22, 2010)..........................7

*Hanlon v. Chrysler Corp*, 150 F.3d 1011 (9th Cir. 1998). .............................................5

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) .......................................................17

*Hopson v. Hanesbrands*, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009) .............................18

*In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) ....................................6

*In re Agent Orange Product Liability Litigation*, 818 F.2d 226 (2d Cir. 1987)..........................9

*In re Bluetooth Headset Prod. Litig.*, 654 F.3d 935 (9th Cir. 2011) ........................4, 5, 6

*In re Consumer Privacy Cases*, 175 Cal. App. 4th 545(Cal. App. 1st Dist. 2009) .......................5

*In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.,* No. 02-ML- 1475-DT(RCx),
    2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005) ...................................12

*In re M.D.C. Holdings Sec. Litig.,* No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488,
    (S.D. Cal. Aug. 30, 1990) ...............................................................13

*In re Media Vision*, 913 F. Supp. 1362 (N.D. Cal. 1996)...............................................17

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)...........................................9, 12, 18

*In re Omnivision Techs, Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...............................6, 7, 12

*In re Pac. Enter. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) .................................................9

*In re Public Service Co.,* 1992 U.S. Dist. LEXIS 16326 (S.D. Cal. July 28, 1992).....................12

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir.1994) ...............4, 11

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299        11

*Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986)................................................................6

*Knight v. Red Door Salons, Inc.*, 2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) ......7, 12

*Linney* v. *Cellular Alaska P'ship,* 1997 WL 450064  (N.D. Cal. July 18, 1997) ......................9, 17

*Loring v. Scottsdale,* 721 F.2d 274 (9th Cir. 1983) ..........................................................9

*Lopez v. Youngblood, 2011 U.S. Dist. LEXIS 99289 (E.D. Cal. Sept. 1, 2011)* ...........................16

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. Cal. 2012)........................................10

*Merola v. Atlantic Richfield Co.*, 515 F.2d 165 (3d. Cir.1975 ..........................................13

*Hall v. Cole*, 412 U.S. 1, 93 S. Ct. 1943, 36 L. Ed. 2d 702 (1973) ...............................13

*Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al.,* Case No. LA CV11-08276
    JAK (PLAx).....................................................................................12, 13

*Odrick v. UnionBanCal Corp.,* No. C 10-5565 SBA, 2012 U.S. Dist. LEXIS 171413
    (N.D. Cal. Dec. 3, 2012)...................................................................18

*Ozga v. U.S. Remodelers, Inc.*, No. C 09-05112 JSW, 2010 U.S. Dist. LEXIS 91196
    (N.D. Cal. Aug. 9, 2010) ....................................................................7

*Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) .................................................5, 7

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009)..................................17

*Schiller v. David's Bridal, Inc.*, 2012 U.S. Dist. LEXIS 80776 (E.D. Cal. June 11, 2012)..............4

*Sethavanish v. ZonePerfect Nutrition Co.*, 2014 U.S. Dist. LEXIS 18600, 2014 WL
    580696 (N.D. Cal. Feb. 13, 2014) .........................................................10

*Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416 (S.D. Cal. Jun. 1, 2010)........12

*Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990)...............................6

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939) ................................................. 7

*Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780, (9th Cir. Cal. 2007) ........................... 16

*Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 48540 (N.D. Cal. 2014) ..................... 16

*Swedish Hosp. Corp. v. Shalala, 1 F.3d 1261 (D.C. Cir. 1993)* ..................................... 17

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1377 (9th Cir. 1993) .................................. 6, 12

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ................. 16

*Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482 (E.D. Cal. 2010) ..................................... 12

*Vizcaino v. Microsoft Corp.*, 290 F .3d 1043 (9th Cir. 2002) ................................................. *passim*

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ............................. 16

*Walsh v. Kindred Healthcare*, 2013 U.S. Dist. LEXIS 176319 (N.D. Cal. Dec. 16, 2013). ......7, 17

*Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2012 U.S. Dist. LEXIS 148893,

    (N.D. Cal. Oct. 16, 2012) ..................................................................... 7

**Other Authorities**

Denise N. Martin, Vinita M. Juneja, Todd S. Foster & Frederick C. Dunbar, Recent
    Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?
    Stan. 28 J.L. Bus. & Fin. (1996). ............................................................... 8

Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, Empirical Study of Class
    Actions in Four Federal District Courts: Final Report to the Advisory Committee
    on Civil Rules, at 69 (Fed. Judicial Ctr. 1996). ................................................. 8

**Treatises**

Manual for Complex Litigation (Fourth) (2004) ................................................... 6

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to the Order entered on February 2, 2014 (Dkt. No. 82), on July 9, 2014 at 2:00 p.m., or as soon thereafter as counsel may be heard before the Honorable William H. Orrick, United States District Court Judge for the Northern District of California, 450 Golden Gate Avenue, Courtroom 2, 17th Floor San Francisco, CA 94102, Plaintiffs Tamar Davis Larsen and Aran Eisenstat will and hereby do move this Court for entry of an Order: (1) awarding attorneys' fees and reimbursement of reasonable expenses; and (2) awarding incentive awards to Tamar Davis Larsen and Aran Eisenstat the named Plaintiffs and Class Representatives in this action.

As discussed in the accompanying memorandum, this motion is made on the grounds that the requested awards are fair, reasonable, and justified under applicable law.  This Motion is based on the accompanying Memorandum, the Declaration of Michael D. Braun In Support of Plaintiffs' Motion for Award of Attorneys' Fees; Reimbursement of Expenses and Plaintiffs Incentive Awards ("Braun Decl."), the executed Settlement Agreement (Dkt. No. 81 Ex. A.), and any other papers filed in support of preliminary and final approval of the Settlement, any oral argument that is held regarding this motion, the complete record in this litigation and any other such other matters as the Court may consider.

Plaintiffs Tamar Davis Larsen and Aran Eisenstat ("Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this Memorandum in support of their Motion for Attorneys' Fees, Reimbursement of Expenses and Incentive Award.

