Joseph Darrell Palmer (SBN 125147)
darrell.palmer@palmerlegalteam.com
Law Offices of Darrell Palmer PC
2244 Faraday Avenue, Suite 121
Carlsbad, CA 92008
Telephone: (858) 215-4064
Facsimile: (866) 583-8115

Attorneys for Objector Dawn Weaver



FILED
2014 JUN -5 P 2: 14
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

TAMAR DAVIS LARSEN and ARAN EISENSTAT, on behalf of themselves and all others situated,

    Plaintiffs,

v.

TRADER JOE' COMPANY, a California Corporation,

    Defendant.

Case No. 11-CV-05188 (WHO)

**OBJECTIONS OF DAWN WEAVER TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR**

Date: July 9, 2014
Time: 2:00 p.m.
Place: Courtroom 2, 17th Floor
Judge: Hon. William H. Orrick

## I. INTRODUCTION

Dawn Weaver objects to the settlement.

### A. Summary of the Settlement

The settlement provides that Trader Joe's will pay $3,375,000.00 into a settlement fund. According to the Stipulation of Settlement, class counsel's fees and expenses, incentive awards for class representatives, and the expenses for administering the settlement will all be paid prior to any monies being paid to class members. After these payments are made, class members who submit valid and timely claim forms will be paid. Individual class members may request compensation for up to ten purchases of the products, unless they have proofs of purchase (in either receipts or product packaging),

1

1  in which case they will not be subject to the ten product limitation. If the valid claims submitted
2  exceeds the remainder left in the fund after payment of the attorneys' fees, incentive awards, and
3  settlement administration expenses, then payments to class members will be reduced pro rata. If any
4  monies remain in the fund after all claims are paid, however, Trader Joe's products with a wholesale
5  value equal to the amounts remaining will be distributed to class members at Trader Joe's stores. In
6  accomplishing this product distribution, Trader Joe's must state the products are being provided as part
7  of the settlement, and by accepting the products consumers must warrant they are class members. The
8  value of the products distributed can also be reduced by up to 10% of the value of the residual to cover
9  Trader Joe's distribution costs.

### B. The Standard for Approving a Proposed Class Action Settlement

In reviewing a proposed settlement, the district court has a duty to ensure the settlement is "fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e)(2) Appellate courts accord considerable deference to the district court's "knowledge of the litigants and of the strengths and weaknesses of their contentions". . . . and recognize that the district court "is in the best position to evaluate whether the settlement constitutes a reasonable compromise." *Grant v. Bethlehem Steel Corp. v. Bethlehem Steel Corporation*, 823 F.2d 20, 23 (2d Cir. 1987). "Because class actions are rife with potential conflicts of interest between class counsel and Class Members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfashi v. Fleet Mortgage Corp.* 356 F.3d 781, 785 (7th Cir. 2004).

The court must be protective of unnamed Class Members. "In approving a proposed class action settlement, the district court has a fiduciary responsibility to ensure that 'the settlement is fair and not a product of collusion, and that the Class Members' interests were represented adequately.'" *Grant, citing In re Warner Communications Sec. Litig.*, 798 F.2d 35, 37 (2d Cir.1986). *See also Silber v. Mahon*, 957 F.2d 697, 701 (9th Cir. 1992) ("Both the class representative and the courts have a duty to protect the interests of absent Class Members.")

Courts also may refuse to approve a settlement if insufficient notice is provided to Class Members to protect their due process rights. Fed. R. Civ. Proc. 23(e)(1) specifies that "direct notice" of

1  a proposed settlement must be provided "in a reasonable manner to all Class Members who would be
2  bound by the proposal."

