

**Pamela Sweeney**
**2935 South Fish Hatchery Road Unit #7**
**Madison, WI 53711**
**Pam.sweeney1@gmail.com**
**608-770-1003**

JUN 06 2014

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

May 31, 2014

United States District Court
Clerk of Court's Office
Northern District of California,
San Francisco Division
450 Golden Gate Avenue
San Francisco, CA 95113

Re: Trader Joe's Class Action-Objection

11-5188 WHO

To the Hon. William Orrick:

### I. CLASS MEMBERSHIP.

At the time of purchase I lived at 5763 Golden Terrace, Madison WI 53711. I shop at Trader Joe's often. My purchases are outlined in my claim. Objector intends to appear at the fairness hearing and requests being added to the service list.

### III. THIS SETTLEMENT CONTAINS TWO OF *BLUETOOTH'S* THREE "WARNING SIGNS" OF SELF-DEALING.

California courts have a "right and responsibility" to review attorneys' fee provisions of settlement agreements in order to determine the overall reasonableness. *Garabedian v. Los Angeles Cellular Telephone Co.*, 118 Cal. App. 4th 123 (2004) overall reasonableness. *Garabedian v. Los Angeles Cellular Telephone Co.*, 118 Cal. App. 4th 123 (2004). The Ninth Circuit's benchmark for the award of attorneys' fees is 25% of the value of the settlement. *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). This settlement carries many of the signs of self-dealing that caused this State's Circuit's Court of Appeals to strike down a similarly structured settlement a little more than two years ago. *Bluetooth*, 654 F. 3d at 947. That decision's dishonor roll of "warning signs" of self-dealing is persuasive, if not controlling.

#### A. Under *Bluetooth,* Fairness Prohibits Self-Dealing.

Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests ... to infect the negotiations." *Bluetooth*, 654 F.3d at 947 (citing *Staton v. Boeing Co.,* 327 F.3d at 960). A "district court ha[s] a fiduciary responsibility to the silent class members." *In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d at 1295-96. Not that the settlement happened to be at "arm's length" without explicit collusion; the settlement must be objectively reasonable as well

Objection to Class Action Settlement  1

and must avoid self-dealing by class counsel. Concerns about the potential conflict of interest between class counsel and their clients "warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement..." *Hanlon v. Chrysler Corp.,* 150 F.3d at 1021; *accord Bluetooth,* 654 F.3d at 947.

Any court judging the fairness of a class action faces "a responsibility difficult to discharge when the judge confronts a phalanx of colluding counsel. The defendant wants to minimize outflow of expenditures and the class counsel wants to increase inflow of attorneys' fees. Both can achieve their goals if they collude to sacrifice the interests of the class." *Thorogood v. Sears Roebuck & Co.,* 547 F.3d 742, 745 (7th Cir. 2008), *vacated on other grounds by Thorogood v. Sears Roebuck & Co.,* -- S. Ct. --, 2011 U.S. LEXIS 4939 (2011).

That collusion need not be explicit: "a defendant is interested only in disposing of the total claim asserted against it ... the allocation between the class payment and the attorneys' fees is of little or no interest to the defense ..." *Staton v. Boeing Co.,* 327 F.3d at 964 (9th Cir. 2003, quotation omitted). It is therefore a mistake to conclude that when the prospect of express collusion is eliminated, the question of collusion is therefore settled: on the contrary, an impermissibly self-dealing settlement can come about because of the indifference of the settling parties to the interests of the class. Courts judging the fairness of a settlement should not only ask whether a settlement was negotiated at arms' length, but whether the attorneys are unfairly pursuing their self-interest at the expense of the class. *Bluetooth,* 654 F.3d at 947; *id.* at 948 ("While the Rule 23(a) adequacy of representation inquiry is designed to foreclose class certification in the face of 'actual fraud, overreaching or collusion,' the Rule 23(e) reasonableness inquiry is designed precisely to capture instances of unfairness not apparent on the face of the negotiations" (quoting *Staton,* 327 F.3d at 960)).

**B. The Settlement's Disproportionate Benefit to the Attorneys, Combined with Its Clear Sailing Clause, Indicate Prohibited Self-Dealing.**

The *Bluetooth* decision suggests a non-exclusive list of three possible signs of self-dealing. Two of *Bluetooth's* three indicia of unfairness are present in this settlement. *Bluetooth,* 654 F.3d at 947.

First, it is entirely possible that "counsel receive[d] a disproportionate distribution of the settlement." *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d at 1021). This settlement will at a minimum pay class counsel $ 9000,000, while the total value to the class remains unknown. Therefore it is impossible to calculate the percentage of the settlement class counsel will be paid. Depending on the number of class members who seek and obtain reimbursement, class counsel's percentage could be near this State's Circuit's benchmark of 25%, *see Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990), or significantly larger than that. Because of the design of the settlement, which requires all objections must be filed before the claims filing deadline, there is no way to tell precisely how much the settlement will pay out in claims, and therefore no way to tell the precise percentage of the settlement that class counsel will receive. However, no matter how much compensation is received by the class, class counsel will demand the same fee. *Cf. Sobel v. Hertz,* No. 3:06-CV-00545, 2011 U.S. Dist. LEXIS 68984, at *44 (D. Nev. Jun. 27, 2011) ("Class Counsel has requested for itself an uncontested cash award ... with only a modest discount from the claimed lodestar amount. The class is being asked to 'settle,' yet Class Counsel has applied for fees as if it had won the case outright.").

