Michael D. Braun (167416)
**BRAUN LAW GROUP, P.C.**
10680 W. Pico Blvd., Suite 280
Los Angeles, CA 90064
Tel: (310) 836-6000
Fax: (310) 836-6010
Email:  service@braunlawgroup.com

Janet Lindner Spielberg (221926)
**LAW OFFICES OF JANET LINDNER
   SPIELBERG**
12400 Wilshire Boulevard, Suite 400
Los Angeles, California  90025
Tel:  (310) 392-8801
Fax:  (310) 278-5938
Email: jlspielberg@jlslp.com

Joseph N. Kravec, Jr.(admitted *pro hac vice*)
Stephen M. Pincus (admitted *pro hac vice*)
Wyatt A. Lison (admitted *pro hac vice*)
McKean J. Evans(admitted *pro hac vice*)
**FEINSTEIN DOYLE PAYNE &
   KRAVEC, LLC**
Allegheny Building, 17th Floor
429 Forbes Avenue
Pittsburgh, PA 15219
Tel:  (412) 281-8400
Fax:  (412) 281-1007
Email:  jkravec@fdpklaw.com
            spincus@fdpklaw.com
            wlison@fdpklaw.com
            mevans@fdpklaw.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **TAMAR DAVIS LARSEN AND ARAN EISENSTAT**, on behalf of themselves and all others similarly situated,<br><br>　　　**Plaintiffs,**<br><br>　　v.<br><br>**TRADER JOE'S COMPANY**, a California Corporation,<br><br>　　　**Defendant.** | **CASE NO.:  3:11-cv-05188-WHO**<br><br><u>**CLASS ACTION**</u><br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br><br>Hon. William H. Orrick<br><br>Date:   July 9, 2014<br>Time:  2:00 p.m.<br>Location: Courtroom 2, 17th Floor |

# TABLE OF CONTENTS

NOTICE OF MOTION ................................................................................................................1

I.       INTRODUCTION AND SUMMARY OF ARGUMENT ...............................................2

II.      NOTICE TO SETTLEMENT CLASS .........................................................................3

III.     THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND FINAL
         APPROVAL SHOULD BE GRANTED .......................................................................5

         A.       Strength of Plaintiffs' Case ..........................................................................6

         B.       The Risk, Expense, Complexity and Likely Duration of Litigation Favor
                  Settlement ....................................................................................................7

         C.       Risk of Maintaining Class Action Status Throughout Trial ...........................8

         D.       Amount Offered in Settlement .......................................................................8

         E.       The Stage of Proceedings and the Amount of Discovery Completed ...............9

         F.       Experience and Views of Counsel ................................................................10

         G.       Reaction of the Settlement Class .................................................................11

                  1.       Objections to the merits of the litigation are not proper and should be
                           overruled ........................................................................................12

                  2.       Serial Objectors are likewise improper and should be overruled .........13

                  3.       Dawn Weaver.................................................................................13

                           a.       Attorney Darrell Palmer has a history of objecting to class action
                                    settlements and working with other Objectors in this Case.................13

                           b.       Ms. Weaver's objections.........................................................14

                  4.       Jeff Brown & Nancy Pugleasa-Brown..................................................20

                  5.       Sweeney Family...............................................................................21

                  6.       Michael Narkin ...............................................................................22

IV.      CONCLUSION...........................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Astiana v. Ben & Jerry's Homemade, Inc.*,
2014 WL 60097 (N.D. Cal. Jan. 7, 2014) ................................................................ 6

*Astiana v. Kashi Co*., 291 F.R.D. 493 (S.D. Cal. 2013) ................................................ 10

*Nakash v. NVIDIA Corp*., 539 Fed. Appx. 822 (9th Cir. 2013) ....................................... 20

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ....................................................... 17

*Browning v. Yahoo! Inc.*,
2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ......................................................... 23

*Churchill Vill., L.L.C. v. GE.*, 361 F.3d 566 (9th Cir. 2004) ............................................ 5

*City of Roseville Employees' Ret. Sys. v. Orloff Fam. Tr. UAD 12/31/01*,
484 F. App'x 138 (9th Cir. 2012) ......................................................................... 18

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ........................... 5, 7, 13

*Dennings v. Clearwire Corp.*,
2013 WL 1858797 (W.D. Wash May 3, 2013) ......................................................... 20

*Dennis v. Kellogg Co.*, 2013 WL 6055326 (S.D.Cal. Nov. 14, 2013) ...........................*Passim*

*Garner v. State Farm Mut. Auto. Ins. Co*., 2010 WL 1687832 (N.D. Cal. 2010) .................. 11

*Gen. Tel. Co. v. Falcon*, 457 U.S. 147 (1982) ............................................................ 8

*Glass v. UBS Fin. Servs*., 2007 WL 221862 (N.D. Cal. 2007) .......................................... 9

*Hanlon v. Chrysler Corp*., 150 F.3d 1011 (9th Cir. 1998). .......................................... 5, 12

*Hartless v. Clorox Co*., 273 F.R.D. 630 (S.D. Cal. 2011) ............................................. 19

*Heekin v. Anthem, Inc.*, 2013 WL 752637 (S.D. Ind. Feb.27, 2013) ........................... 14, 15

*Hemphill v. San Diego Ass'n of Realtors*, 225 F.R.D. 616 (S.D. Cal. 2004) ....................... 24

*In re Heritage Bond Litig*., 2005 WL 1594403 (C.D. Cal. 2005) ...................................... 7

*In re Apple Sec. Litig.,* 2011 WL 1877988, at *3 (N.D. Cal. May 17, 2011) ....................... 12

*In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935 (9th Cir. Cal. 2011) ......... 17, 19, 20

*In re Countrywide Financial Corp. Customer Data Sec. Breach Litig.*,
2010 WL 3328249 (W.D. Ky. Aug. 24, 2010) ......................................................... 15

*In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075 (6th Cir. 1984) ....................... 24

*In re Immune Response Sec. Litig.*, 497 F.Supp.2d 1166 (S.D. Cal. 2007) ............................. 10

*In re Law Office of Jonathan E. Fortman, LLC*,
     2013 WL 414476 (E.D Mo. Feb. 1, 2013) ...................................................................... 15

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ........................................ 7, 9

*In re Oil Spill by Oil Rig Deepwater Horizon,* 295 F.R.D. 112 (E.D. La. Jan.11, 2013) ................ 14, 15

*In re Omnivision Tech., Inc.*, 559 F.Supp.2d 1036 (N.D. Cal. 2008) ...................................... 5

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir.1994) .......................... 21

*Kamar v. Radio Shack Corp.*, 375 Fed. Appx. 734 (9th Cir. 2010) ........................................ 8

*Kirkorian v. Borelli*, 695 F.Supp. 446 (N.D. Cal. 1988) ................................................. 10

*Lagarde v. Support.com, Inc.*,
     2013 WL 1283325 (N.D. Cal. March 26, 2013) ............................................................. 20

*Laguna v. Coverall N. Am., Inc.*, --- F.3d. ---, 2014 WL 2465049 (9th Cir. June 3, 2014) .............. 5

*Lobatz v. U.S. W. Cellular of California, Inc.*, 222 F.3d 1142 (9th Cir. 2000) ..................... 18, 24

*In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 27, n.5 (D.D.C. 2001) ...................... 24

*In re Law Office of Jonathan E. Fortman, LLC*,
     2013 WL 414476 (E.D Mo. Feb. 1, 2013) ...................................................................... 15

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. Cal. 2012) ........................................ 6

*Moore v. Verizon Communs., Inc.*, 2013 WL 450365 (N.D. Cal. Feb. 5, 2013) ............................. 12

*Mullane v. Cent. Hanover Trust*, 339 U.S. 306 (1950) ..................................................... 4

*Nat'l Rural Telecom Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .................... 7, 10, 11

*Officers for Justice v. Civil Service Com.*, 688 F.2d 615 (9th Cir. 1982) ........................*Passim*

*Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157 (9th Cir. 2013) ................................... 19

