CARLA CHRISTOFFERSON (S.B. #161111)
cchristofferson@omm.com
KATE IDES (S.B. #274820)
kides@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street
Los Angeles, California  90071-2899
Telephone:     (213) 430-6000
Facsimile:      (213) 430-6407

RANDALL W. EDWARDS (S.B. #179053)
redwards@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, CA  94111-3823
Telephone:     (415) 984-8700
Facsimile:      (415) 984-8701

***ATTORNEYS FOR DEFENDANT***
***TRADER JOE'S COMPANY***

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| TAMAR DAVIS LARSEN AND ARAN EISENSTAT, on behalf of themselves and all others similarly situated,<br><br>                 Plaintiffs,<br><br>          v.<br><br>TRADER JOE'S COMPANY, a California Corporation,<br><br>                 Defendant. | Case No. 3:11-cv-05188-WHO<br><br>**DEFENDANT TRADER JOE'S COMPANY'S RESPONSE TO OBJECTIONS TO SUPERSEDING STIPULATION OF CLASS ACTION SETTLEMENT**<br><br>Judge:           Hon. William H. Orrick<br>Hearing Date:  July 9, 2014<br>Hearing Time:  2:00 p.m. |

1    **I.    INTRODUCTION**

2         Certain objections submitted to the Superseding Stipulation of Class Action Settlement

3    (the "Agreement") rely on faulty assumptions and a misinterpretation of *In re Bluetooth Headset*

4    *Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011). This Response addresses those

5    objections.

6         This litigation was hotly contested throughout and required three separate days of

7    mediation along with a later submission of a mediator's proposal to get it settled. There was no

8    collusion or self-dealing, and any concerns stemming from the presence of "warning signs" under

9    *Bluetooth* are completely dispelled by an examination of the case and the claims submission

10   process. As of the filing of this brief, over 58,000 Settlement Class Members[1] have submitted

11   claims and those claims are currently valued at nearly $1,850,000. The attorneys' fees and costs

12   sought by Co-Lead Counsel—$950,000—is not necessarily disproportionate to the anticipated

13   payout to the Settlement Class, and their *request* certainly should not delay or derail final

14   approval of the entire settlement. In addition, there is no reversion of funds to Trader Joe's in this

15   settlement. If Trader Joe's total financial commitment is not exhausted by payment of settlement

16   administration expenses, attorneys' fees and costs, incentive awards, and cash refunds to

17   Settlement Class Members, whatever value remains of that total financial commitment will be

18   given away as Products to Settlement Class Members as a secondary distribution.

19        Moreover, *Bluetooth* does not require a rejection of the settlement even when one or more

20   of the "warning signs" of collusion is present. Rather, it simply necessitates a closer examination

21   of the settlement. Here, such an examination confirms that this settlement was the result of a fair,

22   arm's-length negotiation and the objections should be overruled.

23   **II.    BACKGROUND**

24        **A.    Overview of Objections Submitted**

25        As of June 16, 2014, 18 objections to this settlement have been made.[2] (Declaration of

26   _____

27   [1] Unless otherwise stated, all capitalized terms in this Response have the same meaning as set
     forth in the Agreement, Dkt. No. 81-1.

28   [2] Of those 18 objections, just one was submitted after the June 2, 2014 deadline to object. (*See*
     Shannon Koch Objection, Dkt. No. 105 at 4 (postmarked June 11, 2014).) In addition, at least two

1    Roslyne Atilus ("Atilus Decl."), Dkt. No. 108-13 ¶ 14.) This is in stark contrast to the number of

2    claims for cash refunds submitted—58,095 as of June 15, 2014. (*Id*. ¶ 17.) The objectors

3    generally fall into one of two categories. One group of objectors appears to be loyal Trader Joe's

4    customers who believe Plaintiffs' claims lack merit. (*See, e.g.*, David Brook Objection ("Brook

5    Obj."), Dkt. No. 88 at 1 ("I would drive over 20 miles to go to the nearest Trader Joe's . . . this is

6    a frivolous case . . . ."); Barbara Coffing Objection, Dkt. No. 87 at 1 ("If the original litigants had

7    only done their research in the beginning, a great company like Trader Joe's, who does their best

8    to bring us great products at great prices, and help the community as well, would not be in this

9    undeserving predicament."); Byron Reimus Objection, Dkt. No. 84 at 1 ("It seems clear to me

10   that this suit is frivolous on every count.").)