## MEMORANDUM OF POINTS & AUTHORITIES

## I.    INTRODUCTION

Plaintiffs' Counsel seek an award of fees and reimbursement of reasonable expenses in the amount of $950,000. Plaintiffs also seek an incentive award for each named Plaintiff in the amount of $2,500. These amounts were agreed to by the parties subsequent to the resolution of this matter which was achieved over three full days of mediation held over several months. The agreement for Attorneys' fees, reimbursement of reasonable expenses and the Plaintiffs' proposed incentive awards were negotiated at arms-length under the guidance of a well-respected mediator.

This is a putative class action brought on behalf of consumers of certain Trader Joe's food products claiming those products were falsely and misleadingly labeled as "All Natural" or "100% Natural" despite the fact they contained synthetic substances.[1] Prior to reaching the Settlement, Plaintiffs filed three complaints and successfully defended against Defendant's Motions to Dismiss and for Judgment on the Pleadings. Dkt Nos. 41 and 57. Plaintiffs also propounded three sets of requests for production of documents, requests for admission, interrogatories and noticed the Defendant's deposition. Plaintiffs also subpoenaed the five non-party manufacturers who supplied Trader Joe's with the Products at issue in this litigation.

This effort, and Plaintiffs unwillingness to settle early or cheap, resulted in a significant recovery for the Settlement Class.[2] The Settlement consists of two meaningful components. First, Trader Joe's agreed that the Disputed Labels would no longer be used and will not be used on the Products in the future unless the Products are reformulated or there is a change in the law such that it

---

[1] A more complete recitation of the facts and procedural history of the litigation can be found in Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Settlement. Dkt. No. 74.

[2] All capitalized terms have the same meanings as those defined in the Superseding Stipulation of Class Action Settlement ("Settlement"). Dkt. No. 81.

1   is clear that the use of "All Natural" or "100% Natural" on the Products would not be false or

2   misleading. The collective value assigned to the costs of implementing the labeling changes and the

3   subsequent value to the Settlement Class resulting therefrom is $350,000.00. §III.C.1.[3] Second,

4   Trader Joe's has agreed to establish a cash fund of $3,375,000.00 to compensate the Class. § III.C.2.

5   The Settlement provides each Settlement Class Member, who provides proof of purchase, a full

6   reimbursement for each Product purchased during the Class Period.   Class Members without proof

7   of purchase will be entitled to claim remuneration for up to 10 (ten) Products ranging in price from

8   $2.70-$3.99 (i.e. maximum claim range from $27.00 to $39.99). §III.C.3.d. The per-product

9   remuneration reflects the average retail price of the Product during the Class Period and therefore

10  reflects the maximum amount of disgorgement per product that Plaintiffs could have reasonably

11  achieved at trial. Braun Decl. ¶15.

12        Finally, to the extent any amount of the Settlement Consideration is not depleted by claims,

13  Trader Joe's will convert the funds into Products and distribute the remainder directly to Settlement

14  Class Members at its retail locations throughout the United States. *See* §III.C.[4] By any analysis, this

15  Settlement represents a significant and meaningful recovery for the Class.

16        Plaintiffs' Counsel expended a substantial amount of time and money on a contingent basis

17  to prosecute this case and achieve this result. Braun Decl. ¶18.   As of May 1, 2014, Plaintiffs'

18  Counsel have devoted more than 1,588 professional hours, representing a collective lodestar of

19  $850,192.50. *Id.* at ¶28.   In addition, Plaintiffs' Counsel incurred $55,619.46 in unreimbursed

20  reasonable expenses. *Id.*   at ¶29.   Moreover, neither the work, nor the accumulation of expenses

21  related to this case has ended. Plaintiffs' Counsel will continue to incur expenses and spend

22  additional attorney hours in connection with the ongoing administration of the settlement, drafting

23  final approval papers, and preparing and attending the final approval hearing. Braun Decl. ¶27.

---

[3] This collective value was assigned by the Honorable Peter Lichtman (ret.), a former judge of the Los Angeles Superior Court's complex panel and a respected and experienced class action mediator, and agreed upon by the Parties.

[4] All "§" references are to the Stipulation of Class Action Settlement unless otherwise noted.

As a percentage of the monetary portion of the settlement ($3,375,000), the attorney fee request represents 28% of the common fund which is well within the normal range of fees granted under the percentage-of-the-recovery method which is typically used to award fees in class action cases involving a settlement fund.[5] Similarly, under the lodestar method, Plaintiffs' Counsel's fee request represents a modest 1.12 multiplier, which is also within the range of what is typically awarded in case such as this.  Plaintiffs' Counsel respectfully submit that the requested fees are reasonable under the circumstances of this case and are well-within the range of fee awards approved by Courts in the Ninth Circuit both under the percentage-of-the-recovery and lodestar doctrines, and therefore should be approved.  Similarly, the expenses for which reimbursement is sought and the proposed Plaintiffs' incentive awards are reasonable, typical of those awarded in similar cases and should also be awarded.

## II.   ARGUMENT

### A.   Plaintiffs' Counsel's Fee Request is Fair Reasonable and Justified

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h); *Schiller v. David's Bridal, Inc.*, 2012 U.S. Dist. LEXIS 80776, 39-43 (E.D. Cal. June 11, 2012).