3  Recent Ninth Circuit case law has established certain additional guidelines for considering the
4  fairness of class action settlements. In *In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935
5  (2011), the court noted that "Prior to formal class certification, there is an even greater potential for a
6  breach of fiduciary duty owed the class during settlement. Such agreements must withstand an even
7  higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required
8  under Rule 23(e) before securing the court's approval as fair." *Id.*, at 946, *citing Hanlon v. Chrysler
9  Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998), *et al.* The court observed, "Collusion may not always be
10 evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit
11 collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-
12 interests and that of certain class members to infect the negotiations." *Id.* (citations omitted) The court
13 noted that the following may be signs of such impropriety: (1) "when counsel receive a
14 disproportionate distribution of the settlement," (2) "when the parties negotiate a "clear sailing"
15 arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3)
16 "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class
17 fund." *Id.*, at 947.

18 II.  **ARGUMENT AND OBJECTIONS**

19 It seems that much of the class appear to find the lawsuit itself frivolous and express the desire
20 the case be dismissed; Trader Joe's shoppers are very loyal. See, e.g., objections of Aleta Arthur (Dkt.
21 90), Cathy MacKinney (Dkt. 91 ), and Marj Kenney (Dkt. 94). This objection however, focuses on how
22 the settlement unfairly favors the interests of the class counsel and class representatives over absent
23 class members.

24 At the preliminary approval hearing on December 4, 2013, the Court expressed concerns
25 regarding certain elements of the proposed settlement. The Parties were directed to submit a revised
26 Stipulation of Settlement and Long-Form Notice for the Court's review. The revisions, encapsulated in
27 the Superseding Stipulation of Settlement (Dkt. 81), improved certain unfair aspects of the settlement.
28 The incentive awards to class representatives were reduced from $7,500, as proposed in the original

settlement agreement, to $2,500 in the Superseding Settlement. The value of Trader Joe's products to be distributed from the residual fund will now be calculated at wholesale value, rather than retail value as was originally contemplated. Still the settlement is structured to benefit class counsel and representative plaintiffs at the expense of class members, and raises red flags under Ninth Circuit guidelines, including the three flags set forth in In re Bluetooth, *supra* ((1) disproportionate attorneys' fees, (2) a clear sailing agreement, and (3) a reversion of unclaimed monies to defendant).

### A. The bulk of the settlement compensation is likely to be distributed in Trader Joe's products.

It is unclear how much of the gross settlement fund will be distributed to class members in cash. The compensation per product being offered to injured class members ranges from $3.99 on the high end (offered to purchasers of Trader Joe's Jumbo Cinnamon Rolls), to a low of $2.70 (being offered to purchasers of Joe-Joe's Chocolate Vanilla Creme Cookies and Joe-Joe's Chocolate Sandwich Creme Cookies). Most claimants will not have receipts, meaning they will be limited to between $27.00 and $39.99 or less for their claims if they claim reimbursement for the maximum of ten products.

In theory the compensation to be paid to class members for purchases of eligible products is not unfair in comparison to the cost of the products. But with the value of individual claims ranging from $2.70 to $39.99, based on comparable class action settlements, the percentage of class members who will submit claim forms is likely to be extremely low. In claims based class action cases having similar low claim value, less than ten percent of class members typically submit claims. As one federal court observed, "'claims made' settlements regularly yield response rates of 10 percent or less." *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 52 (D. Me. 2005). Settlements offering refunds in the ten dollar range typically result in less than a 1% claim rate. *See, e.g., Spillman v. RPM Pizza, LLC*, No. 10-349-BAJ-SCR, 2013 U.S. Dist. LEXIS 72947, at *8 (M.D. La. May 23, 2013) (0.27% claims rate for $15 max claim); *Lagarde v. Support.com, Inc.*, No. 12-0609 JSC, 2013 U.S. Dist. LEXIS 67875, at *7 (N.D. Cal. May 13, 2013) (0.17% claim rate for $10 refund); *and Pearson v. Nbty, Inc.*, No. 11-cv-7972, 2014 U.S. Dist. LEXIS 357, at *22 (N.D. Ill. Jan. 3, 2014) (0.25% claims for $12 claim without proof of purchase and $50 with proof of purchase). *See also* "Appendix A: Additional Examples of Settlements With Payments to a Very Small Percentage of Class Members" in *Do Class Actions Benefit Class*

1  *Members? An Empirical Analysis of Class Actions*, a study by the law firm of Mayer Brown LLP,
2  available at
3  *http://www.mayerbrown.com/files/uploads/Documents/PDFs/2013/December/DoClassActionsBenefitCl*
4  *assMembers.pdf*.