We cannot know how many people will respond to the parties' invitation to file a claim, but in general a very low rate is reasonably certain. One settlement administrator involved in over 175 class action settlements nationwide reported response rates are "10 percent or less in

the vast majority of settlements that require filing a notice of claim." *Sylvester v. Cigna Corp.*, 369 F. Supp. 2d 34, 44 (D. Me. 2005). In claim-fulfillment settlements involving email and postcard notice, the typical rate of response drops to approximately 1%. See Declaration of Dan Rosenthal, The NVIDIA GPU Litigation, No. C 08-04312 JW (N.D. Cal. 2011) (Dkt. No. 357), at 3 (attached as Exhibit "A"). In a recent federal case, a response rate below 1% led the San Francisco court to label the outcome "a virtually worthless settlement of a meritless case," *Yeagley v. Wells Fargo & Co.*, 2008 WL 171083 at *1 (N.D. Cal. 2008), rev'd on other grounds, 365 Fed.Appx. 886 (9th Cir. 2010). Response rates under 5% are routine: see, e.g., *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 370 F.Supp.2d 320, 321 (D. Me. 2005) (2% response rate); *Buchet v. ITT Consumer Fin. Corp.*, 845 F. Supp. 684, 695 (D. Minn. 1994), as amended 858 F. Supp. 944 (rejecting settlement after related settlement produced response rates between one-tenth of 1% and 3.2%); *Strong v. Bellsouth Telecomm., Inc.*, 173 F.R.D. 167, 169 (W.D.La. 1997), aff'd, 137 F.3d 844 (5th Cir. 1998) (4.3% response rate); *Union Life Fidelity Ins. Co. v. McCurdy*, 781 So. 2d 186, 188 (Ala. 2000) (one-tenth of 1% response rate). See Pamela A. MacLean, "Dealing for Dollars," CALIFORNIA LAWYER (June 2011), at 12, 50.

The "defendant is interested only in disposing of the total claim asserted against it … the allocation between the class payment and the attorneys' fees is of little or no interest to the defense…" *Staton*, 327 F.3d at 964. *See also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 820 (severable fee structure "is, for practical purposes, a constructive common fund"); *cf. id.* at 821 ("[P]rivate agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case."). "If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees" then "the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class, with the agreed-on fee amount constituting the upper limit on the fees that can be awarded to counsel." *Manual for Complex Litigation* § 21.71 (4th ed. 2008) "Even if the plaintiff's attorney does not consciously or explicitly bargain for a higher fee at the expense of the beneficiaries, it is very likely that this situation has indirect or subliminal effects on the negotiations." Report of the Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237, 266 (1985)). The defendant had no duty to ensure that the appropriate portion of the settlement's value would go to the class. But class counsel did, and it failed.

Second, the settlement has a "clear sailing" arrangement that provides for the payment of attorneys' fees separate and apart from class funds without challenge from the defendants. Settlement Agreement, § 14.2 (JLRNA "will not oppose an award of [$4,900,000].); *Bluetooth*, 654 F.3d at 947. A clear sailing clause stipulates that attorney awards will not be contested by opposing parties. "Such a clause by its very nature deprives the court of the advantages of the adversary process." *Weinberger v. Great Northern Nekoosa Corp.*, 925 F. 2d 518, 525 (1st Cir. 1991). The clause "suggests, strongly," that its associated fee request should go "under the microscope of judicial scrutiny." *Id.* The clear sailing clause lays the groundwork for lawyers to "urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *Id.* at 524; accord *Bluetooth*, 654 F.3d at 947. Here, class counsel put its own fees ahead of the interests of the class by negotiating a provision that insulates those fees from challenge by the defendant.

If "class counsel agreed to accept excessive fees and costs to the detriment of class plaintiffs, then class counsel breached their fiduciary duty to the class." *Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142, 1147 (9th Cir. 2000). When class counsel bring class

litigation to benefit themselves, rather than their putative class clients, they cannot meet the adequacy requirements which class actions require, and the class should not be certified. *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011). The *Dunk* presumption of settlement fairness, 48 Cal App. 4th at 1802, is up-ended when these "warning signs" of unfairness are present.

## II.  CONCLUSION

For the above reasons I object to the proposed settlement and award of attorney's fee and expenses.

*Pamela Sweeney, Pro Se*

Pamela Sweeney, Pro Se

2135 S Fish Hatchery RD
Ste 7
Madison, Wisc 53711

MADISON WI 535
02 JUN 2014 PM 1 L

USA
70

United States District Court
Clerk of Court's Office
Northern District of California
SAN Francisco Division
450 Golden Gate Avenue
SAN Francisco, CA. 95113

S4102S3432