*Rodriguez v. West Publ'g. Corp.*, 563 F.3d 948 (9th Cir. 2009) ........................................... 5

*Sethavanish v. ZonePerfect Nutrition Co.,* 2014 WL 580696 (N.D. Cal. Feb. 13, 2014) ..................... 6

*Thurston v. Bear Naked, Inc.,*
Case No. 11-CV-2890-H(BGS), Dkt. No. 168 (S.D. Cal. July 30, 2013) ..................................... 10

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ........................................... 5

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ......................................... 18, 22

*Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221113 (N.D. Cal. 2011) ........................................ 10

**STATUTES**

Fed. R. Civ. P. 23(a) ..................................................................................................... 3

Fed. R. Civ. P. 23(b)(3) ................................................................................................ 3

Fed. R. Civ. P. 23(c)(1)(C) ........................................................................................... 8

Fed. R. Civ. P. 23(c)(2) ................................................................................................ 4

Fed. R. Civ. P. 23(c)(2)(b) .......................................................................................... 23

Fed. R. Civ. P. 23(e) .................................................................................................... 5

Fed. R. Civ. P. 23(e)(2) ................................................................................................ 8

**TREATISES**

*4 A. Conte & H. Newberg, Newberg on Class Actions*, § 11:50 (4th ed. 2002) ..................................... 12

**OTHER AUTHORITIES**

Howard Mintz, "Law Students Claim They've Been Had," *San Jose Mercury News*, Aug. 9, 2004. .... 23

Howard Mintz, "Online School of Law Delisted," *San Jose Mercury News*, Sept. 24, 2004 ................ 23

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that the Notice of Motion and Motion for Final Approval of Class Action Settlement have been filed CM/ECF Docket No. 107.

.

Plaintiffs on behalf of themselves and the Settlement Class, respectfully submit this Memorandum in support of their unopposed Motion for Final Approval of Class Action Settlement.[1]

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

The Settlement before the Court present terms that are very favorable to the Settlement Class. The gravamen of Plaintiffs' complaint asserts that Trade Joe falsely and misleadingly labeled several of its Products as "All Natural" or "100% Natural" even though each contained one or more synthetic ingredients.[2]   The Settlement directly addresses the gravamen of the Complaint by providing that Trader Joe's discontinue use of the terms "All Natural" or "100% Natural" on the labels of the Products at issue and creating a settlement fund of $3,375,000.00 to compensate the Class for its conduct.

The Settlement Fund[3] provides for a substantial portion of Trader Joe's profits[4] that Plaintiffs could have obtained at trial on these Products over the Settlement Class Period.   The Settlement provides each Settlement Class Member, with proof of purchase, a full reimbursement for each product purchased during the Settlement Class Period and remunerates each Class Member without a proof of purchase up to 10 products, ranging in price from $2.70-$3.99 (*i.e.* maximum claim range from $27.00 to $39.90).   Any amounts left in the fund will not revert to Defendant, but rather be distributed in the form of Products to Settlement Class Members at its retail locations throughout the United States.

Pursuant to a robust Notice Plan, which included direct mail/email to 638,142 Trader Joe's customers, publication in *USA Today* and a press release that was widely rebroadcast on the Internet, over 58,000 claims were made at an approximate value of $1,842,260.91 with still a day remaining to submit claims.   As a result of the tremendous response rate, only a *deminimis* amount, if any, will remain to be converted into product and distributed to Class Members.[5]

---

[1] All capitalized terms not defined herein shall have the same meaning as ascribed to them in the Superseding Stipulation of Class Action Settlement ( "Settlement"), filed previous at Dkt. 81-1.

[2] Plaintiffs respectfully refer the Court to Motion for Preliminary Approval of Class Action Settlement for a more detailed recitation of facts.   The Motion and accompanying documents are incorporated herein by reference. Dkt. 74.

[3] As defined in Section III(C)(3)(a) of the Settlement (Dkt. No. 81-1 at p. 14).

[4] The Parties will provide supplemental information regarding the proportion of Trader Joe's profits recovered by this Settlement should the Court require it.

[5] While claims are continuing to be submitted, pursuant to the terms of the settlement and based upon

Among the hundreds of thousands of Trader Joe's customers who received notice, and the more than fifty-eight thousand who made claims, only 23 persons opted out and 18 objected. The majority of objections are from Trader Joe's customers who are essentially displeased that Trader Joe's is the subject of a lawsuit. The remaining minority are recognized professional objectors whose objections are guided not on behalf of the Class, but by their self-interests. As detailed below, the objections are not meritorious and should not undermine this successful settlement.

## II.    NOTICE TO SETTLEMENT CLASS

On February 6, 2014, the Court granted preliminary approval of the Settlement. Dkt. No. 82. The Court conditionally certified the Settlement Class pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), appointing Law Offices of Janet Lindner Spielberg, Braun Law Group, P.C. and Feinstein Doyle, Payne & Kravec, LLC as Co-Lead Counsel on behalf of the Settlement Class. *Id*. The Court approved the form and substance of the Class Notice and notice method, and set a Fairness Hearing for July 9, 2014. *Id.*    The Court also appointed Rust Consulting Inc. ("Rust") to serve as Settlement Administrator and to carry out the notice plan approved by the Court. *Id.*   Through Rust, Plaintiffs effectuated the notice plan which entailed:  (1) printing and mailing the Court-approved Class Notice to 201,329 potential Settlement Class Members for whom mailing addresses were available; (2) publishing the Class Notice twice nationally in *USA Today*; (3) establishing a toll-free telephone number to receive Settlement Class members' comments and questions; and (4) creating an informational website, www.tjallnaturalclassaction.com to apprise Settlement Class Members of the Settlement, provide access to relevant documents, including the Claim Form, and to answer settlement related questions (the "Settlement Website").   *See* Lison Decl., Exh. 13, Declaration of Roslyne Atilus. ("Atilus Decl."), ¶¶3-11. In addition, RUST disseminated the short form notice via *PR Newswire*. Atilus Decl. ¶4.  The Notice was subsequently rebroadcast to over 5,400 media contacts and appeared

---

currently available figures Plaintiffs estimate the Residual Fund to be approximately $120,164.17 calculated as follows: Settlement fund ($3,375,000) – administration costs ($332,223.35) – attorney's fees ($950,000) – Incentive Awards ($5,000) – Claims ($1,842,260.91) = $245,515.74. Rust further anticipates remaining costs, including processing and distribution of settlement checks, to be between 95,000-130,000.  Adding approximately $112,000 to the equation results in a residual of $133,515.74. Finally, Trader Joe's is entitled to deduct 10% ($13,351.57) in costs necessary to administer the product distribution.

on over 300 news media websites. *Id.* Separately, Trader Joe's disseminated the long form Notice to 436,813 Trader Joe's customers via Trader Joe's *Fearless Flyer.* Declaration of Matt Sloan ("Sloan Decl."), ¶3.

Pursuant to the notice plan approved by this Court, the Long Form Notice was disseminated by Mail directly to 201,329 Trader Joe customers, and electronically to 436,813 Trader Joe's customers. Sloan Decl. ¶3. Short-form Notice was published in USA Today on February 27, 2014 and March 6, 2014, and Internet Notice was issued by disseminating the Short Form Notice via *PR Newswire* on March 6, 2014. Atilus Decl. ¶¶3-4. The Settlement Website became operative and available for public access on February 26, 2014, and will remain operational through the Claims Deadline. *Id.* at ¶9. The website allows Settlement Class Members to complete a Claim Form on-line as well as providing relevant documents and general information on the proposed Settlement and answers to frequently asked questions. *Id.* at ¶9. In addition, the following documents were made available on the Settlement Website: Class Notices, Claim Forms, the Preliminary Approval Orders, and the Settlement Agreement, and a Spanish version of the Long Form Notice. *Id.*

Of the initial mailing, 8,428 pieces were returned. *Id.* at ¶6. Skip traces were performed and 4,697 pieces were re-mailed. *Id.* As of June 15, 2014, there have been a total of: (1) 125,081 unique visitors to the Settlement Website; (2) 741 calls to the toll-free number; and (3) 58,095 claims representing a current total claim value of approximately $1,842,260.91. *Id.* at ¶¶ 9, 10 and 17. Pursuant to the Court's Orders, the deadline for Settlement Class Members to opt out of or object to the Settlement was June 2, 2014. Dkt. No. 82. Only 23 Settlement Class Members opted out and 18 objected. Atilus Decl. at ¶14.