11          The second group of objectors generally complain that, under the reasoning set forth in

12   *Bluetooth*, certain "warning signs" of collusion and self-dealing are present here and, therefore,

13   this Court should withhold (or at least delay) final approval of the settlement. (*See, e.g.*, Pamela

14   Sweeney Objection ("Sweeney Obj."), Dkt. No. 99.) More specifically, objectors Nancy

15   Pugleasa-Brown and Jeff M. Brown (who asserted identical objections except for their prefatory

16   remarks) and Patrick Sweeney appear to argue that the attorneys' fees and costs sought by Co-

17   Lead Counsel are unreasonably high, which indicates potential collusion between the parties. (*See*

18   Nancy Pugleasa-Brown Objection ("Pugleasa-Brown Obj."), Dkt. No. 96 at 2-3; Jeff M. Brown

19   Objection ("Brown Obj."), Dkt. No. 97 at 2-3; Patrick Sweeney Objection ("P. Sweeney Obj."),

20   Dkt. No. 101 at 2.) Similarly, objector Pamela Sweeney assumes very few Settlement Class

21   Members will submit claims for cash refunds and thus complains that Co-Lead Counsel *may*

22   receive a disproportionate share of the settlement. (Sweeney Obj., Dkt. No. 99 at 2-3.) And she

23   further complains that Co-Lead Counsel insulated their request for attorneys' fees and costs from

24   an adversarial challenge by Trader Joe's by negotiating a "clear sailing" provision. (*Id*. at 2.) Both

25   of these complaints are also voiced by objectors Patrick Sweeney (P. Sweeney Obj., Dkt. No. 101

26

27   other "objections" can reasonably be construed as Requests for Exclusion. (*See, e.g.*, Brook Obj., Dkt. No. 88 at 1 ("I . . . do not wish to add to Trader Joe's expenses, [sic] by being included in this suite [sic]."); Diane Atkins Objection, Dkt. No. 86 at 1 ("I am opting out of this so call [sic]

28   court settlement.").

TJ'S RESPONSE TO OBJECTIONS;
                                          3:11-CV-05188-WHO

1    at 2) and Dawn Weaver (Dawn Weaver Objection ("Weaver Obj."), Dkt. No. 89 at 6-7).[3]

2        Dawn Weaver separately objects on the ground that the secondary distribution of products

3 to Settlement Class Members, pursuant to Section III.C.4.b of the Agreement, is akin to a

4 reversion of funds and therefore runs afoul of *Bluetooth*. (Weaver Obj., Dkt. No. 89 at 5.) She

5 further objects to the product distribution on the grounds that (i) it is arbitrary because it is not

6 limited to Settlement Class Members and (ii) because class members prefer cash. (*Id*. at 5.)

7       **B.**     **Estimated Value of Claims Submitted**

8        As of June 15, 2014, Rust Consulting, Inc. ("Rust"), the Class Action Settlement

9 Administrator, has received 52,588 online claims and 5,507 paper claims. (Atilus Decl., Dkt.

10 No. 108-13 ¶ 17.) The approximate dollar value of these claims is $1,842,260.91. (*Id*.) This is

11 only a preliminary approximation as Rust continues to receive and process claims and the

12 deadline to submit claims does not run until June 16, 2014. (*Id*.)

13 **III.**    **ARGUMENT**

14        Five of the 18 objections filed (a small number in light of the approximately 58,095

15 claims made) urge this Court to withhold, or at least delay, final approval of the settlement

16 because one or more of the "warning signs" of possible collusion and self-dealing identified in

17 *Bluetooth*—disproportionate attorneys' fees award, a "clear sailing" arrangement, and a reversion

18 of funds to defendant—are present here. 654 F.3d at 947. Withholding final approval of the

19 settlement on this ground (or any other) is not warranted. None of the *Bluetooth* objectors have

20 identified any express evidence of collusion in the negotiation of the Agreement and, as set forth

21 in detail below, the objectors' arguments based on *Bluetooth* have no merit—none of the