In class actions that establish a common fund, such as the one at bar, the district court has discretion to use either a percentage-of-the recovery method or lodestar method to calculate reasonable attorneys' fees. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir.1994); *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 942 (9th Cir. Cal. 2011)("Where a settlement produces a common fund for the benefit of the entire class,

---

[5] Plaintiffs' Counsel incurred a total of $55,619.46 in reasonable expenses. Counsel's request for $950,000 consists of both fees and expenses.  Subtracting the fees from the requested amount leaves a remainder of $894,380.54 which is tantamount to 26.5% of the fund and only a 1.05% multiplier. If the Court considers, as it should, the value of the settlement as a whole (i.e. $350,000 of equitable relief plus a $3,375,000 cash fund), Plaintiffs fee request would represent 25.5% of the Settlement value.

courts have discretion to employ either the lodestar method or the percentage-of-recovery method.").[6] Regardless of which method is employed, "the main inquiry is whether the end result is reasonable." *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

As the United States Supreme Court has explained, "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). While the Court must perform its own evaluation to verify that the requested fees are reasonable and not the product of collusion, it should give weight to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms. Braun Decl. ¶13; *Brazil v. Dell Inc.*, 2012 U.S. Dist. LEXIS 47986, at *4 (N.D.Cal. Apr. 4, 2012).

Here, Plaintiffs' Counsel negotiated with Trader Joe's to reach an agreed-upon fee amount that they regarded as reasonable based on, *inter alia*, the benefits achieved for the class and applicable legal principles. The parties did not negotiate a fee award until after they reached agreement on the other key deal terms. Further, the fee amount, like the Settlement itself, was agreed upon under the auspices and with the assistance of an experienced, well-respected former judge and mediator, Judge Peter Lichtman. Braun Decl. ¶12. That fact serves as "independent confirmation that the fee was not the result of collusion or a sacrifice of the interests of the class." *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1029 (9th Cir. 1998). As further demonstrated below, the fee request meets all the relevant indicia under either analysis. Coupled with the fact the fee was negotiated at arm's length under the supervision of a neutral, respectfully, it should be approved.

---

[6] "Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 558, n.13(Cal. App. 1st Dist. 2009).

**B.     The Common Fund Analysis Supports Plaintiffs' Counsel's Fee Request**

The percentage-of-the- recovery or common fund doctrine rests on the understanding that attorneys should normally be paid by their clients. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole."). Courts generally prefer a percentage-of-the-fund model over a lodestar-multiplier approach in cases where it is possible to ascertain the value of the settlement through a common fund. *In re Bluetooth Headset Prod. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)("Because the benefit to the class is easily quantified in common fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."); *In re Omnivision Techs, Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("[U]se of the percentage method in common fund cases appears to be dominant.").

The Ninth Circuit has frequently expressed its approval of the use of the percentage method in common fund cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990). The rationale for employing the percentage-of-the-fund method is three-fold. First, the percentage method is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated with a percentage of the recovery. Second, the percentage method directly aligns the interests of the class and its counsel to prosecute and resolve all claims quickly and efficiently. *See, e.g.*, *Kirchoff v. Flynn*, 786 F.2d 320, 326 (7th Cir. 1986). It provides class counsel with a strong incentive to effectuate the maximum possible recovery in the shortest amount of time, which is a tangible benefit to class members and the judicial system. Third, use of the percentage method decreases the burden imposed on the court by eliminating a potentially time-consuming lodestar analysis while assuring that the beneficiaries do not experience undue delay in receiving their share of the settlement. *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989); Manual for Complex Litigation (Fourth) § 14.121 (2004) ("Manual") (noting that courts increasingly recognize that "the lodestar method is difficult to apply,

1  time-consuming to administer, inconsistent in result, and capable of manipulation" to reach a

2  predetermined result).

3       Furthermore, the Supreme Court has consistently endorsed awarding attorneys' fees using the

4  percentage-of-the-fund method. *See, e.g., Blum v. Stenson*, 465 U.S. 886, 900 n.16 (U.S. 1984);

5  *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478-79, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980); *Sprague*

6  *v. Ticonic Nat'l Bank*, 307 U.S. 161, 165-67, 59 S. Ct. 777, 83 L. Ed. 1184 (1939). Accordingly, the

7  Ninth Circuit has upheld common fund fee awards based on the percentage-of-the-fund method that

8  have been "cross-checked" by the lodestar for reasonableness. *See, e.g., Vizcaino v. Microsoft Corp.*,

9  290 F .3d 1043, 1050 (9th Cir. 2002).

10       The Ninth Circuit benchmark for recoveries in common fund cases is 25%, the approximate

11  percentage negotiated in this case. Moreover, Courts in this Circuit often award a percentage of the

12  fund that is higher than the 25% benchmark. *Vizcaino,* 290 F .3d 1043, 1047 (9th Cir. 2002) (in

13  common fund cases, the "benchmark" award is 25% of the recovery obtained, with 20-30% as the

14  usual range); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)(The typical range of acceptable

15  attorneys' fees under this approach in the Ninth Circuit is 20 percent to 33 and 1/3 percent of the

16  total settlement value, with 25 percent considered a benchmark percentage.); *In re Omnivision*

17  *Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007)("[I]n most common fund cases, the award

18  exceeds th[e] benchmark."); *Walsh v. Kindred Healthcare,* No. C 11-00050 JSW, 2013 U.S. Dist.

19  LEXIS 176319, *12 (N.D. Cal. 2013)(awarding approximately 30%); *Zeisel v. Diamond Foods, Inc.*,

20  No. C 10-01192 JSW, 2012 U.S. Dist. LEXIS 148893, *13-14 (N.D. Cal. Oct. 16, 2012) (awarding

21  just over 30%); *Ozga v. U.S. Remodelers, Inc.*, No. C 09-05112 JSW, 2010 U.S. Dist. LEXIS 91196,

22  at *9 (N.D. Cal. Aug. 9, 2010) (awarding just under 30%); *Garner v. State Farm*, No. CV 08 1365

23  CW, 2010 U.S. Dist. LEXIS 49482, at *5-6 (N.D. Cal. Apr. 22, 2010) (awarding 30%); *Knight v.*

24  *Red Door Salons, Inc.*, No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149, at *17 (N.D. Cal. Feb. 2,

25  2009) (same).