5      The parties have not provided sufficient information on the number of offending products sold
6  during the class member to determine the size of the class and the size of the settlement may reflect an
7  assumption that only a small percentage of class members will claim refunds. But given how low the
8  claims rate is likely to be, distribution of Trader Joe's products may well be the primary relief provided
9  to class members. This distribution is unfair in two respects. First, the product distribution is arbitrary.
10 Trader Joe's will distribute these products at stores with no regard to whether the people accepting the
11 products submitted claim forms or not. Although those accepting the products will be notified that by
12 accepting the products they warrant they are class members, this limitation is likely to be widely
13 ignored. As a result, the bulk of the products may go to current Trader Joe's customers who are not
14 class members. Although Trader Joe's must acknowledge the class action settlement, this free product
15 distribution is likely to build good will amongst Trader Joe's customers and is likely to benefit the
16 defendant more than the class. Second, this product distribution is unfair to the class because class
17 members prefer to receive cash rather than products. *See Robert P. DeWitte and Steven Weisbrot, KCC*
18 *Class Action Services*, "4 Steps For Smooth Class Action Settlement Administration", *available at*
19 *http://www.law360.com/articles/452212/4-steps-for-smooth-class-action-settlement-administration*
20 (noting that "cash is king" and that "in one illustrative case, class members chose between a $10 check
21 and several days of free car rental services worth hundreds of dollars. The majority of claimants opted
22 for the small monetary award"). Although not strictly speaking a reversion of funds to the defendant,
23 this feature of the settlement is similar to reversionary settlements in that the distribution is likely to
24 benefit Trader Joe's in building good will amongst its existing client base. Reversionary settlements run
25 afoul of *Bluetooth*, as discussed *supra*.

26     It would be more equitable to distribute unclaimed funds in a second distribution to class
27 members, or to provide coupons with the cash distribution that can be redeemed at Trader Joe's stores.
28 Using coupons could ensure the product distribution is limited to those filing claim forms.

## B. The attorney's fees are improperly based on a gross settlement amount rather than the actual benefit conferred on the class

For multiple reasons, including the uncertainty surrounding the number of claims that will be submitted, the actual benefit conferred on the class by this settlement remains unclear. The value of the settlement is also unclear because the total expenses to be paid out of the settlement are unknown. Despite this, the settlement provides that $950,000.00 in attorneys' fees and expenses will be deducted from the settlement fund of $3,375,000.00. This amount is 28% of the total settlement fund. As class counsel acknowledges, the benchmark percentage in the Ninth Circuit is 25%, so this is presumptively high. *See Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.1990). The court must consider *Eubank v. Pella Corp.*, 13-2091, 2014 WL 2444388 (7th Cir. June 2, 2014), where Justice Posner discussed similar problems to those raised in this settlement. Particularly problematic was the fact that the district court approved attorney's fees based on representations that the value of the settlement to the class was $90 million. As in this case, one of the principle problems with the *Eubank v. Pella* settlement was the uncertainty over the value of the settlement to the class. In *Eubank*, individual claim values ranged from $750.00 to $6,000.00 (with arbitration required for the higher claims). Despite the high claim value, a mailing of 225,000 notices resulted in only 1,276 claim forms being returned. On appeal, the court determined the actual value of the settlement to the class was closer to 1.5 million, or at best $8.5 million – meaning the attorneys' fees requested would actually surpass the recovery of the class. *Eubank*, at *9. Justice Posner remarked:

> "Not only did the settlement agreement not quantify the benefits to the class members, but the judge approved it before the deadline for filing claims. He made no attempt to estimate how many claims were likely to be filed, though without such an estimate no responsible prediction of the value of the settlement to the members of the class could be made."