Rule 23 and due process concerns require notice to be provided to absent Class Members in order to inform them of the proposed settlement, and grant them the opportunity to opt-out or object. *See* Fed. R. Civ. P. 23(c)(2). The notice and means of disseminating it must be the "best notice practicable" under the circumstances. *See, Mullane v. Cent. Hanover Trust*, 339 U.S. 306, 314-315, 317 (1950). Here, the notice provided was by mail, e-mail, print, and electronic publication. Well over 600,000 Trader Joe's customers received direct notice accompanied by a robust print and internet

campaign. The result is the Settlement was almost fully subscribed.  There can be no question that under the circumstances of this case, the "best notice practicable" was disseminated.

## III.   THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND FINAL APPROVAL SHOULD BE GRANTED

The Ninth Circuit accords broad discretion to district courts in determining whether to approve a proposed class settlement.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992). Further, settlements of disputed claims, especially of complex class litigation, are clearly favored.  *Id.* at 1276 (recognizing a "strong judicial policy that favors settlements, particularly where complex class litigation is concerned").  Courts recognize that "there is an overriding public interest in settling and quieting litigation; [t]his is particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

Federal Rule of Civil Procedure 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).   The Ninth Circuit has set out eight factors to consider when examining the fairness of a proposed settlement:(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the Settlement Class Members to the proposed settlement. *Laguna v. Coverall N. Am., Inc.*, 2014 WL 2465049, at *9 (9th Cir. June 3, 2014) citing *Churchill Vill., L.L.C. v. GE.*, 361 F.3d 566, 575 (9th Cir. 2004) (collectively "Churchill Factors").  District courts are generally required to consider "some or all" of eight factors in determining whether a class action settlement is "fair, reasonable and adequate" as required by Federal Rule of Civil Procedure 23(e)(2).  *Rodriguez v. West Publ'g. Corp.*, 563 F.3d 948, 963 (9th Cir. 2009). Notably, the list is not intended to be exhaustive, and the importance of each factor will depend upon the nature of the claim, the type of relief sought, and the unique facts and circumstances of each case.  *In re Omnivision Tech., Inc.*, 559 F.Supp.2d 1036, 1040-41 (N.D. Cal. 2008) (citing *Officers for Justice v. Civil Svc. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  As

demonstrated below[6], this Settlement satisfies each of the Churchill Factors and is deserving of approval.

### A.    Strength of Plaintiffs' Case

Prior to Settlement, Plaintiffs filed three complaints, successfully fended off Defendant's Motion to Dismiss and Motion for Judgment on the Pleadings and had embarked upon merits and class discovery. Dkt. 41 and 52, respectively.  The Settlement was reached at a time when uncertainties lay ahead for each party.  While Plaintiffs believe in the merits of their litigation, there can be no question that there are risks associated with continuing litigation.  Defendants vigorously denied liability and continue to do so.  Absent a settlement, the next procedural step would be class certification which Defendants would surely contest. While Plaintiffs remain confident of their success on class certification, recent decisions have been rendered which make class certification in food labeling cases more of an uncertainty.  *See e.g. Sethavanish v. ZonePerfect Nutrition Co.,* 2014 WL 580696 at *5 (N.D. Cal. Feb. 13, 2014) (finding a split in the Circuit as to the ascertainability of a class where consumers are not identifiable by objective means); *Astiana v. Ben & Jerry's Homeade, Inc.*, 2014 WL 60097, at *12 (N.D. Cal. Jan. 7, 2014)(denying certification on ascertainability grounds).

In addition to the general concerns accompanying a motion for class certification such as proving ascertainability, commonality and materiality, the Ninth Circuit's decision in *Mazza v. Am. Honda Motor Co*., 666 F.3d 581 (9th Cir. Cal. 2012) put into question the viability of certifying a nationwide class under California's consumer protection and unjust enrichment laws.  While *Mazza* does not affect the *Settlement* Class proposed here, Defendants would undoubtedly raise *Mazza* in an effort to limit the size and scope of the Class if the case is litigated.  Indeed, if *Mazza* were applied by this Court, it could drastically reduce the size of the Class and the economics of the litigation.

In addition to uncertainties of class certification, Plaintiffs would still likely face summary judgment motions in advance of any trial.  Ultimately, while Plaintiffs maintain they have a strong case, significant risks remain going forward.  *Dennis v. Kellogg Co*., 2013 WL 6055326, at *3 (S.D. Cal.

---

[6] Besides the Churchill Factors, *In re Bluetooth*, 654 F.3d 942 requires the Court scrutinize the settlement for collusion.  Plaintiffs explain why any suggestion of collusion is groundless in Section G(b) *infra*.

Nov. 14, 2013)("[S]ettlement avoids the risks of extreme results on either end, i.e., complete or no recovery. Thus, it is plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication.")   Accordingly, this factor weighs in favor of final approval of the Settlement.

### B.   The Risk, Expense, Complexity and Likely Duration of Litigation Favor Settlement

One of the key factors in evaluating a proposed settlement is the risk of continued litigation balanced against the certainty and immediacy of recovery from a settlement.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  "The court need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."  *Class Plaintiffs*, 955 F.2d at 1291 (quoting *Officers for Justice*, 688 F.2d at 625) (internal quotations omitted).

In the absence of settlement now, the parties will continue to expend a great deal of time and money to litigate this case.  Prior to settlement, Plaintiffs had noticed the depositions of five non-parties who manufactured each of the Products at issue in the litigation.  *See* Declaration of Michael D. Braun In Support of Plaintiffs' Motion For Award of Attorneys' Fees; Reimbursement of Expenses And Plaintiff Incentive Awards ("Braun Fee Decl."), Dkt. 93-01 at ¶10.  Based on the outcome of these depositions, additional discovery of suppliers of the various synthetic ingredients may have been necessary. Plaintiffs would have likely conducted a survey of Trader Joe's customers regarding the materiality of the alleged misrepresentations and hired substantive experts addressing the use of synthetic versus natural ingredients.  As detailed above, there are clearly risks associated with certifying and maintaining a nationwide class, surviving summary judgment, winning at trial, and proving an appropriate measure of damages.  Moreover, even if the case were to proceed to judgment, any final judgment could be appealed which would take significant time.  These litigation efforts would be costly to both parties and would require significant judicial oversight.  More importantly, further litigation presents absolutely no guarantee that Plaintiffs or the Class would achieve any recovery, let alone a

1    recovery greater than that provided by the proposed Settlement.  Not surprisingly, therefore, courts in

2    this Circuit routinely recognize that, "[i]n most situations, unless the settlement is clearly inadequate, its

3    acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *In re*

4    *Heritage Bond Litig.*, 2005 WL 1594403 at *6 (C.D.Cal. Jun. 10, 2005); *Nat'l Rural Telecom Coop. v.*

5    *DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004); *4 A. Conte & H. Newberg, Newberg on Class*

6    *Actions*, § 11:50 at 155 (4th ed. 2002) (internal quotations omitted).  Accordingly, this factor weighs

7    strongly in favor of approving the Settlement.