22

23     ––––––––––––––––––––
[3]   It appears that the submission of these objections was the product of a coordinated effort, which

24 may warrant treating the objections as a single submission. For instance, the objections of Nancy Pugleasa-Brown and Jeff M. Brown are nearly identical (*see* Pugleasa-Brown Obj., Dkt. No. 96;

25 *compare with* Brown Obj., Dkt. No. 97), and these submissions assert similar arguments as those of Pamela Sweeney and Patrick Sweeney, and even include nearly identical prefatory language

26 regarding purchases made, their intent to appear at the fairness hearing, and their request to be added to the service list (*see* Pugleasa-Brown Obj., Dkt. No. 96 at 1; Brown Obj., Dkt. No. 97 at

27 1; Sweeney Obj., Dkt. No. 99 at 1; P. Sweeney Obj., Dkt. No. 101 at 1.) In addition, counsel for Dawn Weaver, Joseph Darrell Palmer, appears to have represented at least three of these

28 objectors in challenges to other class action settlements. (*See* Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, Dkt. No. 109 at 14.)

"warning signs" purportedly present here give rise to an inference that there was collusion or self-dealing involved in the negotiation of this settlement. While Trader Joe's did agree it would not oppose Co-Lead Counsel's application for an award of attorneys' fees and costs not to exceed a total of $950,000 (*see* Agreement, Dkt. No. 81-1 at 26), the attorneys' fees and costs sought are not disproportionate compared to the distribution to the Settlement Class,[4] and there is no reversion of funds to Trader Joe's.

A.      **The *Bluetooth* Objectors Have Not Identified Any Compelling Evidence of Express or Implicit Collusion.**

First, the objection that the attorneys' fees and costs are disproportionate is premised on speculation that is incorrect. The *Bluetooth* objectors assume that few claims will be submitted and, based on that assumption, conclude that Co-Lead Counsel's attorneys' fees request probably will be disproportionate to any benefit received by Settlement Class Members. (*See* Brown Obj., Dkt. No. 97 at 2; Pugleasa-Brown Obj., Dkt. No. 96 at 2; Sweeney Obj., Dkt. No. 99 at 2-3; Weaver Obj., Dkt. No. 98 at 4.) In contrast to that speculation, the claims submitted to date are numerous. As of June 15, 2014, Rust has received at least 58,095 claims—52,588 submitted online and 5,507 submitted by paper. (Atilus Decl., Dkt. No. 108-13 ¶ 17.) The estimated value of these claims is $1,842,260.91.[5] (*Id.*)

Based on the claims made as of June 15, 2014, the requested attorneys' fees and costs award is not disproportionate under *Bluetooth* and, therefore, does not give rise to an inference of self-dealing. *See id.*, 654 F.3d at 938 (disparity between attorneys' fees award and class recovery

---

[4]  Moreover, the Court, not the Parties, will ultimately determine the amount of attorneys' fees and costs awarded to Co-Lead Counsel. As noted by Judge Orrick in the hearing for preliminary approval, the Court can (and, he noted, would), examine the claim submission rate in determining the appropriate amount of attorneys' fees to approve. (*See* Transcript of Dec. 4, 2013 Preliminary Approval Hearing, Dkt. No. 83 at 13.) That, not a rejection or delay of final approval of the entire settlement, is the appropriate safeguard here where there is no evidence of collusion or that Co-Lead Counsel somehow negotiated away benefits to the Settlement Class in exchange for a greater attorneys' fees award.

[5]  Rust continues to process and validate claims. (Atilus Decl., Dkt. No. 108-13 ¶ 18.) Accordingly, pursuant to Paragraph 19 of the Order Granting Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order"), Rust will submit a supplemental declaration at least seven business days before the Final Approval Hearing providing an update to the Court on the number and value of valid claims made on or before June 16, 2014. (*Id.* ¶¶ 17, 18.)