26       Moreover, in setting the appropriate percentage for fees, and considering a upward departure

27  from the benchmark, Courts must also take into consideration the equitable relief achieved by a

28  settlement which in this case resulted in Trader Joe's complete cessation of the wrongdoing alleged

in the complaint and an injunction preventing from doing it again. §III.C.1.[7] *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002) (prospective practice changes are the sort of "nonmonetary benefits conferred by the litigation" that support a requested fee).[8]

      The Ninth Circuit has also identified a number of factors that may be relevant in determining if the contemplated award is reasonable: (1) the results achieved; (2) the risk involved with the litigation; (3) the skill required and quality of work by counsel; (4) the contingent nature of the fee; and (5) awards made in similar cases. *Six Mexican Workers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

      As demonstrated below, each of these factors also weighs in favor of approving the award requested by Plaintiffs' Counsel.

      **1.    The Results Achieved Were Very Favorable to the Settlement Class**

      The Settlement benefits consist of both a monetary and equitable component. First, the Settlement enables Class Members to obtain a full refund of all the Products they purchased with proof of purchase during the Class Period. Class Members who cannot provide proof of purchase will be entitled to claim a refund for up to 10 (ten) Products. Each Product will be remunerated at a price representing the average retail price of that Product during the Class Period (i.e., ranging from $2.70 to $3.99 per Product). Under the Settlement, Class Members will be entitled to make claims up to $39.99 by simply declaring that they purchased such Products.

---

[7] Trader Joe's agrees that the Disputed Labels are no longer being used and will not be used on the Products in the future unless the Products are reformulated or there is a change in the law such that it is clear that the use of "All Natural" or "100% Natural" on the Products would not be false or misleading. The collective value assigned to the costs of implementing the labeling changes and the subsequent value to the Settlement Class resulting therefrom is $350,000.00. This collective value was assigned by the Honorable Peter Lichtman (ret.), a former judge of the Los Angeles Superior Court's complex panel and a respected and experienced class action mediator, and agreed upon by the Parties. §III.C.1.

[8] A Federal Judiciary Center study of all class action attorneys' fees in four federal district courts with a high number of class actions found that "median rates ranged from 27% to 30%." Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules, at 69 (Fed. Judicial Ctr. 1996). A separate study conducted by National Economic Research Associates similarly concluded that "[regardless of case size, fees average approximately 32 percent of the settlement." Denise N. Martin, Vinita M. Juneja, Todd S. Foster & Frederick C. Dunbar, Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions? Stan. 28 J.L. Bus. & Fin. (1996).

---

1       This is an exceptional result when compared to what the Class may have realistically sought

2   and achieved at trial. In light of the range of potential losses—and the more likely provable losses, in

3   particular—the results achieved in this case are outstanding. *In re Mego Fin. Corp. Sec. Litig.*, 213

4   F.3d 454, 459 (9th Cir. 2000) (approving settlement that comprised one sixth of the plaintiffs'

5   potential recovery); Braun Decl. ¶15.

6       Second, with respect to the equitable relief achieved on behalf of the Settlement Class and

7   consuming public, Trader Joe's stopped using the Disputed Labels and agreed that they will not be

8   used on the Products in the future unless the Products are reformulated or there is a change in the

9   law such that it is clear that the use of "All Natural" or "100% Natural" on the Products would not be

10  false or misleading. §III.C.1.  The valued assigned to the costs of implementing the labeling changes

11  and the subsequent value to the Settlement Class resulting therefrom is $350,000.00. *Id.*

12      Courts in this Circuit have repeatedly held that where, as here, class counsel achieves

13  significant benefits that are not accounted for in the dollar value of the common settlement fund, the

14  court "should consider the value of [such] relief as a relevant circumstance in determining what

15  percentage of the common fund class counsel should receive as attorneys' fees." *Staton*, 327 F.3d at

16  974; *see also Vizcaino*, 290 F.3d at 1049 (affirming enhanced fee award where "the court found that

17  counsel's performance generated benefits beyond the cash settlement fund"); *Loring v. Scottsdale,*

18  721 F.2d 274 (9th Cir. 1983)(finding reversible error for trial court to fail to take into account

19  nonmonetary benefits in determining fees); *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ,

20  1997 U.S. Dist. LEXIS 24300, *20 (N.D. Cal. July 18, 1997) (granting fee award of one-third of

21  common fund where settlement provided additional non-monetary relief); *Bebchick v. Washington*

22  *Metropolitan Area Transit Com.*, 805 F.2d 396, 408 (D.C. Cir. 1986)(allowing an upward

23  adjustment to the lodestar "to reflect the benefits to the public flowing from [the] litigation").

24         **2.    There Are Substantial Risks Associated With Continued Litigation**

25      Risk is a relevant consideration in determining fees. *See In re Pac. Enter. Sec. Litig.*, 47 F.3d

26  373, 379 (9th Cir. 1995) (holding fees justified "because of the complexity of the issues and the

27  risks").  We have labeled the risk-of-success factor as perhaps the foremost factor to be considered

28  under the second prong of the lodestar analysis." *In re Agent Orange Product Liability Litigation,*

1   818 F.2d 226, 236 (2d Cir. 1987)(internal citation omitted); *Chemical Bank v. City of Seattle (In re*

2   *Washington Pub. Power Supply Sys. Sec. Litig.*), 19 F.3d 1291, 1302 (9th Cir. 1994)(district court

3   abused its discretion in denying a risk multiplier).

4          In the absence of a Settlement, Plaintiffs would face a class certification motion, a possible

5   appeal of any class certification ruling, and summary judgment.  While Plaintiffs' Counsel feel

6   strongly about their ability to certify a class, the legal landscape is constantly changing making

7   certification a potentially more difficult proposition. *See e.g. Astiana v. Ben & Jerry's Homemade,*

8   *Inc.*, 2014 U.S. Dist. LEXIS 1640 (N.D. Cal. Jan. 7, 2014); *Sethavanish v. ZonePerfect Nutrition*

9   *Co.*, 2014 U.S. Dist. LEXIS 18600, 2014 WL 580696 at *5 (N.D. Cal. Feb. 13, 2014) (describing

10  intra-circuit split and denying certification because proposed class of nutrition bar purchasers would

11  not be ascertainable). Moreover, as discussed in the Motion for Preliminary Approval, in January

12  2012, the Ninth Circuit rendered a decision in *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th

13  Cir. Cal. 2012) which put into question the viability of certifying a nationwide class under

14  California's consumer protection and unjust enrichment laws.  While the *Mazza* decision does not

15  affect the Settlement Class proposed here, if parties were to continue to litigate, Defendant would

16  undoubtedly raise *Mazza* in an effort to limit the size and scope of any certified Class.  Indeed, if

17  *Mazza* were applied by this Court, it could drastically reduce the size of the Class and negatively

18  impact the economics of this litigation.