*Eubank*, at *6. Before approving attorneys' fees in this case, the court should require specific information on the number of claims submitted and the value of those claims. Only that amount should be used in calculating the actual benefit conferred on the class; the product distribution should only be viewed as at best a coupon benefit, and its value to the class should be discounted substantially.

1  Class counsel's lodestar is also suspect. Although they have indicated the hourly rates at which
2  legal services are billed, they have not submitted detailed billing records. This information is necessary
3  to determine if counsel have improperly billed for certain services. *Cf. Bluetooth*, where after review of
4  billing records the district court reduced the lodestar based on certain improper practices, including
5  duplicative entries, excessive charges for most categories of services, substantial block billing, and use
6  of an inflated hourly rate. *Bluetooth*, at 943.

7  The percentage fee award is troubling because the projected settlement administration expenses
8  have not been disclosed. Since the notice plan involves advertisements in national newspapers and
9  direct mail to over 500,000 recipients, and the processing of claims will involve the mailing of
10 individual claim amounts to a national class, settlement administration expenses may run hundreds of
11 thousands of dollars. Besides initial settlement administration expenses, $100,000 is set aside for future
12 administration expenses. *See* Stipulation, Section C (III) (e). Expenses related to distributing products
13 from the residual fund will also be deducted from the settlement fund. Although these expenses are
14 capped at 10%, the amount of this expense is also unclear.

15 Given the uncertain expenses, the actual benefit conferred on the class is still unknown. The
16 proposed attorneys' fee award is based on the gross settlement fund. When the expenses are subtracted,
17 the total amount available for distribution to the class will be significantly reduced. In a case such as
18 this involving a complex combination of benefits, guidance is provided by the Class Action Fairness
19 Act. Although CAFA concerned coupon settlements, features of this settlement are analogous. *Cf.*
20 *Class Action Fairness Act*, 28 U.S.C.A. § 1712(a)-(c), which requires that the portion of attorney's fee
21 attributable to the award of the coupons should be based on the value to class members of the coupons
22 redeemed.

23 *See also In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1186 (9th Cir. 2013) (finding a district
24 court erred in awarding $1.5 million in attorneys' fees before determining whether attorneys' fees were
25 "attributable to" the coupon relief). Although strictly speaking this settlement does not involve coupons,
26 the informal product distribution contemplated here, and the undisclosed expenses, suggests greater
27 scrutiny of the actual benefit conferred on the class is required.
28

7

CASE NO. 11-CV-01588
OBJECTIONS OF DAWN WEAVER TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR

Awarding attorneys' fees without clear information on the benefit to be conferred on the class, also runs afoul of the guidelines found in *Bluetooth*. Under *Bluetooth*, a red flag is raised when counsel receives a disproportionate distribution under the settlement. To determine whether this has occurred, it is crucial that a court know the benefit to be conferred on the class. *See Bluetooth* at 943 (reversing and remanding after district court failed to make comparison between attorney award and value of settlement benefit to class); *accord In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013) (reversing where district court failed to "withhold final approval until the actual distribution of funds [could] be estimated with reasonable accuracy"). Absent real information on the value of the benefit to be conferred on the class by this Settlement, the court should defer approval of the attorneys' fees until the value of the claims submitted can be determined with some certainty. This will only be possible after the deadline for submission of claims forms on June 16, 2014 has passed.

**C. The class representative payment is too high**

The settlement provides class representatives will receive $2,500 each but this is still too much and should compared average class member recovery of $2.70 to $39.99. The incentive awards being requested for class representatives amount to nearly 100 times the maximum average claim, or nearly 1,000 times the value of a claim for one product. This number is too high.

In evaluating a similar high incentive award relative to low class payout, the Ninth Circuit held that the "incentive awards significantly exceeded in amount what absent class members could expect upon settlement approval" and "created a patent divergence of interests between the named representatives and the class". *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1161 (9th Cir. 2013). As in *Radcliffe*, the high incentive award raises serious questions about the ability of the class representatives to serve the class without letting their own personal gain affect their judgment. Rule 23(a)(4) of the Federal Rules of Civil Procedure requires that "the representative parties will fairly and adequately protect the interests of the class."