8            **C.     Risk of Maintaining Class Action Status Throughout Trial**

9            This case settled before the Court could consider class certification.  The Class herein is a

10   settlement class, agreed to in the context of settlement.  As detailed above, certification is far from

11   certain. Moreover, the Ninth Circuit decision in *Mazza*, which questioned the viability of certifying a

12   nationwide class under California's consumer protection and unjust enrichment laws, would have a

13   direct bearing on this case and could impact the size and parameter of any class the Plaintiffs could

14   hope to certify.  Moreover, as with any litigation, even if a class is ultimately certified, the decision is

15   not made in stone and could be reconsidered based on findings of fact in the underlying case or new

16   case law.  *See* Fed. R. Civ. P. 23(c)(1)(C*); Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982) (class

17   certification orders are "inherently tentative"); *Kamar v. Radio Shack Corp*., 375 Fed. Appx. 734 (9th

18   Cir. 2010) (A district court can revisit an order certifying a class at any time before final judgment).  As

19   certification remains an unknown, this factor too weighs in favor of finally approving this Settlement.

20           **D.     Amount Offered in Settlement**

21           The general standard by which courts are guided when deciding whether to grant final approval

22   of a settlement is whether the proposed settlement falls within the range of what could be found "fair,

23   adequate, and reasonable." Fed. R. Civ. P. 23(e)(2).  Settlement by its nature is a compromise therefore

24   the law does not require a settlement reflect the best possible result in the litigation, but rather only that

25   it falls within the ambit of reasonableness.  "[T]he very essence of a settlement is compromise, a

26   yielding of absolutes and an abandoning of highest hopes.... [Accordingly,] t]he proposed settlement is

27   not to be judged against a hypothetical or speculative measure of what might have been achieved...."

28

---

*Officers for Justice*, 688 F.2d at 624-25 (internal citations omitted).  This proposed Settlement assuredly satisfies the foregoing criteria as it provides Class Members with meaningful relief that addresses the precise legal injury alleged in the complaint.  Here the recovery offered is real and substantial. It represents a substantial portion of Trader Joe's profits[7] on the Products during the Settlement Class Period. In addition to the injunctive relief which provides that Defendant will no longer advertise or label its Products as "All Natural" or "100% Natural," each qualifying Class Member can obtain full remuneration for all the Products they purchased during the Settlement Class Period with proof of purchase or up to 10 Products without such proof.  Each Product was valued at its average retail price during the Settlement Class Period (*i.e.* between $2.70 and $3.99 per package) and represents a reasonable compromise on the amount that could have been recovered at trial on a price premium theory or through restitutionary disgorgement of profits.  *Glass v. UBS Fin. Servs.*, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (finding a settlement which constituted approximately 25 to 35% of the amount of the maximum amount of damages the class could have received was reasonable in light of the uncertainties involved in the litigation).

In addition the cash settlement value, any residual amount remaining in the fund will be converted into Product and distributed at retail locations throughout the United States.

By any measure, the Settlement's terms are fair and reasonable; especially when they are also considered in light of the uncertain prospects and risks faced by Plaintiffs and the putative Class going forward with litigation.  This factor too favors approving the Settlement.

### E.   The Stage of Proceedings and the Amount of Discovery Completed

This matter settled after two attempts by Defendant to dismiss all or part of the complaint and after a substantial amount of discovery had been propounded by Plaintiffs.  Braun Fee Decl. at ¶8. Plaintiffs propounded three sets of requests for production of documents, requests for admission and interrogatories on Defendant. *Id.* at ¶10.   Plaintiffs also noticed a deposition of a corporate representative pursuant to Fed.R.Civ.P. 30(b)(6), and issued subpoenas for documents and testimony from five non-party manufacturers who were believed to have supplied the Products at issue in this

---

7

litigation. *Id.* Prior to filing suit, Plaintiffs' Counsel also conducted extensive research on the merits of pursuing these claims and received additional informal discovery from Defendant. Braun Fee Decl. Ex.D. ¶3. Formal discovery is not a prerequisite for class action settlements as long as counsel for both parties possess sufficient information to properly evaluate the proposed settlement. *Glass v. UBS Fin. Servs.*, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (citing *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d at 459). Plaintiffs respectfully submit that the discovery conducted in this Action, including formal discovery, informal discovery and independent investigative efforts, provided Plaintiffs and their Counsel with ample information to properly and fairly assess the merits of the proposed Settlement.

## F.   Experience and Views of Counsel

Courts generally accord "great weight" to the recommendation of counsel as they are the most closely acquainted with the facts of the underlying litigation. *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528. Moreover, when "[b]oth parties are represented by experienced counsel [] their mutual desire to adopt the terms of the proposed settlement, while not conclusive is [also] entitled to a great deal of weight." *In re Immune Response Sec. Litig.*, 497 F.Supp.2d 1166, 1174 (S.D. Cal. 2007).

Plaintiffs' Counsel unambiguously recommend this Settlement as fair, reasonable and adequate and respectfully ask that it be finally approved. Plaintiffs' Counsel are each long-time class action attorneys with decades of experience litigating class actions on behalf of consumers under the statutes at issue in this action. *See* Braun Fee Decl. at ¶¶3-6, Exs. C and D.; Declaration of Michael D. Braun in Support of Preliminary Approval of Class Action Settlement at Exs. B-D. Dkt No. 74-1. Plaintiffs' Counsel have represented consumers both as litigation Class and Settlement Class Counsel numerous times, including cases involving food mislabeling. *See, e.g., Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221113, *9-12 (N.D. Cal. June 7, 2011) (certifying UCL and CLRA claims on behalf of national class of walnut consumers and appointing undersigned counsel as class counsel); *Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013); *Thurston v. Bear Naked, Inc.,* Case No. 11-cv-2890-H (BGS), Dkt. No. 168 (S.D. Cal. July 30, 2013). Respectfully, Plaintiffs' Counsel's extensive and broad-based experience litigating and successfully resolving consumer cases should be accorded significant weight in considering the merits of final approval. *Kirkorian v. Borelli*, 695 F.Supp. 446, 451 (N.D. Cal. 1988)

1  ("In judging the worth of a proposed settlement…recommendation of acceptance by experienced and

2  competent counsel is a fact entitled to great weight.").[8]  Accordingly, this factor weighs in favor of

3  approving the Settlement.

4      **G.**    **Reaction of the Settlement Class**

5      The final *Churchill* factor considers the reaction of the Settlement Class, which in this case was

6  overwhelmingly favorable.  Direct notice was disseminated by mail and e-mail to 638,142 Trader Joe

7  customers, publication notice was issued twice in *USA Today* and widely disseminated to news outlets

8  on the internet. Sloan Decl. ¶3; Atilus Decl. ¶¶ 3-8.  As a result of the notice plan, the Settlement

9  Website received 125,081 unique visits and resulted in the filing and receipt of more than 58,095 Claim

10  Forms.[9]  Atilus Decl. ¶¶ 9, 17.  The claims deadline does not expire until midnight of today's date, and

11  claims continue to be submitted up to that deadline.

12      Most importantly, after dissemination of the Class Notice and having given Settlement Class

13  Members an opportunity to opine on the merits of the Settlement, it is abundantly clear that the

14  Settlement Class overwhelmingly supports the Settlement as only 23 Class Members chose to opt out of

15  the settlement and only 17 objections were received.  As demonstrated by the telephone calls, website

16  usage, and broadly disseminated notice, Settlement Class Members are well aware of the Settlement.

17  The relatively few objections further confirm the fairness, reasonableness, and adequacy of the

18  Settlement.  *Nat'l Rural Telecom Coop.*, 221 F.R.D. at 529 ("It is established that the absence of a large

19  number of objections to a proposed class action settlement raises a strong presumption that the terms of

20  a proposed class action settlement are favorable to the class members"); *Garner v. State Farm Mut.*

21  *Auto. Ins. Co.*, 2010 WL 1687832, at 14 (N.D. Cal. Apr. 22, 2010) ("Court may appropriately infer that

22  a class settlement is fair, adequate, and reasonable when few class members object to it").

23

24  [8] Courts may also consider the impact of a governmental participant in the litigation.  No such actor is
    present in this litigation.  Therefore this consideration is inapplicable.  *Nat'l Rural Telecomms. Coop.*,
25  221 F.R.D. at 528 ("There is no governmental participant in this Class Action.  As a result, this factor
    does not apply to the Court's analysis")

26

27  [9]  The claims numbers are as of June 15, 2014. The Claims deadline in June 16th.  The claims
    administrator will provide a supplemental declaration with final numbers after the claims deadline has
    been reached and in advance of the Final Hearing.