TJ'S RESPONSE TO OBJECTIONS;
3:11-CV-05188-WHO

can give rise to an inference of unfairness). Whether an attorneys' fees request is disproportionate to the benefit received by the class for purposes of the *Bluetooth* "collusion analysis" is a separate inquiry from whether an attorneys' fees request is reasonable under Fed. R. Civ. P. 23(h). *See Lagarde v. Support.com, Inc.*, No. C12-0609 JSC, 2013 U.S. Dist. LEXIS 42725, at *22-23 (N.D. Cal. Mar. 25, 2013) ("the determination of what is a reasonable fee presents a question different from whether, under *Bluetooth*, the overall settlement is fair, reasonable, and adequate") (internal quotations and citation omitted). Accordingly, the Ninth Circuit's benchmark of 25% in common fund cases does not govern the analysis. *Id.* (citation omitted); *see Bluetooth*, 654 F.3d at 942 ("courts typically calculate 25% of the fund as the 'benchmark' for a *reasonable* fee award") (citation omitted).

In practice, district courts undertaking the *Bluetooth* "collusion analysis" typically find that fee awards are disproportionate where they exceed the actual payout to the class. *See, e.g.*, *id.* at 939-40, 947 (the award of attorneys' fees was "apparently disproportionate" where it was eight times the $100,000 *cy pres* distribution); *Lagarde*, 2013 U.S. Dist. LEXIS 42725, at *23-24 (attorneys' fees request was disproportionate where it was almost three times the actual payout to the class); *Harris v. Vector Mktg. Corp.*, No. 2011 U.S. Dist. LEXIS 117927, at *16-17 (N.D. Cal. Oct. 12, 2011) (while noting that such disparity is not "inherently problematic," concluding that attorneys' fees request was disproportionate where "roughly four times greater than the actual and expected payout to the class"). Here, in comparison, the attorneys' fees and costs sought are less than half the value of the claims submitted.[6] *See Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 984 (E.D. Cal. Dec. 20, 2012) (attorneys' fees request is not disproportionate where class counsel seeks an award of 29% of the settlement fund and where the anticipated payout to the class exceeds the award sought).

Second, there is no reversion in this settlement. As described in full at Sections III.C.4 of the Agreement, the remaining value of Trader Joe's total financial commitment 120 days after

---

[6]  In addition to this sizeable monetary payout, Trader Joe's also revised the labels of the Products to omit the use of "All Natural" or "100% Natural." (Agreement, Dkt. 81-1 at 13.) The collective value of the costs of implementing the labeling changes and the subsequent value to the Settlement Class, as assigned by the Honorable Peter Lichtman (ret.), is $350,000. (*Id.*)

1  checks have been sent to Settlement Class Members shall be distributed as Products to Settlement

2  Class Members in at least the top 10% highest grossing stores of each state where Trader Joe's

3  operates retail locations. (Agreement, Dkt. 81-1 at 14-17.) Accordingly, should this Court award

4  Co-Lead Counsel less than $950,000 in attorneys' fees and costs, the fees that were not awarded

5  will either be distributed as cash refunds or as Products to Settlement Class Members. Either way,

6  no funds revert to Trader Joe's.

7          While objector Dawn Weaver concedes there is no reversion of funds to Trader Joe's in

8  this settlement, she asserts that the secondary product distribution raises the same concerns as

9  reversionary settlements because the product distribution will engender "good will" for Trader

10 Joe's from its customers. (Weaver Obj., Dkt. No. 98 at 5.) This objection misunderstands the

11 terms of the product distribution and Trader Joe's obligations with respect to the same, which are

12 set forth in detail at Section III.C.4 of the Agreement. (Dkt. 81-1 at 14-17.) First, during the in-

13 store distributions, Trader Joe's will be required to "prominently display" a sign informing

14 customers that "the distribution is part of this class action settlement and that by accepting the

15 Products customers represent and warrant that they purchased one or more of the Products during

16 the Class Period." (*Id*. at 16.) In addition, those Trader Joe's employees distributing the Products

17 will be instructed to inform customers, upon inquiry, that the Products are being given away as

18 part of the settlement (not as a sampling or marketing campaign) and will direct customers

19 seeking additional information to the posted sign or the Settlement Website. (*Id*.) Finally, to the

20 extent there is a product distribution, Trader Joe's will not give away just any products (i.e.,

21 products Trader Joe's is trying to move off shelves or are nearing expiration). Instead, it will give

22 away those products that were at issue in this Action that no longer bear the "All Natural" or

23 "100% Natural" representation. (*Id*. at 13, 15-16.)