19         Assuming Plaintiffs survive theses motions, they would still face a trial in which liability and

20  damages would be contested.  *See e.g.* Defendant's Answer and Affirmative Defenses to Plaintiffs'

21  Second Amended Complaint. Dkt. No. 43.   Finally, even if Plaintiffs were to succeed, any final

22  judgment could be appealed to the Ninth Circuit which would likely take significant time. These

23  efforts would continue to be costly and provide absolutely no guarantee that Plaintiffs or any

24  certified Class would achieve any recovery, let alone a recovery greater than the proposed

25  Settlement.

26         **3.    Skill & Efficiency of Plaintiffs' Counsel**

27         Plaintiffs' Counsel have litigated this case for almost two years and were able to successfully

28  fend off two attacks on the pleadings and negotiate a meaningful settlement against a well-funded

1   and highly competent opponent.  The settlement was hard fought and negotiated over a period of

2   several months and three separate mediations. Braun Decl. ¶12.  It was only achieved as Plaintiffs

3   prepared to take the depositions of five non-parties that supplied Trader Joe's with the Products at

4   issue in this litigation. *Id.* at ¶10.

5          Each of the attorneys involved in this case specializes in the prosecution of class litigation

6   and have extensive experience in consumer class action lawsuits that are similar in size, scope and

7   complexity to the present case.  Their expertise, experience and work done in this litigation is further

8   set forth in their Declarations accompanying this motion, (Braun Decl. Exs. C and D) and in their

9   firm resumes which were previously submitted in conjunction with Plaintiffs' Motion for

10  Preliminary Approval. Dkt. No. 74-1 Exs. B-D.  This experience was reflected in the skill in which

11  the complaints were drafted, how the oppositions to the motions to dismiss and judgment on the

12  pleadings were briefed and argued, and how the Settlement was negotiated.  Respectfully, without

13  Counsel's skill and effort, the favorable Settlement obtained in this case would surely not have

14  materialized.  *See, generally* Braun Decl.

15              **4.    Counsel's Fee and Expenses Are Contingent**

16         The Ninth Circuit has long recognized that the public interest is served by rewarding

17  attorneys who assume representation on a contingent basis to compensate them for the risk that they

18  might be paid nothing at all for their work. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19

19  F.3d at 1299 ("Contingent fees that may far exceed the market value of the services if rendered on a

20  non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent

21  representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they

22  win or lose."); *Vizcaino*, 290 F.3d at 1051 (courts reward successful class counsel in contingency

23  cases "for taking the risk of nonpayment by paying them a premium over their normal hourly rates").

24         Plaintiffs' Counsel took this case entirely on a contingent fee basis and had to forego other

25  financial opportunities to litigate it. Braun Decl. ¶¶18-19.  All the expenses were paid out of pocket

26  with no guaranteed of remuneration. *Id.*  Plaintiffs' Counsel have spent considerable outlays of time

27  and money by, among other things, (1) investigating the action; (2) drafting complaints; (3)

28  defending two attacks on the pleadings; (4) propounding discovery; (5) negotiating a settlement over

many months, including by participating in three full-day mediations; (6) drafting the preliminary

approval motion and related settlement documents; and (7) supervising the settlement

administration.  Braun Decl. ¶16.  Plaintiffs' Counsel expended these resources despite the real risk

that they would never be compensated at all. *Id.*

Plaintiffs' Counsel's "substantial outlay, when there is a risk that that none of it will be

recovered, further supports the award of the requested fees" here.  *In re Omnivision Techs.*, 559 F.

Supp. 2d 1036, 1047 (N.D. Cal. 2007); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1377 (9th

Cir. 1993)(recognizing that contingent fee rewarded class counsel not only for the hours they had in

the case to the date of the settlement, but for carrying the financial burden of the case).

### 5.   Awards Made in Similar Cases are Consistent with Counsel's Request

The request for attorneys' fees and reimbursement of expenses here is entirely consistent with

those typically awarded in this Circuit. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482,

491 (E.D. Cal. 2010) (noting that "[t]he typical range of acceptable attorneys' fees in the Ninth

Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark");

*Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416, at *22-23 (S.D. Cal. Jun. 1, 2010)

(noting that the amount of 33.33% of the common fund "falls within the typical range of 20% to

50% awarded in similar cases"). Indeed, Courts in this Circuit have routinely awarded fees of more

than 25% in common fund cases. *See, e.g., Vizcaino*, 290 F.3d at 1050 (affirming 28% fee); *In re

Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007 (awarding 28%); *Heritage Bond*,

2005 WL 1594403, at *23 (awarding 33.3%). *De Mira v. Heartland Empl. Serv.*, 2014 U.S. Dist.

LEXIS 33685, 8-9 (N.D. Cal. Mar. 13, 2014)(awarding a 28% from common fund); *Natalie Pappas

v. Naked Juice Co of Glendora, Inc., et al.*, Case No. LA CV11-08276 JAK (PLAx),  Dkt. No 184

(Awarded fee request that represents 28% of the settlement fund and 24.3% of the total value of the

settlement including injunctive relief); *In re Mego*, 213 F.3d at 457, 463 (9th Cir. 2000) (affirming

fee award of one third of common fund); *Knight*, 2009 U.S. Dist. LEXIS 11149 at *18-19 (awarding

30% fee); *In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.,* No. 02-ML- 1475-DT(RCx),

2005 U.S. Dist. LEXIS 13627, at *29 (C.D. Cal. June 10, 2005) (awarding one third of fund); *In re

Public Service Co.,* No. 91-0536M, 1992 U.S. Dist. LEXIS 16326, at *32-33 (S.D. Cal. July 28,

1992) (awarding 33% fee); *Antonopulos v. N. Am. Thoroughbreds, Inc.*, No. 87-0979G (CM), 1991

U.S. Dist. LEXIS 12579, at *9 (S.D. Cal. May 6, 1991) (awarding one third of fund); *In re M.D.C.*

*Holdings Sec. Litig.,* No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488, at *21, 32 (S.D. Cal.