**D. The Clear Sailing Agreement is a Red Flag**

Under the Settlement Agreement, Trader Joe's agreed not to oppose class counsel's request for attorneys' fees and expenses of $950,000 and the incentive awards for the class representatives. See Superseding Settlement Agreement, Section VIII, (1) - (2).

A clear sailing clause stipulates that attorney awards will not be contested by the defendant. Many courts have found such clauses problematic in class action settlements, and in other types of settlements as well. "Such a clause by its very nature deprives the court of the advantages of the adversary process." *See In re Bluetooth*, 654 F.3d at 948, *citing Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1148 (9th Cir.2000), *and Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991). For a more detailed treatment of this issue, *see also William D. Henderson*, "Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements," 77 TUL. L. REV. 813, 816 (2003) (urging courts to reject all settlements including clear sailing provisions). The clear sailing provision agreement raises another red flag under Bluetooth, suggesting the court should apply greater scrutiny to this settlement.

### III. Joinder in Other Objections

Objector joins in and adopts all other objections not inconsistent with these objections.

### IV. Conclusion

For the foregoing reasons and all others to be presented at oral argument, these objectors request that the court sustain their objections and grant the following relief:

- Upon proper hearing, sustain these Objections.
- Continue the hearing until the parties report on the actual compensation delivered to the class.
- Upon proper hearing, enter such Orders as are necessary and just to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement.

LAW OFFICES OF DARRELL PALMER PC

Dated: June 2, 2014     By: _____
                         Joseph Darrell Palmer
                         Attorney for Objector Dawn Weaver

Joseph Darrell Palmer (SBN 125147)
darrell.palmer@palmerlegalteam.com
Law Offices of Darrell Palmer PC
2244 Faraday Avenue, Suite 121
Carlsbad, CA 92008
Telephone: (858) 215-4064
Facsimile: (866) 583-8115

Attorneys for Objector Dawn Weaver

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TAMAR DAVIS LARSEN and ARAN EISENSTAT, on behalf of themselves and all others situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRADER JOE' COMPANY, a California Corporation,<br><br>Defendant. | Case No. 11-CV-05188 (WHO)<br><br>**DECLARATION OF DAWN WEAVER IN SUPPORT OF OBJECTIONS TO PROPOSED SETTLEMENT**<br><br>Date: July 9, 2014<br>Time: 2:00 p.m.<br>Place: Courtroom 2, 17th Floor<br>Judge: Hon. William H. Orrick |

I, Dawn Weaver, declare as follows:

1. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2. I'm a class member.

3. My claim form is attached to this declaration.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

June 2, 2014

_____
Dawn Weaver

1

# TRADER JOE'S SETTLEMENT ONLINE CLAIM FORM CONFIRMATION

## Your Claimant ID # is 2061843

### Name/Address:

First Name: DAWN

Last Name: WEAVER

Street Address: 208 E MORELLO

City: ENCINITAS

State: CA

Zip Code: 92124

### Contact Information:

Daytime Phone Number: 858-829-3659

E-mail Address: WEAVDM@GMAIL.COM

### Qualifying Purchases:

Below is the total number of products claimed between October 24, 2007 and February 6, 2014 and the payment option selected:

| PRODUCT | NUMBER OF PURCHASES WITHOUT PROOF OF PURCHASE | NUMBER OF PURCHASES WITH PROOF OF PURCHASE | TOTAL |
|---|---|---|---|
| Joe-Joe's Chocolate Vanilla Creme Cookies | 3 | | 3 |
| Trader Joe's Jumbo Cinnamon Rolls | 2 | | 2 |
| Trader Joe's Fresh Pressed Apple Juice | 5 | | 5 |

**GRAND TOTAL: 10**

Home