28

As detailed below, the objections lack merit and do not undermine the fairness, reasonableness of adequacy of the Settlement.  The objectors can be categorized into two broad camps.  The first are individuals that are opposed to the lawsuit believing it to be unmeritorious and have asked the Court to dismiss it its entirety. The second group consists of professional objectors who make a livelihood from objecting to settlements in the hopes of securing a payday.  As demonstrated below, the objections from neither group are meritorious and do not undermine the fairness, reasonableness or adequacy of the settlement which, respectfully, should be approved.

### 1.   Objections to the merits of the litigation are not proper and should be overruled

Objectors Byron Remus [Dkt. 84], Gary Gill [Dkt. 85][10], Diane Atkins [Dkt. 86][11], Barbara Coffing [Dkt. 87], David Brook [Dkt. 88], Lacie Thorne [Dkt. 89], Aleta Arthur, [Dkt. 90] Cathy MacKinney [Dkt. 91], Marj Kenny [Dkt. 94] and Shannon Koch [Dkt. 105] collectively "Objectors" each filed papers essentially claiming the lawsuit was frivolous and inviting the Court to dismiss the action instead of approving a settlement.

The Court has already rule in favor of Plaintiffs on Defendant's motion to dismiss and judgment on the pleadings.  Dkt. 41 and 52, respectively.  While the ultimate outcome of the lawsuit, if it proceeded to trial, is unknown, there can be no question that Plaintiffs filed their action in good faith and upon a solid factual basis.  That some consumers disagree with the action as a matter of principal, or believe that Trader Joe's can do no wrong, respectfully, is not a matter appropriate for consideration in the context of determining whether a *settlement* is deserving of approval. It is the Court, and perhaps a jury, which is the ultimate arbiter of Plaintiffs' substantive claims and only the Court, pursuant to Fed.R.Civ.P. 23, is the arbiter of the fairness of the Settlement.  While the Court certainly has a

---

[10] Section VI.1.a. of the Settlement Agreement provides, *inter alia*, that any objector must attest to the fact that he/she purchased one or more of the Products at issue in the lawsuit.  Objectors, Gill, Coffing, Brook, Thorne, and Arthur did not provide any such attestation.  Accordingly they do not have standing to make an objection. *See e.g. In re Apple Sec. Litig.,* 2011 WL 1877988, at *3 n. 4 (N.D. Cal. May 17, 2011) (finding objector "lacks standing to object [because] he did not provide evidence to show that he is a class member."); *Moore v. Verizon Communs., Inc.,* 2013 WL 450365, at *4 (N.D. Cal. Feb. 5, 2013) ("non-class members have no standing to object to the settlement of a class action").

[11] Ms. Atkins' submission appears to be more of an opt-out than an objection.

fiduciary duty to the Class, the duty is to determine whether the Settlement is fundamentally fair not to re-examine the underlying merits of the litigation. *Hanlon v. Chrysler Corp.*, 150 F.3d at 1026; *Dennis v. Kellogg Co.,* 2013 WL 6055326, at *3.

Notwithstanding the fact that Plaintiffs have already survived two challenges to the pleadings, this Circuit has made clear that, "[t]he court need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Class Plaintiffs*, 955 F.2d at 1291 (quoting *Officers for Justice*, 688 F.2d at 625 (internal quotations omitted). Ultimately, objections directed to the merits of the claim are objections on behalf of the Defendant and not the class. While the Court is a fiduciary to absent class members, is not a fiduciary to the Defendant, who is capable of making decisions to protect its own interests. *Dennis*, 2013 WL 1687832, at *14. Here, Trader Joe's decided to settle this matter. Accordingly, Objectors' objections should be denied.[12]

### 2. Serial Objectors are likewise improper and should be overruled

In addition to Objectors who challenge the merits of Plaintiffs' action, seven Class Members, Nancy Pugleasa-Brown [Dkt. 96], Jeff M. Brown [Dkt. 97], Dawn Weaver [Dkt. 98], Pamela Sweeney [Dkt. 99], Kerry Ann Sweeney [Dkt. 100], Patrick Sweeney [Dkt. 101], and Michael Narkin [Dkt. 102], (collectively "Serial Objectors"), filed objections to the settlement. None of Serial Objectors' objections have merit, and should be overruled.

### 3. Dawn Weaver

#### a. Attorney Darrell Palmer has a history of objecting to class action settlements and working with other Objectors in this Case.

---

[12] In addition to the Objectors, the Court received a letter from Brian Silversmith who stated he did not receive a Claim Form. Dkt. 92. The claims administrator subsequently corresponded with Mr. Silversmith who has since successfully filed a Claim Form. Atilus Decl. ¶15. The claims administrator also received Claim Form from Sandra Webb who was confused about the nature of the lawsuit and whether to opt out. Lison Decl. at Ex. 1. Counsel contacted Ms. Webb through her email address explaining to her the nature of lawsuit and offering for her to file a new claim if she so desired. *Id.* at Ex. 2. Ms. Webb did not respond and accordingly the claims administrator added her to the list of opt-outs. Atilus Decl. Ex. G. Finally, the claims administrator received a Claim Form from Mr. & Mrs. Volkmore who used the word "objected" and then asked that their name and address be removed. The parties have agreed to treat this as an objection. Lison Decl. at Ex. 3.

It is well-established that "serial" objectors often attempt to extract payments from parties or counsel to avoid years of delay associated with their unmeritorious objections to class action settlements.  Dawn Weaver is represented by Attorney Darrell Palmer, who courts have "widely and repeatedly criticized as a serial, professional, or otherwise vexatious objector."  *Dennis,* 2013 WL 6055326, at *4 n.2 (citations omitted); *In re Oil Spill by Oil Rig Deepwater Horizon,* 295 F.R.D. 112, 158 n. 40 (E.D.La. Jan.11, 2013) (noting that "Mr. Palmer has been deemed a 'serial objector'" with a history of "admitt[ed] ... 'bad faith and vexatious conduct'"); *Heekin v. Anthem, Inc.*, 2013 WL 752637, at *3 (S.D.Ind. Feb.27, 2013) (finding "bad faith and vexatious conduct on the part of ... attorney Darrell Palmer" and noting his reputation as "a serial objector").    A list of many of Palmer's cases representing objectors in class action lawsuits, including some of Serial Objectors here, is being submitted herewith.  Lison Decl. at Ex 4.   It does not appear that in any of the cases Mr. Palmer appeared representing an objector that he obtained any additional benefit for any class.  Moreover, Mr. Palmer has had a motion to appear *pro hac vice* denied by a federal district court in 2012 because he "falsely declared under penalty of perjury of perjury that he had not been disbarred or formally censured by a court of record or by a state bar association" when in fact he had been temporarily suspended from the Colorado Bar Association, the State Bar of Arizona, and the State Bar of California as result of a Colorado felony conviction.  Lison Ex. 5.

Palmer has a tangled history with several other Serial Objectors giving the strong appearance their objections have been collectively orchestrated.  Palmer previously represented at least four Serial Objectors challenging other class action settlements – Jeff M. Brown, Nancy Pugleasa-Brown (aka Nancy Brown), Pamela Sweeney and Kerry Ann Sweeney.  *See* Lison Ex. 4 (Palmer List).   Palmer also served as co-counsel with Serial Objector Patrick Sweeney, a licensed attorney in Florida and Wisconsin representing the *same* five objectors (including Palmer's brother) in at least four separate class action settlement proceedings.  *See* Lison Ex. 4 (Palmer List).

### b.  Ms. Weaver's objections

Ms. Weaver asserts four objections: (1) the bulk of the settlement compensation is likely to be distributed in the form of products; (2) attorneys fees should not be based on the gross settlement; (3)

the class representative fee is too high; and (4) the clear sailing provision is a red flag.  Dkt. 98.  These are similar, boiler-plate objections Darrell Palmer has made to other settlements that have been rejected by other courts.