24          Given these obligations, Trader Joe's does not anticipate that the product distribution will

25 engender "good will." Rather, Trader Joe's expects that the in-store product distribution will only

26 renew customer discourse regarding the Action and the validity of the allegations regarding the

27 use of "All Natural" and "100% Natural" representations and may raise among customers the

28 incorrect, but commonly drawn, inference that the decision to settle indicates Trader Joe's

TJ'S RESPONSE TO OBJECTIONS;
3:11-CV-05188-WHO

1    violated the law or somehow harmed its customers.[7]

2    Third, while the Agreement does contain a "clear sailing" arrangement, this "warning

3    sign" alone, without further evidence of self-dealing—of which there is none—does not compel

4    the conclusion that the settlement was the product of collusion. *See, e.g.*, *Dennings v. Clearwire*

5    *Corp.*, No. C10-1859JLR, 2013 U.S. Dist. LEXIS 64021, at 23-24 (W.D. Wash. May 3, 2013)

6    (considering *Bluetooth* and concluding that the "clear sailing" arrangement does not indicate

7    collusion where amounts not awarded as attorneys' fees will revert to the settlement class);

8    *Adoma*, 913 F. Supp. 2d at 984-85 (same); *Lagarde*, 2013 U.S. Dist. LEXIS 42725, at *27-30

9    (finding no collusion even where all three "warning signs" were present); *In re Easysaver*

10   *Rewards Litig.*, 921 F. Supp. 2d 1040, 1054 (S.D. Cal. Feb. 4, 2013) (approving settlement

11   agreement with "clear sailing" arrangement where "the payment of attorneys' fees is incorporated

12   into the final settlement of the entire action, and the funds for attorneys' fees are not held separate

13   from the class funds").

14   Central to the "no collusion" finding in *Dennings*, *Adoma* and *Easysaver* was the fact that

15   any amounts not awarded as attorneys' fees would revert to the class fund. The same is true here.

16   As detailed above, should this Court award less than $950,000 in attorneys' fees and costs, the

17   amounts not awarded will either be distributed as cash refunds or as Products to Settlement Class

18   Members. Thus, the existence of a "clear sailing" arrangement here does not, on its own, indicate

19   that the settlement was the product of collusion, nor does it render the settlement unfair,

---

[7] Dawn Weaver also objects to the product distribution on the grounds that it does not adequately identify Settlement Class Members and so products may be distributed to persons who are not members of the Settlement Class. (Weaver Obj., Dkt. 98 at 5.) In addition, Weaver complains that, as a general rule, class members prefer cash. (*Id.*) As discussed above, the signage accompanying the distribution will inform customers that by accepting the products, they are representing and warranting they are members of the Settlement Class. That this limitation will not stop persons from claiming products who are not members of the Settlement Class is not compelling. The very same objection could be made about the submission of claims for cash refunds without proof of purchase. Certainly Weaver would not complain that the cash refund is objectionable on that ground.

Finally, that some Settlement Class Members may prefer cash over products is not grounds for withholding approval of the settlement where the standard is whether the settlement is fair, reasonable, and adequate, *see* Fed. R. Civ. P. 23(e)(2), not whether it satisfies the preferences of every class member. *See Lagarde*, 2013 U.S. Dist. LEXIS 42725, at *14-15 ("that the settlement could have been better . . . does not mean the settlement presented was not fair, reasonable or adequate") (citation and internal quotations omitted).

TJ'S RESPONSE TO OBJECTIONS;
3:11-CV-05188-WHO

1    unreasonable, or inadequate.

2           Moreover, in *Bluetooth*, the Ninth Circuit noted that the problem with the "clear sailing"

3    arrangement is that "it increases the likelihood that class counsel will have bargained away

4    something of value to the class." 954 F.3d at 948 (internal quotations and citation omitted). But

5    that concern is not present where, as here, the matter was settled by agreeing to a mediator's

6    proposal. (*See* Declaration of Michael D. Braun in Support of Plaintiffs' Motion for Award of

7    Attorneys' Fees; Reimbursement of Expenses; and Plaintiff Incentive Awards ("Braun Decl."),

8    Dkt. No. 93-1 ¶ 12.) In such circumstances, class counsel's ability to "bargain away something of

9    value to the class" in exchange for red-carpet treatment on attorneys' fees is hamstrung.