Aug. 30, 1990) (awarding 30% fee where settlement obtained "in a very short amount of time" and

finding that class counsel should be rewarded, not penalized, for achieving early success on behalf of

the class).

Subtracting reasonable expenses in the amount of $55,619.46, Counsel's fee request is

$850,192.50 representing 26.5% of the fund.  A slight bump over the 25% benchmark is warranted

in this case due to the excellent result achieved by Counsel which includes the injunction that stops

Trader Joe's from using the alleged misleading labels and further prevents them from using them in

the future barring a change in the law or change in formulation of the Products.

Although the value of the injunctive component cannot easily be set in a case such as this,

here Judge Litchman (ret.) specifically valued the costs of implementing the labeling changes and

the subsequent value to the Settlement Class at $350,000.00 which would bring the real settlement

value of this case to $3,725,000 making Plaintiffs' Counsel's fee request tantamount to 24% of the

settlement value.[9] *Craft v. County of San Bernardino*, 2008 U.S. Dist. LEXIS 27526 (C.D. Cal.

2008)(Results in class actions cannot always be judged solely by the monetary component of the

settlement); *Merola v. Atlantic Richfield Co.*, 515 F.2d 165, 169-70 (3d. Cir.1975)(noting

"Attorneys' fees [in class action cases] [may be] award[ed] even though the benefit conferred is

purely non-pecuniary in nature.") (citing *Mills v. Elec.; see also Hall v. Cole*, 412 U.S. 1, 7 n.5, 93 S.

Ct. 1943, 36 L. Ed. 2d 702 (1973) ("the rationale of …[the class fund doctrine] must logically

extend, not only to litigation that confers a monetary benefit on others, but also to litigation 'which

corrects or prevents an abuse which would be prejudicial to the rights and interests' of those

others."); *Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al.,* Case No. LA CV11-08276

JAK (PLAx) Dkt. No 184 (awarded fee request that represents 28% of the settlement fund and

24.3% of the total value of the settlement which included injunctive relief).

---

[9] $950,000 (request) - $55,619.46 (expenses) / 3,725,000 (total settlement value) = 24%

### C.   A Lodestar-Multiplier Cross-Check Confirms the Reasonableness of Counsel's Requested Fees

Courts in the Ninth Circuit often examine the lodestar calculation as a cross-check on the percentage fee award. *Vizcaino*, 290 F.3d at 1050 ("[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award."). The cross-check analysis is a two-step process. First, the lodestar is determined by multiplying the number of hours reasonably expended by the reasonable rates requested by the attorneys. *See, Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000). Second, the court determines the multiplier required to match the lodestar to the percentage-of-the-fund request made by counsel and determines whether the multiplier falls within the accepted range for such a case. *See Vizcaino,* 290 F .3d at 1051. Here, the lodestar cross-check further confirms that the attorney fee request is reasonable.

"[Lodestar is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001). The accompanying declarations of Plaintiffs' Counsel set forth the number of hours of worked and the billing rates used to calculate their lodestar.  Braun Decl. ¶¶20-22, and Exs. C and D.  As further described in those declarations, Plaintiffs' Counsel and their staffs have devoted a total of approximately 1,558hours in prosecuting this action, a number that will grow slightly as they continue to finalize the settlement process and close the litigation.  Braun Decl. ¶29. Their combined efforts yielded a lodestar of $850,192.50. *Id.*

Plaintiffs' Counsel's time was spent primarily on the following tasks: (1) investigating the factual and legal basis for claims of Plaintiffs and Class Members; (2) drafting the complaints; (3) opposing Trader Joe's motion to dismiss and motion for a judgment on the pleadings; (4) propounding extensive discovery; (5) participating in 3 days of mediation and extensive settlement discussions; (6) drafting the preliminary approval motion and related settlement documents; and (7) supervising the settlement administration. Braun Decl. ¶16.

Plaintiffs' Counsel's hourly rates are also reasonable. In assessing the reasonableness of an attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and

1   reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1994). Plaintiffs' Counsel here are

2   experienced, highly regarded members of the bar with extensive expertise in the area of class actions

3   and complex litigation involving consumer claims like those at issue here. Plaintiffs' Counsel's

4   customary rates used in calculating the lodestar here have been routinely approved by Courts in this

5   District. Braun Decl. ¶¶22-25.

### 1.     A Lodestar Multiplier is Justified

7         The fee requested by Plaintiffs' Counsel reflects a modest 1.12 multiplier and, respectfully,

8   should be granted.

9         Even when courts in the Ninth Circuit have relied on the lodestar method alone to award

10   attorneys' fees, these courts "have routinely enhanced the lodestar to reflect the risk of nonpayment

11   in common-fund cases" by using a multiplier. *Chemical Bank v. City of Seattle (In re Washington*

12   *Pub. Power Supply Sys. Sec. Litig.)*, 19 F.3d 1291, 1299-1300 (9th Cir. 1994). The rationale for

13   enhancing the lodestar figure derives in part from the established practice in the private legal market

14   of rewarding attorneys who take contingency cases with the risk of non-payment by paying them "a

15   premium over their normal hourly rates" when they win. *Id.* at 1299. Moreover, the multiplier

16   incentivizes counsel to resolve litigation as quickly as possible, rather than cause delay merely to

17   generate additional attorneys' fees. Thus, the Ninth Circuit has found that even though a district

18   court generally has discretion to apply a multiplier to compensate for the risk of nonpayment, "[i]t is

19   an abuse of discretion to fail to apply a risk multiplier . . . when: (1) attorneys take a case with the

20   expectation that they will receive a risk enhancement if they prevail, (2) their hourly rate does not

21   reflect that risk, and (3) there is evidence that the case was risky." *Fischel*, 307 F.3d at 1010. This is

22   precisely the case here.