"[T]oo much of the controversy in many class action litigations seems to center on the issue of attorneys' fees" and that, as a result, "a cottage industry has developed of professional objectors, where again the emphasis or at least the primary motivation is attorneys' fees*." In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2010 WL 3328249, at *4 (W.D. Ky. Aug. 24, 2010). As a corollary, "when assessing the merits of an objection to a class action settlement, courts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first." *In re Law Office of Jonathan E. Fortman, LLC*, 2013 WL 414476, at *5 (E.D Mo. Feb. 1, 2013). "In this light, the Court notes that present objectors' counsel, Darrell Palmer has been widely and repeatedly criticized as a serial, professional, or otherwise vexatious objector." *Dennis*, 2013 WL 6055326 at *4; *see, e.g., In re Deepwater Horizon,* 295 F.R.D. at 159 n.40 (noting that "Mr. Palmer has been deemed a 'serial objector'" with a history of "admitt[ed] . . . 'bad faith and vexatious conduct'"); *Heekin,* 2013 WL 752637, at *3 (finding "bad faith and vexatious conduct on the part of . . . attorney Darrell Palmer" and noting his reputation as "a serial objector").

Notwithstanding Ms. Weaver (and her counsel's purpose in objecting), each of these objections is unmeritorious.

First, Ms. Weaver rightly acknowledges that the "compensation to be paid to class members… is not unfair…. [but] the percentage of class members who will submit claims forms is likely to be low." Dkt. 98 at 4. Clearly this conjecture has not come to pass as claims rates exceeded 58,000 claims with a value of $1,842,260.91.  Atilus Decl. ¶17. Based on this false predicate, Ms. Weaver argues: (1) the distribution component of the settlement is unfair because it is arbitrary (*i.e.*, the distribution has "no regard to whether the people accepting the products submitted claims forms or not") and is really designed to build good will among Trader Joe's customers; and (2) settlement class members prefer cash and therefore it would have been better to have a second distribution instead of a product distribution.  Dkt. 98 at 5.  Neither contention has merit.  Pursuant to the Settlement, the distribution

will specifically not be held like other promotional giveaways by Trader Joe's.[13]  The distribution will be accompanied by a prominently displayed sign indicating that the distribution is part of a class action settlement designed to benefit customers who purchased the Products at issue in the litigation.[14] Objectively, it is hard to build good will when a company is doing something pursuant to a Court order that gets displayed to every customer walking by.[15]  Each customer interested in the distribution will necessarily pass that sign before benefiting from the distribution.   The distribution is specifically intended to benefit Settlement Class Members. §III.C.4.b.  The logical assumption is that customers who are not consumers of the Products at issue will not participate, however, the compelling point from the Settlement perspective is that any Class Member who wanted cash could have participated. The distribution represents left over funds that rather than reverting to the Defendant is converted into product and given back to very people who are purchasing the Products in the first place (*i.e.*, Settlement Class Members). While there is nothing wrong with a secondary distribution, there is also nothing wrong with product distribution.  Ultimately, the decision of what to do with any residual fund in this case, was a matter of hard fought negotiation.  While it is not what Ms. Weaver would prefer, it also well within the ambit of reasonableness and accordingly the objection is not well taken. *Officers for Justice,* 688 F.2d at 625 ("The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators"); *Lane v. Facebook, Inc*.,

---

[13] §III.C.4.b. ii. Any Trader Joe's employee who distributes Products in accordance with this Section shall be instructed to disclose, upon inquiry, that the Products are being distributed as part of this settlement, rather than as a sampling or marketing program, and shall be instructed to direct any customers seeking additional information to the Sign (*see infra.*) or to the settlement website.

[14] §III.C.4.b.iii.  At each retail location where the distribution takes place, Trader Joe's will prominently display a sign that is reasonably visible to recipients of the Products and nearby the distribution stating that distribution is part of this class action settlement and that by accepting the Products customers represent and warrant that they purchased one or more of the Products during the Settlement Class Period (the "Sign").

[15] Ms. Weaver sheepishly suggests that the product distribution here is tantamount to a reversion, "[a]lthough not strictly speaking a reversion of funds to the defendant, this feature of the settlement is similar to reversionary settlements in that the distribution is likely to benefit Trader Joe's in building good will…." Dkt. 98 at 5.  This is clearly not a reversion of any money back to Defendant, it is a distribution of the Products at issue directly to Class Members. Settlement §III.C.4.b.

696 F.3d 811, 819 (9th Cir. 2012) ("the question whether a settlement is fundamentally fair . . . is different from the question whether the settlement is perfect in the estimation of the reviewing court.")

Second, Ms. Weaver contends that the attorney fee request is too high because it based on the "gross settlement amount rather than the actual benefit conferred on the class." Dkt. 98 at 6. As a preliminary matter, Plaintiffs' Counsel MPA ISO Fees requested fees supported by both methods approved by the Ninth Circuit – percentage of the settlement and lodestar. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)("Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method.") When a settlement results in a cash fund, the percentage-of-the-settlement method calls for a calculation based on that amount. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole."). Ms. Weaver's suggestion that fees must be based off a net sum is simply contrary to the law of the Circuit. While certainly Courts have discretion to award fees in a manner to achieve a reasonable result, that does not fundamentally alter the manner in which fees are calculated in this Circuit. *In re Bluetooth*, 654 F.3d at 942. Indeed, reading further into the objection Ms. Weaver clarifies that "[b]efore approving fees in this case the court should require specific information on the number of claims submitted and the value of those claims." Dkt 98 at 6. With this assertion, Plaintiffs do not disagree and have done exactly that. *See, supra* at §II describing the receipt of over 58,000 claims worth $1,842,000,[16] which results in a nearly fully subscribed the Settlement.[17]

---

[16] Ms. Weaver's reliance on *Eubank v. Pella Corp.*, ---F.3d---, 2014 WL 2444388 (7th Cir. Jun. 2, 2014) is misplaced. As an initial matter the case is factually inapposite as the settlement there contained a number of issues that would be red flags in this Circuit including a named plaintiff that was related to class counsel, a partial coupon settlement and a reversion to Defendant. Ms. Weaver, however, relies on *Eubank* to point highlight the dangers of approving a settlement with a *deminimis* take rate and before the claims deadline. As with the other *Eubank* facts, this too is not present in the case at bar. Here the take rate was significant resulting in an almost full subscription to the Settlement and the Court will have the benefit of final numbers in advance of the final hearing.

[17] Plaintiffs have provided up to date figures regarding the claims rate, settlement value and administrative expenses. The claims deadline is June 16th. The claims administrator has been instructed to submit a supplemental declaration with final numbers in advance of the Final Settlement hearing.

Ms. Weaver also demands that Counsel submit detailed billing records, but this is not required by law.[18] As an initial matter, Plaintiff has sought fees under the percentage of settlement method which is not based on fees but a percentage of the settlement.  *See City of Roseville Employees' Ret. Sys. v. Orloff Fam. Tr. UAD 12/31/01*, 484 F. App'x 138, 141 (9th Cir. 2012) (in affirming final approval of settlement, the court held, "[u]nder the percentage-of-the-fund method, the focus is not on the attorneys' billing records, but on whether the percentage awarded and the resulting fee are reasonable under the circumstances of the case")(citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002)); *Lobatz v. U.S. W. Cellular of California, Inc.*, 222 F.3d 1142, 1148-49 (9th Cir. 2000)(affirming final approval of settlement where the district court relied on documented costs and summary time entries).