10          Finally, none of the objectors point to any express evidence of collusion—because there

11   was none. The settlement resulted from an arm's-length negotiation—including three separate

12   days of mediation over a period of several months led by a retired judge of Los Angeles Superior

13   Court, the Hon. Peter Lichtman (ret.). (*Id.*) In the wake of *Bluetooth*, several courts have found

14   that the use of a third-party neutral to guide settlement negotiations is a significant factor when

15   examining whether a settlement is free of collusion. *See, e.g.*, *Dennings*, 2013 U.S. Dist. LEXIS

16   64021, at *23 (finding no collusion where, among other reasons, the settlement was the product

17   of an arm's-length negotiation guided by a mediator); *Lagarde*, 2013 U.S. Dist. LEXIS 42725, at

18   *30 (that the settlement was the product of arm's-length negotiation led by an experienced neutral

19   mediator weighed in favor of non-collusiveness finding); *Easysaver*, 921 F. Supp. at 1054 (no

20   evidence of collusion or self-interest where "[t]here were numerous settlement proceedings,

21   several of which were presided over by well-respected retired district court judges and magistrate

22   judges" and "the settlement resulted from an arms-length negotiation process with the benefit of

23   the class members in mind"). In addition, that the Parties remained "intractable" after three days

24   of mediation over a period of several months and only reached an agreement upon acceptance of

25   the mediator's proposal (Braun Decl., Dkt. No. 93-1 ¶ 12), is further evidence that the settlement

26   was not the product of collusion or self-dealing. *See Dennings*, 2013 U.S. Dist. LEXIS 64021, at

27   *23 (finding no collusion where parties negotiated attorneys' fees after benefits to the settlement

28   class were agreed on *and* the fee award negotiated was the mediator's proposal).

**B.** **_Bluetooth_ Does Not Direct This Court to Withhold Final Approval Simply Because One or More of the "Warning Signs" Are Present.**

To the extent the *Bluetooth* objectors request that this Court withhold or delay final approval of the settlement because certain "warning signs" of collusion are present, *Bluetooth* does not so hold. Rather, in *Bluetooth*, the Ninth Circuit counseled that where a settlement is negotiated before class certification, district courts must scrutinize the settlement for "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." 654 F.3d at 947 (citation omitted). The Ninth Circuit did not hold that the presence of one or more of these signs *requires* withholding final approval. *See id*. at 947-50. Indeed, it did not even find that the *Bluetooth* settlement—which consisted of $100,000 in *cy pres* payments, some injunctive relief (the value of which the Ninth Circuit questioned, *id*. at 945 n.8), and $800,000 in attorneys' fees (which equaled 83% of the settlement fund, *id*. at 945), and involved no monetary distribution to individual settlement class members—was inherently unfair, *id*. at 939-40, 949-50. Instead, the Ninth Circuit vacated the district court's approval order and remanded to the district court for further consideration in accordance with its directive that district courts must examine pre-certification settlements for any "indicia" of collusion and evaluate any "warning signs" identified to ensure self-dealing did not infect negotiations. *See id*. at 947-50. Accordingly, courts subsequently applying *Bluetooth* have found settlements to be free of collusion and self-dealing even when *several* of the "warning signs" were present. *See, e.g.*, *Lagarde*, 2013 U.S. Dist. LEXIS 42725, at *27-30 (finding settlement did not result from collusion even though all three *Bluetooth* "warning signs" were present).

**IV.   CONCLUSION**

For the foregoing reasons, Trader Joe's requests that this Court overrule all objections that the Superseding Stipulation of Class Action Settlement was the product of collusion or self-dealing.

TJ'S RESPONSE TO OBJECTIONS;
3:11-CV-05188-WHO

1    Dated:  June 16, 2014

2                                         CARLA CHRISTOFFERSON
                                          RANDALL W. EDWARDS
3                                         KATE IDES
                                          O'MELVENY & MYERS LLP
4

5

6                                         By:        /s/ Carla Christofferson
                                                   Carla Christofferson
7                                         Attorneys for Defendant
                                          TRADER JOE'S COMPANY
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28