23         Application of these principles supports awarding the fee sought here. First, the lodestar in

24   this case does not reflect the risk of nonpayment. *See*, Braun Decl. ¶ 18. Second, in pursuing this

25   litigation, Plaintiffs' Counsel reasonably believed that they would receive additional compensation

26   for the risk of nonpayment in light of Ninth Circuit law requiring a multiplier where there is such a

27   risk. *Id.*; *Chemical Bank*, 19 F.3d at 1299-1301. Thus, basing the award of attorneys' fees in this

28   case on hourly rates alone would contradict controlling Ninth Circuit authority. *See Fischel v.*

1    *Equitable Life Assur. Soc'y of the United States*, 307 F.3d 997, 1008 (9th Cir. Cal. 2002)("[T]he

2    district court failed fully to analyze the risk factor and thus abused its discretion in determining

3    whether to award a risk multiplier."). Finally, as noted above, Plaintiffs' Counsel undertook this case

4    at great risk and produced an excellent and timely settlement.  Braun Decl. ¶¶14, 18.  Thus, a

5    multiplier enhancing the lodestar figure to compensate for the risk of non-payment and for the

6    benefit of resolving litigation in a timely and efficient manner is appropriate.

7        Courts regularly approve fee awards resulting in multipliers which are near or higher than

8    that requested here. *See, e.g., Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 48540, 5-6

9    (N.D. Cal. Mar. 31, 2014)(Finding a 3.5 multiplier reasonable); *AllianceOne*, No. 3:08-cv-00248-

10    JAH-WVG (S.D. Cal. Sept. 28, 2012) (Ex. B to Selbin Decl.) (awarding 30% of the settlement fund,

11    which amounted to a 3.81 multiplier of class counsel's lodestar, and awarding costs on top of the fee

12    award); *Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. Cal. 2007) (upholding 25% fee

13    award yielding multiplier of 6.85, finding that it "falls well within the range of multipliers that courts

14    have allowed"); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008)

15    (approving 25% fee award yielding a multiplier of 5.2 and stating that "there is ample authority for

16    such awards resulting in multipliers in this range or higher"); *Van Vranken v. Atlantic Richfield Co.*,

17    901 F. Supp. 294, 298-99 (N.D. Cal. 1995) (multiplier of 3.6 was "well within the acceptable range

18    for fee awards in complicated class action litigation," and stating that "[m]ultipliers in the 3-4 range

19    are common"); *see also Vizcaino*, 290 F.3d at 1051 and Appendix (affirming 28% fee award where

20    multiplier equaled 3.65; and citing cases approving multipliers in common fund cases averaging 3.32

21    and going as high as 19.6); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123 (2d Cir.

22    2005) (approving multiplier of 3.5); 3 Newberg on Class Actions § 14.03 (multipliers "ranging from

23    one to four are frequently awarded in common fund cases where the lodestar method is applied").

24    Such multipliers, particularly where the percentage of the fee requested is reasonable, reflect the

25    principle that attorneys should not be discouraged from obtaining early victories that benefit the

26    class. *See, e.g., Craft*, 624 F. Supp. 2d at 1123-1127 (awarding 25% of fund, which amounted to 5.2

27    multiplier, in part because of the numerous drawbacks and disincentives associated with a pure

28    lodestar approach); *see also Lopez v. Youngblood, 2011 U.S. Dist. LEXIS 99289 *10, 39-43 (E.D.*

1  *Cal. Sept. 1, 2011)* (citing *Swedish Hosp. Corp. v. Shalala, 1 F.3d 1261, 1266-67 (D.C. Cir. 1993)*

2  (awarding 28.5% of fund, and finding that a lodestar cross-check is "not a useful reference point").

3  **D.      Plaintiffs' Counsel's Request for Reimbursement of Expenses are Reasonable**

4  Plaintiffs' Counsel also request a reimbursement for the reasonable and necessary expenses

5  advanced to prosecute this litigation since its inception. These expenses, totaling $55,619.46 are

6  detailed in the Braun Decl. ¶¶21 and Exs. 3, 4, and 5.  It is axiomatic that Counsel are entitled to

7  reimbursement of their reasonable out-of-pocket expenses. *See* Fed. R. Civ. P. 23(h); *see e.g. Walsh*

8  *v. Kindred Healthcare*, 2013 U.S. Dist. LEXIS 176319 (N.D. Cal. Dec. 16, 2013).  The appropriate

9  analysis to apply in deciding which expenses are compensable in a case of this type is whether the

10  particular costs are the type typically billed by attorneys to paying clients in the marketplace. *Harris*

11  v. *Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994) (allowing recovery of "out-of-pocket expenses that

12  would normally be charged to a fee paying client"); see also *Linney* v. *Cellular Alaska P'ship, No.*

13  *96-3008,* 1997 WL 450064, at \*7 (N.D. Cal. July 18, 1997) ("It appears to the Court that the costs

14  requested are reasonable in light of the complexity of the litigation and the number of counsel

15  involved, and [the costs of litigation] are therefore approved by the Court."). The categories of

16  expenses for which class counsel seek reimbursement are the type of expenses routinely charged to

17  hourly clients and, therefore, the full requested amount should be reimbursed. *In re Media Vision,*

18  913 F. Supp. 1362, 1367-72 (N.D. Cal. 1996) (costs related to retention of experts, photocopy costs,

19  travel expenses, postage, telephone costs, computerized legal research fees, and filing fees may be

20  reimbursed).