Ms. Weaver finds further fault in not detailing settlement administration expenses. Needless to say, these expenses had not all been incurred at the time notice was given.  RUST is a well-known and respected settlement administration company.  Now that RUST has incurred settlement expenses, it has provided them to the Court for consideration along with an estimate of the remaining expenditures necessary to effectuate claims processing and distribution.  *Dennis*, 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013)(costs endorsed by experienced counsel and claims administration consultants are presumed reasonable.); *Smith v. CRST Van Expedited, Inc.*, 2013 WL 163293, at *4 (S.D. Cal. Jan. 14, 2013) ("costs and expenses incurred by experienced counsel in creating or preserving a common fund [are] presumed reasonable").

Ms. Weaver summarizes her objection to fees stating, "absent real information of the value of the benefit to be conferred on the class by this settlement, the court should defer approval of attorneys' fees until the value of the claims submitted can be determined with some certainty." Dkt. 98 at 8. Ultimately, Ms. Weaver's objection was a speculative bet that the take rate would be small.  It was not and her objection should be overruled.

Third, Ms. Weaver contends the class representative fee is too high. Ms. Weaver's reliance on *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013) is misplaced.  The Court in *Radcliff* acknowledged that incentive awards are routinely given and reemphasized only that district

---

[18] Should the Court want detailed billing records, Plaintiffs' counsel will provide for *in camera* review.

courts are to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives. *Id.* at 1163. Necessarily, this is fact specific inquiry. In *Radcliff*, "Counsel told a plaintiff below that he would "not be entitled to anything" and that he would "jeopardize the $5,000 [he] would receive [under the settlement]" if he did not support the settlement. Class counsel also told the district court that they had told other plaintiffs that they "don't see a way for people who don't support the settlement to receive an incentive award." *Id* at 1164-1165. No such facts exist in the case at bar.  Plaintiffs seek a modest $2,500 for their "service to the class in bringing the lawsuit." *Id* at 1163. Both Counsel and the Class Representatives have attested to their participation and their request is eminently reasonable and were reduced from $7,500 at the Court's suggestion.  Braun Fee Decl. ¶31, Exs. E and F.  *Hartless v. Clorox Co*., 273 F.R.D. 630, 646 (S.D. Cal. 2011) (class representative involvement "protect[s] the interests of the class" and thus warrants incentive awards).   Incentive awards are routinely given in cases such as this and often exceed class recovery.

Finally, Ms. Weaver, relying on *Bluetooth* contends that the clear sailing provision in the Settlement agreement is a red flag. Dkt. 98 at 8. The Ninth Circuit in *Bluetooth,* 654 F.3d at 947 outlined three settlement arrangements that "could" indicate collusion because they may improperly favor counsel at the expense of the plaintiffs. These are: (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class, and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.  *Id*. (citations omitted).  In light of the resounding success of the Settlement and absence of a reverter, Ms. Weaver points to a single Bluetooth factor claiming the existence of clear sailing agreement somehow is collusive and undermines the integrity of the Settlement.  This argument has no merit.  The *Bluetooth* Court specifically noted that clear sailing provisions are not prohibited. *Id* at 949. Indeed, they carry no imprimatur of collusion or raise suspicion when they are a result of a mediated settlement before a respected neutral as is the case here.

Moreover, given the absence of a reversion to Defendant or a disproportionate distribution of the Settlement, there clearly is no danger of collusion raised in *Bluetooth. Nakash v. NVIDIA Corp.*, 539 Fed. Appx. 822, 825 (9th Cir. 2013) (finding no evidence of collusion, in part, because "mediation services were required to achieve the settlement"); *Dennings v. Clearwire Corp.*, 2013 WL 1858797, at *8 (W.D. Wash May 3, 2013) (that settlement was product of arm's length mediation led by "respected mediator" indicated, among other reasons, no collusion); *Lagarde v. Support.com, Inc.*, 2013 WL 1283325, at *11 (N.D. Cal. March 26, 2013) (finding that despite presence of the three *In re Bluetooth* warning signs no collusion where class members offered fair and adequate benefit, obtained significant prospective relief and resolved dispute using experienced neutral mediator); Newberg § 11.51 at 158-159. (As a general principle, "the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.")

### 4.   Jeff Brown & Nancy Pugleasa-Brown

As noted before, the Browns have been represented Attorney Darrell Palmer in objecting to class action settlements.  Jeff M. Brown, also an attorney, has been co-counsel with Objector Patrick Sweeney representing objectors in at least one class action.  See Lison, Decl.  .

Mr & Mrs. Brown's separate but nearly identical objections come down to their assertion that this is a "fee-driven settlement," where the "value given to the settlement is mere speculation as there is no estimate to class size or how much Defendant will likely be required to reimburse."  Dkt. No. 97 at 2.  The Browns offer citations regarding general concerns that where fees are too high it raises the likelihood that "Defendant obtained an economically beneficial concession…. in the form of lower monetary payments to class members." Dkt. No. 96  at 2; Dkt No.97 at 2.  While the Browns are quick to recite generalizations and platitudes, their objections are entirely devoid of any attempt to apply the facts of this case to their concerns.  The reason is simple -- they cannot.  The Settlement creates a cash fund from which Plaintiffs' Counsel is seeking fees in an amount consistent with laws of this Circuit. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir.1994)( In class actions that establish a common fund, the district court has discretion to use either a percentage-of-the recovery method or lodestar method to calculate reasonable attorneys' fees.).   The matter was not only

contentiously fought at arms-length, it was also negotiated at arms-length in three separate sessions over several months under the under the supervision of a well respected mediator.[19]  Braun Fee Decl. at ¶12.  Finally, the settlement makes clear that the Defendant will pay $3,375,000 into a fund which will not revert to them.  §III.C.4.[20]  Settlement Class Members without a receipt will receive from $2.70 to $39.90 per claim representing the full retail value of 10 Products.  This amount represents a substantial proportion of what could have been obtained if Plaintiffs were successful at every juncture of this litigation through trial.  Ultimately, how much of the settlement fund will be distributed in the form of cash is unknowable until the claim period ends, however, near final numbers presented in this brief indicate that Settlement was almost completely subscribed dispensing any notion that the majority of the settlement value is not being realized by the Class and that economic concessions favoring counsel at the cost of the Class had been made.

### 5.    Sweeney Family

Like Darrell Palmer, Objector and attorney Patrick Sweeney also has a long history of representing objectors in class action proceedings.[21]  Lison Decl. 6.   While not formally appearing for his wife and daughter here, Patrick Sweeney has previously representing them as objectors.  *Id.*

Pamela Sweeney's objections here can be broken down into three parts. The first objection alleges that attorney's fees are excessive and a result of collusion evidenced by a very low claim rate. This objection is predicated on the same defect as Ms. Weaver's objection – that the take rate would be *deminis* and that attorney's fees comparatively would be excessive. For the same reason as Ms. Weaver's objection must be rejected so must Ms. Sweeney's.  Ms. Sweeney spends the majority of her brief citing cases and legal and factual propositions that are inapposite to the case at bar.  As detailed many times throughout the brief, the prediction that this settlement would suffer from a low take rate,

---

[19] After the parties could not agree to a settlement after three mediation sessions, the mediator made a mediator's proposal, including settlement terms and attorneys' fees, which the Parties accepted.

[20] All § citations are to the  Superseding Stipulation of Class Action Settlement unless otherwise noted. Dkt. No. 81.

[21] The Wisconsin Bar's website lists Patrick Sweeney's address as 2935 S. Fish Hatchery, Fitchburg, WI, the same address listed for Pamela Sweeney on her Objection.  Lison Ex. 7.  According to the Wisconsin Department of Revenue, as of January 21, 2014, a Patrick Sweeney at this same address owes the state $193,291.70 in back taxes and fees.   Lison Ex. 8.

much to the professional objectors' chagrin, has not come true.  Moreover, the near final numbers have been presented in this brief and final take rate, cash value and administrative expenses will be presented to the Court in advance of the final settlement hearing. The substantial success of the settlement (more than 56,000 claims) also diffuses the any implication that the clear sailing agreement suggests collusion.  As discussed above, and in Plaintiffs' Motion in Support of Plaintiffs' Counsel's Request for award of Attorney's Fees, Reimbursement of Expenses and Plaintiff Incentive Award ("Fee Brief"), Counsel's fee request is near the benchmark request typical in cash fund cases and is entirely corroborated by a lodestar cross check. Dkt No. 93  at §II.