21  **E.      Plaintiffs' Incentive Awards are Reasonable and Should be Approved**

22  The Ninth Circuit has recognized that, "named plaintiffs, as opposed to designated class

23  members who are not named plaintiffs, are eligible for reasonable incentive payments." *Staton*,

24  327 F.3d at 977; *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (service

25  awards "are fairly typical in class action cases"). Such awards are "intended to compensate class

26  representatives for work done on behalf of the class [and] make up for financial or reputational risk

27  undertaken in bringing the action." *Id.* Small incentive awards, such as those requested here,

28  promote the public policy of encouraging individuals to undertake the responsibility of

1 | representative lawsuits. Here, the Settlement contemplates a modest incentive award of $2,500 for

2 | each of the two Plaintiffs who serve as Class Representatives.  §VIII.2.

3 |    Each Plaintiff has expended time and effort in prosecuting this litigation consisting of: (a)

4 | retaining counsel; (b) providing them information necessary to draft the complaints including the

5 | Products they purchased, the location and frequency of such purchases and the reasons for selection

6 | of the products; (c) reviewing and commenting on the draft complaints; (d) monitoring the litigation

7 | which included regular calls with their counsel as well as the review of documents and pleadings

8 | which were sent them; (e) discussing the settlement terms and ultimately agreeing to and approving

9 | such terms; (f) understanding and agreeing to each of the responsibilities of a named plaintiff and

10 | putative class representative.  Braun Decl.  ¶31 and Exs. E and F.

11 |    Courts routinely grant incentive awards in similar cases and in similar amounts to that

12 | requested here. *See, e.g., In re Mego Fin. Corp. Securities Litig.,* 213 F.3d 454,463 (9th Cir. 2000)

13 | (approving $5,000 incentive awards each to two class representatives); *Hopson v. Hanesbrands,*

14 | 2009 WL 928133, at * 10 (N.D. Cal. Apr. 3, 2009) ("In general, courts have found that $5,000

15 | incentive payments are reasonable"); *Chu v. Wells Fargo Investments, LLC,* 2011 U.S. Dist. LEXIS

16 | 15821* 5 (N.D. Cal. Feb. 16, 2011) (awarding $10,000 to two plaintiff representatives involved in

17 | case for five years and $4,000 to three representative plaintiffs participating in case for two years,

18 | from a $6.9 million settlement fund); *Odrick v. UnionBanCal Corp.,* No. C 10-5565 SBA, 2012 U.S.

19 | Dist. LEXIS 171413, at *11, 18 (N.D. Cal. Dec. 3, 2012) (awarding $5,000 to class representative

20 | where "the settlement was reached at the early stages of litigation"); *Fitzgerald v. City of Los*

21 | *Angeles,* No. CV 03-01876 NM, 2003 U.S. Dist. LEXIS 27382, at *9 (C.D. Cal. Dec. 8, 2003)

22 | (awarding $3,500 each to class representatives in early settlement case).

23 |    Given the efforts undertaken by Plaintiffs, and the reasonableness of the amount sought, the

24 | Court should grant approval of the requested incentive awards.

25

26

27

28

## III.   CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court approve Plaintiffs' Counsel's request for attorneys'' fees, reimbursement of expenses and award of Plaintiff incentive awards.

Dated:  May 1, 2014

**BRAUN LAW GROUP, P.C.**

Michael D. Braun
10680 West Pico Boulevard, Suite 280
Los Angeles, CA 90064
Telephone:  (310) 836-6000
Facsimile:  (310) 836-6010

Janet Lindner Spielberg
**LAW OFFICE OF JANET
    LINDNER SPIELBERG**
12400 Wilshire Boulevard, Suite 400
Los Angeles, CA 90025
Telephone: (310) 392-8801
Facsimile: (310) 278-5938

Joseph Kravec, Jr.
Wyatt A. Lison
**FEINSTEIN DOYLE PAYNE
    & KRAVEC, LLC**
Allegheny Building, 17th Floor
429 Forbes Avenue
Pittsburgh, PA  15219
Telephone:  (412) 281-8400
Facsimile:  (412) 281-1007

*Attorneys for Plaintiffs*

1

2

**PROOF OF SERVICE**

3

STATE OF CALIFORNIA          )

4                                                      )

COUNTY OF LOS ANGELES )

5

          I am employed in the County of Los Angeles, State of California, I am over the

6

age of 18 and not a party to the within action; my business address is 10680 W. Pico Boulevard, Suite 280, Los Angeles, California 90012.

7

          On May 1, 2014, I served the document(s) described as:

8

          1.   NOTICE  OF MOTION AND MOTION IN SUPPORT OF

9

               PLAINTIFFS' COUNSEL'S REQUEST FOR  AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PLAINTIFFS INCENTIVE AWARD

10

11

          2.   DECLARATION OF MICHAEL D. BRAUN IN SUPPORT OF PLAINTIFFS' COUNSEL'S REQUEST FOR  AWARD OF

12

               ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PLAINTIFFS INCENTIVE AWARD

13

14

**[x] BY ELECTRONIC TRANSMISSION USING THE COURT'S ECF**

15

**SYSTEM:** I caused the above document(s) to be transmitted electronic mail to those ECF registered parties listed on the Notice of Electronic Filing (NEF) pursuant to Fed. R. Civ. P. 5(d)(1) and by first class mail to those non-ECF registered parties listed on

16

the Notice of Electronic Filing (NEF). *"A Notice of Electronic Filing (NEF) is*

17

*generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute*

18

*the proof of service as required by Fed.R.Civ.P.5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing*

19

*pro se."*

20

          I declare that I am employed in the office of a member of the bar of this court at

21

whose direction the service was made.

22

          Executed on May 1, 2014, at Los Angeles, California.

23

24

25

_____

Michael D. Braun

26

27

28