The second objection, set forth by Mr. Sweeney claims that the attorneys must provide "hourly detailed itemized statement[s] of attorneys' fees and expenses and ultimately should not award more than "20% of the class benefit" as attorney fees. Dkt. No 101. He echoes concern over the existence of a clear sailing agreement and says attorney's fees are "swollen," a conclusion presumably based on the Sweeney's belief that the take rate in this case would be low.  As addressed above, Plaintiffs' Counsel's fee petition is based on a percentage of the cash settlement value which was established at $3,375,000. The fees requested are well within the acceptable range of similar requests made from a cash fund. *Vizcaino,* 290 F .3d 1043, 1047 (9th Cir. 2002) (in common fund cases, the "benchmark" award is 25% of the recovery obtained, with 20-30% as the usual range).  Most importantly, the Settlement was an overwhelming success with the majority of the settlement benefit being going to the Class in the form of cash.

The third and final objection comes from Kerry Ann Sweeney who claims that "at the time objections were due parties who might not otherwise object have not received any notice regarding the class action."  Dkt No 100.  It is unclear how Ms. Sweeney claims to be among those who did not receive notice of the settlement, yet figured out a way to make a timely objection. Notwithstanding the insincerity of her one line objection, the notice disseminated in this case was sent directly to over six hundred thousand people and transmitted on the internet and in print to hundreds of thousands more. As evidenced by the visits to the settlement website and the claims rate, the settlement was well known. Atilus Decl ¶¶9, 17. Rule 23 only requires that the notice be the "best practicable under the

circumstances." Fed. R. Civ. P. 23(c)(2)(B). It need not be perfect. *Browning v. Yahoo! Inc.*, 2007 WL 4105971, at *7 (N.D. Cal. Nov. 16, 2007) ("For approval, the notice need not have been perfect.").

### 6. Michael Narkin

Michael Narkin is a former attorney who resigned from the California Bar facing 16 counts of misconduct, abandoning clients, misappropriating their money and dishonesty. Lison Decl. Ex. 9 and Ex. 10. According to *San Jose Mercury News*, after resigning from the Bar, Mr. Narkin set up the Saratoga University School of Law, "an Internet correspondence program where he served as dean and, from all appearances, faculty and administration." *Id*. The newspaper article details complaints made by students that "Narkin took tuition up front and then did little in return." *Id*. The law school was eventually stripped of its license by the State of California. Lison Decl. Ex. 11. Mr. Narkin has objected to other class action settlements in the past. Lison Decl. Ex. 12.

Mr. Narkin's objection is based on three misplaced contentions. First, he claims there is no adequate showing that the settlement bears any relationship to the alleged damages. As indicated above, the settlement represents a substantial portion of Trader Joe's profits on the Products at issue in the litigation. Given the risks going forward and the nature of a compromise the settlement value is eminently fair. Second, Mr. Narkin claims the parties' use of a protective order in this case is somehow indicative of collusion and that he, as a purported absentee Class Member, is entitled to view any document. Mr. Narkin does not provide a single citation to support his belief that absentee class members are entitled to seek documents produced by parties subject to a Court issued protective order. Moreover, he does not explain what documents he believes were produced or why he would want to see them. Ultimately, Mr. Narkin alleges that "under the cloak of a protective order, Class Counsel saw no need to engage in real discovery to determine what the case was worth. Instead, they were free to discuss attorney fees without the bother of having to be adversaries…." Dkt. No 102. The formal, informal and investigative discovery in this case has been substantial. Moreover, Mr. Narkin conveniently ignores that the settlement was only achieved after several rounds of mediation in front of a well respected neutral. Braun Fee Decl. ¶12. *Hemphill v. San Diego Ass'n of Realtors*, 225 F.R.D. 616, 619 (S.D. Cal. 2004)(Class members who object to a class action settlement do not have an

absolute right to discovery); Newberg, Newberg on Class Actions § 11:57 at 184 (4th ed. 2002); *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1084 n.6 (6th Cir. 1984) (objectors are not automatically entitled to discovery or 'to question and debate every provision of the proposed compromise). "The fundamental question is whether the district judge has sufficient facts before him to intelligently approve or disapprove the settlement." *Hemphill*, 225 F.R.D. at 619-620 (internal citations omitted). Here the Court has all it needs to consider the fairness of the settlement and appropriateness of the fees. In addition, where the objectors represent only a small percentage of the class, the likelihood of the court granting their discovery requests decreases because the court will give great weight to the interests of the majority of the class members. Newberg § 11:57 at 186; *see also In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. at 27 n.5 (D.D.C. 2001) (fact that objectors represented only a small number of thousands of class members "does not aid the movants' request"). Finally, discovery of evidence pertaining to settlement negotiations is appropriate only in rare circumstances. Because "settlement negotiations involve sensitive matters," the courts have consistently applied the principle that "'discovery [of settlement negotiations] is proper only where the party seeking it lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive.'" *Lobatz v. U.S. West Cellular of California, Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000). As mentioned settlement negotiations were conducted before a well-respected neutral such that no collusion was present.

Finally, Mr. Narkin categorically objects to the attorney fee amount based on his belief inadequate discovery was taken and the settlement undervalued. As discussed in the context of the previous objections, the requested attorney fees are well within the range of those routinely approved in this Circuit and the settlement represents a substantial portion of Trader Joe's profits that Plaintiffs could hope to obtain at trial. As such this objection too should be overruled.

## IV. CONCLUSION

For the reasons set forth in Plaintiffs' Motion for Preliminary Approval, as well as those set forth herein, Plaintiffs respectfully request that the Settlement Class be properly certified and the Settlement be fully and finally approved.

DATED:  June 16, 2014

FEINSTEIN DOYLE PAYNE
  & KRAVEC,  LLC

By:   s/Wyatt A. Lison
         Wyatt A. Lison
Joseph N. Kravec, Jr.
Stephen M. Pincus
McKean J. Evans
Allegheny Building, 17th Floor
429 Forbes Avenue
Pittsburgh, PA  15219

Janet Linder Spielberg
**LAW OFFICE OF JANET LINDNER
SPIELBERG**
12400 Wilshire Blvd., Suite 400
Los Angeles, CA 90025

Michael D. Braun
**BRAUN LAW GROUP, P.C.**
10680 W. Pico Boulevard, Suite 280
Los Angeles, CA 90064

*Attorneys for Plaintiffs*

**PROOF OF SERVICE**

STATE OF PENNSYLVANIA          )
                              )   ss.:
COUNTY OF ALLEGHENY           )

I am employed in the County of Allegheny, State of Pennsylvania.  I am over the age of 18 and not a party to the within action.  My business address is 429 Forbes Avenue, Allegheny Building, 17th Floor, Pittsburgh, PA  15219.

On June 16, 2014, using the Northern District of California's Electronic Case Filing System, with the ECF ID registered to Wyatt A. Lison, I filed and served the document(s) described as:

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**[X]     BY ELECTRONIC TRANSMISSION USING THE COURT'S ECF SYSTEM:**  I caused the above document(s) to be transmitted by electronic mail to those ECF registered parties listed on the Notice of Electronic Filing (NEF) pursuant to Fed.R.Civ.P. 5(d)(1) and by first class mail to those non-ECF registered parties listed on the Notice of Electronic     Filing (NEF).  *"A Notice of Electronic Filing (NEF) is generated automatically by the ECF       system upon completion of an electronic filing.  The NEF, when e-mailed to the e-mail        address of record in the case, shall constitute the proof of service as required by        Fed.R.Civ.P. 5(d)(1).  A copy of the NEF shall be attached to any document served in the        traditional manner upon any party appearing pro se."*

I declare that I am admitted *pro hac vice* in this action.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on June 16, 2014, at Pittsburgh, Pennsylvania.

s/ Wyatt A. Lison
Wyatt A. Lison