UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMAR DAVIS LARSEN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> TRADER JOE'S COMPANY, <br><br> Defendant. | Case No.  11-cv-05188-WHO <br><br> **ORDER ON FINAL SETTLEMENT APPROVAL** <br><br> Re: Dkt. Nos. 93, 107 |

Before me are the motions of plaintiffs Tamar Davis Larsen and Aran Eisenstat for final approval of class action settlement and an award of attorneys' fees, costs, and class representative incentive.  The plaintiffs' complaint asserts that Trade Joe's Company falsely and misleadingly labeled several of its products as "All Natural" or "100% Natural" even though they allegedly contained synthetic ingredients.  The settlement provides that Trader Joe's discontinue use of the terms "All Natural" or "100% Natural" on the labels of the products, and creates a settlement fund of $3,375,000.00 to compensate class members.  The settlement provides each class member with proof of purchase a full reimbursement for each product purchased during the class period.  Each class member without a proof of purchase is reimbursed for the value of up to 10 products.  Any amounts left in the fund will not revert to Trader Joe's, but will rather be distributed in the form of products to class members at Trader Joe's retail locations throughout the United States.  As of June 29, 2014, there were a total of 59,830 claims made by class members representing a total claim value of $1,906,884,75.  Only 23 persons opted out and 18 objected.  As detailed below, the objections are not meritorious and should not undermine this successful settlement.

Plaintiffs' counsel's attorneys' fees request is for $950,000.00, or 28% of the settlement fund.  The amount is consistent with the lodestar and the success achieved, and in the acceptable range in the Ninth Circuit.

After carefully considering all papers filed, the arguments of the parties, the objections filed by class members, and for the following reasons, I find that the settlement is fair, reasonable, and adequate.  I GRANT both motions.

## FACTUAL BACKGROUND

The plaintiffs filed this case on October 24, 2011 on behalf of a nationwide class of consumers who purchased defendant Trader Joe's food products labeled as "All Natural" and "100% Natural" even though they allegedly contain one or more synthetic ingredients.  They assert claims for: (1) violation of the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*; (2) common law fraud; (3) unlawful business practices in violation of California's Unfair Competition Law, Cal. Bus. & Prof Code §§ 17200, *et seq.* ("UCL"); (4) unfair business practices in violation of the UCL; (5) fraudulent business practices in violation of the UCL; (6) false advertising in violation of Cal. Bus. & Prof. Code 17500, *et seq.*; (7) violation of the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*; and (8) restitution.

The plaintiffs filed three complaints, defeated the defendants' motion to dismiss and motion for judgment on the pleadings, and began merits and class discovery.  Dkt. Nos. 41, 52. Over the course of several months, the parties attended three separate mediation sessions under the supervision of the Honorable Peter Lichtman.  The parties could not agree to a settlement at the mediations.  The mediator then prepared a mediator's proposal, including settlement terms and attorneys' fees, which the parties accepted.  On February 3, 2014, the parties filed the Stipulation of Class Settlement (the "Settlement Agreement").  Dkt. No. 81-1.

The Settlement Agreement provides a settlement fund of $3,375,000.  *Id.*  Each class member with proof of purchase receives a full reimbursement for each product purchased during the class period.  The settlement remunerates each Class Member without a proof of purchase up to 10 products, ranging in price from $2.70-$3.99 (i.e. maximum claim range from $27.00 to $39.90).  *Id.*  Any amounts left in the fund are to be distributed in the form of products to class members at Trader Joe's retail locations throughout the United States.  *Id.*  The remaining amount of the settlement fund that will be converted into product is estimated at about $55,000 to $85,000.

The Settlement Agreement also provides equitable relief.  Trader Joe's will stop using the

United States District Court
Northern District of California

2

disputed labels, and the labels will not be used on the products in the future unless the products are reformulated or there is a change in the law such that it is clear that the use of the terms "All Natural" or "100% Natural" would not be false or misleading.  *Id.*

On February 6, 2014, I granted preliminary approval of the settlement, authorized the notice process, and scheduled a hearing to consider final approval of the settlement.  Dkt. No. 82. I also appointed Rust Consulting Inc. to serve as settlement administrator and to carry out the notice plan outlined in the Settlement Agreement, which entailed: (i) printing and mailing the class notice to 201,329 potential class members for whom mailing addresses were available; (ii) publishing the class notice twice nationally in USA Today; (iii) establishing a toll-free telephone number to receive class members' comments and questions; and (iv) creating an informational website, www.tjallnaturalclassaction.com.  *Id.*  The website became available for public access on February 26, 2014.  The website allows class members to complete a claim form on-line and provides relevant documents and general information on the proposed Settlement Agreement and answers to frequently asked questions.  In addition, the following documents were made available on the website: class notices, claim forms, the preliminary approval order, the Settlement Agreement, and a Spanish version of the long form notice.  Atilus Decl., ¶¶ 3-11.  In addition, RUST disseminated the short form notice via PR Newswire.  *Id.* ¶4.  The notice was subsequently rebroadcast to over 5,400 media contacts and appeared on over 300 news media websites.  *Id.* Separately, Trader Joe's disseminated the long form notice to 436,813 Trader Joe's customers via its newsletter, Fearless Flyer.  Sloan Decl. ¶3.

As of June 15, 2014, there were a total of 125,081 unique visitors to the Settlement Website and 741 calls to the toll-free number.  Atilus Decl. ¶¶ 9, 10.  As of June 29, 2014, there were a total of 59,830 claims representing a total claim value of $1,906,884,75.  Atilus Supp. Decl. ¶¶ 2, 3.  The deadline for class members to opt out of or object to the settlement was June 2, 2014.  Twenty-three class members have opted out and sixteen have objected.  Dkt. Nos. 85-92, 94-98, 100-102, 105, 113-114.

On May 1, 2014, the plaintiffs filed a motion seeking an award of $950,000.  Dkt. No. 93. Plaintiffs' counsel collectively spent 1,759 hours on this case, representing a lodestar of

$958,975.50, and incurred $62,792.86 in costs. *See Id.*; Braun Supp. Decl. ¶ 8. Pursuant to the Settlement Agreement, the attorneys' fees and costs are to come from the settlement fund and are 28% of the total fund amount of $3,375,000. *Id.* Plaintiffs also seek an incentive award of $2,500 for each class representative. The parties agreed to these amounts in mediation. *Id.*

On June 16, 2014, the plaintiffs filed their motion for final approval of class action settlement. Dkt. No. 107.

## LEGAL STANDARD

## I.  CLASS ACTION SETTLEMENT APPROVAL

Rule 23 of the Federal Rules of Civil Procedure requires a court to determine whether a proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)) (the "Churchill factors").

Not all of these factors will apply to every class action settlement, and in certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (quotation marks omitted)).

In addition to the above factors, where "a settlement agreement is negotiated prior to formal class certification," I must also ensure that, "the settlement is not the product of collusion among the negotiating parties." *Bluetooth*, 654 F.3d at 946–47 (internal citation and quotations

4

1   omitted).  Such signs of collusion include: (1) "when counsel receive a disproportionate

2   distribution of the settlement;" (2) when the parties negotiate an arrangement under which

3   defendants agree not to oppose an attorneys' fee award up to a certain amount, which is

4   independent from the class's actual recovery, as such an arrangement carries "the potential of

5   enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel

6   accepting an unfair settlement on behalf of the class;" and (3) "when the parties arrange for fees

7   not awarded to revert to defendants rather than be added to the class fund."  *Id*. at 947 (the

8   "Bluetooth factors").

9       **II.  ATTORNEYS' FEE AWARD**

10          Rule 23(h) of the Federal Rules of Civil Procedure provides, "In a certified class action,

11  the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or

12  by the parties' agreement."  Attorney's fees provisions included in proposed class action

13  agreements must be "fundamentally fair, adequate and reasonable."  *Staton*, 327 F.3d at 964.  In

14  "common fund cases," a court has discretion to award attorneys' fees either as a percentage of

15  such common fund or by using the lodestar method.  *Id*. at 967–68.  "The percentage method

16  means that the court simply awards the attorneys a percentage of the fund sufficient to provide

17  class counsel with a reasonable fee."  *Hanlon*, 150 F.3d at 1029 (citing *Paul, Johnson, Alston &*

18  *Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  Even when applying the percentage method,

19  the court should use the lodestar method as a cross-check to determine the fairness of the fee

20  award.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).

21                          **DISCUSSION**

22  **I.  FINAL APPROVAL OF CLASS SETTLEMENT**

23          **A.  The Strength of Plaintiffs' Case**

24          In determining the settlement's fairness, I must balance the risks of continued litigation,

25  including the strengths and weaknesses of a plaintiff's case, against the benefits afforded to class

26  members, and the immediacy and certainty of a recovery.  *LaGarde v. Support.com, Inc*., 2013

27  WL 1283325, at * 4 (N. D. Cal. March 26, 2013) (citing *In re Mego Fin. Corp. Sec. Litig*., 213

28  F.3d 454, 458 (9th Cir. 2000).  The settlement avoids the risks that the plaintiffs would not

United States District Court
Northern District of California

succeed in demonstrating that Trader Joe's failed to comply with state consumer protection laws. While the plaintiffs assert that they believe their claims are strong, they acknowledge that they would face significant risks should the case proceed through litigation.  Br 6-7.  Trader Joe's vigorously denied liability and challenged all of the plaintiffs' claims.  *Id*.  In particular, recent decisions have made class certification in food labeling cases an uncertainty.  *See Sethavanish v. ZonePerfect Nutrition Co*., 2014 WL 580696 at *5 (N.D. Cal. Feb. 13, 2014); *Astiana v. Ben & Jerry's Homemade, Inc*., 2014 WL 60097, at *12 (N.D. Cal. Jan. 7, 2014).  The plaintiffs also assert that the Ninth Circuit's decision in *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. Cal. 2012), could drastically reduce the size of the class and the economics of the litigation.  Given the uncertainties of class certification, and the significant risks that lie ahead through summary judgment and trial, it is reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results.  Accordingly, this factor weighs in favor of final approval of the settlement.

**B.  The Risk, Expense, Complexity, and Likely Duration of Further Litigation**

Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526 (citation omitted).  The plaintiffs have established that there are significant risks in entering a protracted litigation, including the ultimate reduction in the amount of funds available for settlement.  In the absence of settlement now, the parties would incur significant additional costs in discovery, including depositions, discovery of suppliers of the various synthetic ingredients, a survey of Trader Joe's customers regarding the materiality of the alleged misrepresentations, and expert discovery addressing the use of synthetic versus natural ingredients.  Br. 7.  Moreover, settlement is favored where, as here, significant procedural hurdles remain, including class certification and an anticipated appeal.  *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).  Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all parties, as well as conserve judicial resources. *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010). Accordingly, the high risk, expense, and complex nature of the case weigh in favor of approving

the settlement.  *Rodriguez*, 563 F.3d at 964.

### C.  The Risk of Maintaining Class Action Status Through Trial

This factor, which concerns the risk of maintaining class certification, also favors settlement.  Although the plaintiffs are confident that certification is proper for this class, as discussed above, plaintiff has identified several meritorious arguments that Trader Joe's could raise to class certification in the event this lawsuit was to proceed.  Given the risk in obtaining and maintaining class certification, this factor weighs in favor of approving the settlement.

### D.  The Amount Offered in Settlement

This factor examines the benefits to class members.  *Churchill Village*, 361 F.3d at 574.  The parties negotiated a settlement fund of $3,375,000.  Plaintiffs' counsel represented at the hearing that this amount is 50% of the recovery plaintiffs' could have received had the case gone to trial.  This is a substantial amount, especially given the early stage at which this case settled, and the risks of obtaining class certification and trial.  The settlement fund amount is also large enough to compensate all of the claims made.  Under the Settlement Agreement each class member with proof of purchase receives a full reimbursement for each product purchased during the class period, and each class member without a proof of purchase is remunerated up to 10 products with a maximum claim range from $27.00 to $39.90.  Any amounts left in the fund will not revert to Trader Joe's, but rather will be distributed in the form of products to class members at Trader Joe's retail locations throughout the United States.  As of June 29, 2014, there were a total of 59,830 claims representing a total claim value of $1,906,884,75.  Atilus Supp. Decl. ¶¶ 2, 3.  Furthermore, based on the size of the claims, it is unlikely that the individual class members would have prevailed without the class-action mechanism.  The settlement also provides equitable relief in that Trader Joe's will stop using the disputed labels.  Because the settlement has resulted in discernible benefits to class members, this factor weighs in favor of approval.

### E.  Extent of Discovery Completed

This factor evaluates whether "the parties have sufficient information to make an informed decision about settlement."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).  The parties represent that the Settlement Agreement is the product of a thorough factual

United States District Court
Northern District of California

7

investigation into the merits of the claims through formal discovery, informal discovery, and investigative efforts.  Br. 9-10.  From this investigation, plaintiffs' counsel was able to adequately assess liability and damages and had sufficient information to make an informed decision about settlement.  *Id*.  This factor weighs in favor of approval.

### F.  The Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *Rodriguez*, 563 F.3d at 967 (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).  A district court is "entitled to give consideration to the opinion of competent counsel that the settlement [is] fair, reasonable, and adequate."  *Ching*, 2014 WL 2926210, at *6.  Plaintiffs' counsel has successfully represented consumers both as litigation class and settlement class counsel numerous times, including cases involving food mislabeling.  Br. 10.  Defendant is likewise represented by experienced litigators.  Both parties concur that the settlement is fair, and class counsel believes approval is in the best interests of the putative settlement class.  The opinions of counsel should be given considerable weight both because of counsel's familiarity with this litigation and previous experience with cases.  Therefore this factor weighs in favor of approval.

### G.  The Reaction of the Class Members to the Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *Nat'l Rural Telecomms.*, 221 F.R.D. at 529.  A court "may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it."  *Create–A–Card, Inc. v. Intuit, Inc.*, 2009 WL 3073920, at *15 (N.D. Cal. Sept. 22, 2009); *see also DIRECTV, Inc.*, 221 F.R.D. at 529.  Here, a total of a total of 59,830 class members have submitted claim forms, twenty-three have opted out, and sixteen have objected.  The participation rate and positive response of the class weighs in favor of finding that the settlement is favorable to the class members.  *Id*.  The fact that some members opted out also indicates that the class members read the notice and understood the settlement, such that they were able to make an informed decision whether to participate.

The objections filed with the Court do not undermine the fairness, reasonableness, and adequacy of the settlement. The objectors can be categorized into two groups. The first are individuals that are opposed to the lawsuit because it is unmeritorious in principle and who have asked me to dismiss it in its entirety. The second group consists of professional objectors who object to the substance of the settlement. The objections from each group are discussed below.[1]

### 1.   Objections to the Merits of the Litigation

Objectors Byron Remus, Gary Gill, Diane Atkins, Barbara Coffing, David Brook, Lacie Thorne, Aleta Arthur, Cathy MacKinney, Marj Kenny, and Shannon Koch each filed papers asserting the lawsuit was frivolous and requesting dismissal of the action instead of approving the settlement. Dkt. Nos. 84-91, 94, 105, 116.

My duty is to determine whether the settlement is fundamentally fair to the class, not to re-examine the underlying merits of the litigation. *Hanlon v. Chrysler Corp.*, 150 F.3d at 1026; *Dennis v. Kellogg Co.*, 2013 WL 6055326, at *3. I have already ruled in favor of the plaintiffs on Trader Joe's motion to dismiss and judgment on the pleadings. Dkt. Nos. 41, 52. While the ultimate outcome of the lawsuit, if it proceeded to trial, is unknown, my prior ruling confirms that plaintiffs had a good faith and adequate factual basis for filing suit.

Objections directed to the merits of the claim are objections on behalf of Trader Joe's and not the class. The objectors referenced above disagree with this lawsuit as a matter of principle. While I understand this perspective, in determining whether the settlement is fair, adequate and reasonable, I am not acting as a fiduciary to the defendant, which is represented by able counsel and capable of making decisions to protect its own interests. *Dennis*, 2013 WL 6055326, at *14. Trader Joe's decided to settle this matter and I cannot second-guess that decision. Accordingly, these objections are OVERRULED.

### 2.   The Remaining Objections Are Unmeritorious

Five class members, Dawn Weaver, Pamela Sweeney, Kerry Ann Sweeney, Patrick Sweeney, and Michael Narkin filed substantive objections to the settlement. Dkt. Nos. 98-102.[2]

---

[1] None of the objectors appeared at the hearing on this motion held on July 9, 2014.
[2] Nancy Pugleasa-Brown and Jeff Brown withdrew their objections. Dkt. Nos. 113, 114.

United States District Court
Northern District of California

1

2                        a.   Dawn Weaver

3              Dawn Weaver asserts four objections: (1) the bulk of the settlement compensation is likely

4     to be distributed in the form of products; (2) attorneys' fees should not be based on the gross

5     settlement; (3) the class representative fee is too high; and (4) the clear sailing provision is a red

6     flag.  Dkt. No. 98.[3]  Ms. Weaver asserts that "the percentage of class members who will submit

7     claims forms is likely to be low."  Dkt. No. 98 at 4.  This conjecture has not come to pass as the

8     claims rate exceeded 59,000 claims.  Ms. Weaver also argues that the distribution has

9     "no regard to whether the people accepting the products submitted claims forms or not" and that

10    settlement class members prefer cash and therefore it would have been better to have a second

11    distribution instead of a product distribution.  *Id.* at 5.  Neither contention has merit.  Under the the

12    Settlement Agreement, the limited product distribution will indicate that it is part of a class action

13    settlement designed to benefit customers who purchased the products at issue in the litigation.  As

14    discussed above, notice was provided through several channels and reached hundreds of thousands

15    of Trader Joe's customers.  Class members who desired cash had adequate notice to participate.

16    The product distribution represents left over funds that, rather than reverting to Trader Joe's, is

17    given back to the very customers who are purchasing the products at Trader Joe's stores

18    throughout the country.  While it is not what Ms. Weaver would prefer, it is well within the ambit

19    of reasonableness.  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) ("the question

20    whether a settlement is fundamentally fair . . . is different from the question whether the settlement

21    is perfect in the estimation of the reviewing court.").

22             Ms. Weaver's second, third, and fourth objections regarding the amount of attorneys' fees

23    sought by plaintiffs' counsel, the class representative fee, and the risk of collusion due to a "clear

24    _____

25    [3] Dawn Weaver is represented by Attorney Darrell Palmer, who courts have "widely and
      repeatedly criticized as a serial, professional, or otherwise vexatious objector."  *Dennis*, 2013 WL
26    6055326, at *4 n.2 (citations omitted).  Palmer has a history with other objectors in this case,
      giving the appearance that their objections have been collectively orchestrated.  *See* Lison Decl.,
27    Ex. 4.  Ms. Weaver's objections are similar to boilerplate objections made by Darrell Palmer that
      have been rejected by other courts.  *Id.*
28

United States District Court
Northern District of California

United States District Court
Northern District of California

1   sailing provision" in the Settlement Agreement are discussed below in the final *Churchill* factor in

2   section H, and in section II addressing the plaintiffs' fee motion.  As addressed below, plaintiffs'

3   counsel's requested fee is 28% of the $3,375,000 settlement fund, which is within the acceptable

4   range of similar requests made from a cash fund.  *Vizcaino*, 290 F.3d at 1047 (in common fund

5   cases, the "benchmark" award is 25% of the recovery obtained, with 20-30% as the usual range).

6                    b.   Pamela, Patrick, and Kerry Ann Sweeney

7          The Sweeneys' objections can be broken down into three parts.[4]  The first objection, set

8   forth by Pamela Sweeney, alleges that attorney's fees are excessive and a result of collusion

9   evidenced by a low claim rate.  As detailed above, the prediction that this settlement would suffer

10  from a low claim rate has not come true.  The second objection, set forth by Patrick Sweeney,

11  claims that I "should not award more than "20% of the class benefit" as attorney fees.  He echoes

12  concern over the existence of a clear sailing agreement and says attorneys' fees are "swollen."

13  This objection is addressed in detail below in section II.  The third objection comes from Kerry

14  Ann Sweeney, who claims that, "at the time objections were due parties who might not otherwise

15  object have not received any notice regarding the class action."  It is unclear how Ms. Sweeney

16  claims to be among those who did not receive notice of the settlement, yet made a timely

17  objection.  Rule 23 requires that the notice be the "best practicable under the circumstances."  Fed.

18  R. Civ. P. 23(c)(2)(B).  "For approval, the notice need not have been perfect."  *Browning v.*

19  *Yahoo! Inc.*, 2007 WL 4105971, at *7 (N.D. Cal. Nov. 16, 2007).  The notice disseminated in this

20  case was sent directly to over six hundred thousand people and transmitted on the internet and in

21  print to hundreds of thousands more.  As evidenced by the number of visits to the settlement

22  website and the claims rate, the settlement was widely known.  Accordingly, these objections are

23  OVERRULED.

24

25

26  _____

27  [4] Like Darrell Palmer, attorney Patrick Sweeney also has a long history of representing objectors
    in class action proceedings. Lison Decl. 6. While not formally appearing for

28  his wife and daughter here, Patrick Sweeney has previously represented them as objectors.  *Id.*

c.   Michael Narkin

Mr. Narkin's objection is based on three misplaced contentions.[5]  First, he claims there is no adequate showing that the settlement bears any relationship to the alleged damages.  The parties assert that the settlement represents 50% of Trader Joe's profits on the products at issue in the litigation.  Given the risks going forward, the nature of a compromise, and the fact that all of the class members who made claims will be compensated, the settlement value is fair.  Second, Mr. Narkin claims the parties' use of a protective order in this case is somehow indicative of collusion and that he, as a purported absentee class member, is entitled to view any document. Class members who object to a class action settlement do not have an absolute right to discovery. *In re Wachovia Corp. Pick-A-Payment Mortgage Mktg. & Sales Practices Litig.*, No. 09-cv-02015 PSG, 2011 WL 1496342, at *1 (N.D. Cal. Apr. 20, 2011).  "While objectors are entitled to meaningful participation in the settlement proceedings, and leave to be heard, they are not automatically entitled to discovery or to question and debate every provision of the proposed compromise." *Id.*  Discovery of settlement information "is proper only where the party seeking it lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive." *Lobatz v. U.S. West Cellular of California, Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000) (citation omitted).  Mr. Narkin does not provide authority to support his belief that objectors are entitled to seek documents, nor does identify any documents he believes were produced or why he would want to see them.[6]

Finally, Mr. Narkin alleges that "plaintiffs' counsel saw no need to engage in real

---

[5] Michael Narkin is a former attorney who resigned from the California Bar facing 16 counts of misconduct.  Lison Decl. Exs. 9-11. According to the San Jose Mercury News, after resigning from the Bar, Mr. Narkin set up the Saratoga University School of Law, "an Internet correspondence program where he served as dean and, from all appearances, faculty and administration." *Id.*  The newspaper article details complaints made by students that "Narkin took tuition up front and then did little in return." *Id.*  The law school was eventually stripped of its license by the State of California.  Mr. Narkin has objected to other class action settlements in the past. *Id.* Ex. 12.

[6] Plaintiffs' counsel stated at the hearing that she asked Mr. Narkin to appear and discuss this particular objection with defendant's counsel and myself, but he refused.  Plaintiff's counsel also offered to allow Mr. Narkin to review documents *in camera*, but he refused.

1    discovery to determine what the case was worth.  Instead, they were free to discuss attorney fees

2    without the bother of having to be adversaries . . . ." Dkt. No 102.  Mr. Narkin's objection appears

3    to be based on his belief that the parties colluded.  As I conclude in section H below, there is no

4    evidence of collusion.

5           Accordingly, Mr. Narkin's objections are OVERRULED.

6        **H.  Absence of Collusion**

7           Given that this settlement was reached prior to certification of the class, I must examine the

8    settlement for evidence of collusion with a higher level of scrutiny.  *Bluetooth*, 654 F.3d at 946.

9    In conducting such an examination, courts must be "particularly vigilant not only for explicit

10   collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-

11   interests and that of certain class members to infect the negotiations."  *Id*.  Signs of collusion

12   include: (1) a disproportionate distribution of the settlement to counsel; (2) negotiation of a "clear

13   sailing provision" where under which defendants agree not to oppose an attorneys' fee award up to

14   a certain amount; and (3) when the parties arrange for fees not awarded to revert to defendants

15   rather than be added to the class fund."  *Id*. at 947.

16          Under the first *Bluetooth* factor, the estimated class payout of $1,906,884.75 is more than

17   double plaintiffs' counsel's requested $950,000.00 award.  This amount is 28% of the settlement

18   fund, which, as explained in further detail below, is within the range found acceptable by the

19   Ninth Circuit.  *Vizcaino*, 290 F.3d at 1047.  Therefore the first factor weighs against a finding of

20   collusion.  *Compare Bluetooth*, 654 F.3d at 938 (settlement agreement provided class $100,000 in

21   *cy pres* awards and zero dollars for economic injury, while setting aside up to $800,000 for class

22   counsel and $12,000 for class representatives).  Under the second factor, clear sailing provisions

23   generally do not raise concerns where, as here, the fees are to come from the settlement fund.

24   *Rodriguez*, 563 F.3d at 961 n. 5 (collusion generally inferred from "clear sailing" provision where

25   attorneys' fees are paid on top of the settlement fund).  This amount was also agreed to after three

26   rounds of mediation in front of a well-respected neutral and acceptance of a mediator's proposal,

27   which further weighs against a finding of collusion.  As to the third factor, the Settlement

28   Agreement provides that unclaimed fees do not revert to Trader Joe's, but will be distributed to

United States District Court
Northern District of California

13

1    class members through a product distribution in Trader Joe's stores.

2            All of the *Churchill* factors support the finding that the settlement should be approved.

3    The only *Bluetooth* factor present, the existence of a "clear sailing" provision, will not affect the

4    class because, as discussed below, I shall award the requested 28% attorneys' fees, an amount

5    within the acceptable range in this Circuit.  I also find that the settlement is the product of arms-

6    length mediation between experienced and professional counsel.  Therefore the motion for final

7    settlement approval is GRANTED.

8    **II.  ATTORNEYS FEES, COSTS, AND INCENTIVE AWARDS**

9            Plantiffs' counsel seeks an award of $950,000.00, which is 28% of the $3,375,000.00

10   settlement fund created pursuant to the Settlement Agreement.  Fee Mtn. at 3-4.  Plaintiffs'

11   counsel collectively spent 1,759 hours on this case, representing a lodestar of $958,975.50, and

12   incurred $62,792.86 in costs.  *See Id.*; Braun Supp. Decl. ¶ 8..  The plaintiffs also seek $2,500

13   incentive awards for class representatives Tamar Davis Larsen and Aran Eisenstat.

14       **A.  Fees**

15           The Ninth Circuit has established 25% of a common fund as a benchmark award for

16   attorney fees. *Vizcaino*, 290 F.3d at 1047 (in common fund cases, the "benchmark" award is 25%

17   of the recovery obtained, with 20-30% as the usual range).  The "benchmark percentage should be

18   adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the

19   percentage recovery would be either too small or too large in light of the hours devoted to the case

20   or other relevant factors." *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311

21   (9th Cir. 1990).  The court's selection of the benchmark or any other rate must be supported by

22   findings that take into account all of the circumstances of the case, including: (1) the result

23   achieved; (2) the risk involved in the litigation; (3) the skill required and quality of work by

24   counsel; (4) the contingent nature of the fee; and (5) awards made in similar cases.  *Vizcaino*, 290

25   F.3d at 1048-50.  Additionally, even when applying the percentage method, the court should use

26   the lodestar method as a cross-check to determine the fairness of the fee award.  *Covillo v.*

27   *Specialtys Café*, 2014 WL 954516, at *6 (N.D. Cal. March 6, 2014) (citing *Vizcaino*, 290 F.3d at

28   1050).  "The lodestar cross-check calculation need entail neither mathematical precision nor bean

United States District Court
Northern District of California

14

1  counting . . . . [courts] may rely on summaries submitted by the attorneys and need not review

2  actual billing records." *Id*. (citation omitted).

3        With respect to the first factor, the overall result and benefit to the class from the litigation

4  is the most critical factor in granting a fee award. *In re Omnivision Technologies, Inc.*, 559

5  F.Supp.2d 1036, 1046 (N.D. Cal. 2008) (citation omitted).  Here, the results achieved in this case

6  were favorable considering the significant challenges plaintiffs would have faced in maintaining

7  this litigation.  Even with an award of the full amount requested, $950,000, the fund is sufficient to

8  compensate all of the 59,830 class members who have made claims.  Class members who have

9  made claims will receive cash.  Any amounts left in the fund will be distributed in the form of

10  products to class members at Trader Joe's retail locations.  The Settlement Agreement also

11  provides the equitable relief that Trader Joe's will stop using the disputed labels.  These are

12  significant benefits to the class.  *Vizcaino*, 290 F.3d at 1049 (affirming fee award where settlement

13  generated benefits beyond cash settlement fund).

14        As to the second factor, the risks of litigation were real and substantial, particularly with

15  respect to class certification.  With respect to the third factor, the complexity and potential

16  duration of the case, coupled with the lengthy settlement negotiations, also weighs in favor of

17  departing from the 25% benchmark.  As to the fourth factor, plaintiffs' counsel took this case on a

18  contingent fee basis and had to forego other financial opportunities to litigate it.  Courts have

19  recognized that the public interest is served by rewarding attorneys who assume representation on

20  a contingent basis with an enhanced fee to compensate them for the risk that they might be paid

21  nothing for their work.  *See In re Washington Public Power Supply System Sec. Litig*., 19 F.3d

22  1291, 1299 (9th Cir. 1994); *Vizcaino*, 290 F.3d at 1050; *In re Omnivision*, 559 F. Supp.2d at 1047.

23  With respect to the fifth factor, the request for attorneys' fees in the amount of 28% of the

24  common fund falls within the range of acceptable attorneys' fees in Ninth Circuit cases.  *See*

25  *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (noting that "[t]he

26  typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total

27  settlement value, with 25% considered the benchmark"); *In re Pacific Enterprises Sec. Litig*., 47

28  F.3d at 379 (affirming fee award equal to 33% of fund); *Garner*, 2010 WL 1687829 (awarding fee

United States District Court
Northern District of California

15

1    of 30%); *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1375 (N.D. Cal. 1989) (32.8% fee);

2    *Linney*, 1997 WL 450064, * 7 (N.D. Cal. July 18, 1997) (33.3% fee); *Vizcaino*, 290 F.3d at 1047

3    (28% fee award).

4           I have also performed a lodestar cross check and find that it supports the requested

5    contingency-fee percentage.  Plaintiffs' counsel has devoted 1,759 hours of time during the three-

6    year litigation of this case, for which they accrued $958,975.50 in attorneys' fees.  This is

7    $8,975.50 over the award they seek.  During that time plaintiffs' counsel engaged in formal and

8    informal discovery, successfully defeated a motion to dismiss and motion for judgment on the

9    pleadings, engaged in three rounds of mediation, drafted the preliminary approval and related

10   settlement documents, and supervised the settlement administration.  Fee Mtn. at 14-15.

11   Plaintiffs' counsel's hourly rates are also reasonable and in line with those prevailing in the

12   community for similar services by lawyers of comparable skill, experience, and reputation.  *Blum*

13   *v. Stenson*, 465 U.S. 886, 895 (1994).  Plaintiffs' counsel's rates used in calculating the lodestar

14   have been approved by other judges in this District.  Braun Decl. 22-25.  The fee request is

15   reasonable and appropriate under the lodestar method.

16          **B.  Costs**

17          Class counsel is entitled to reimbursement of reasonable expenses.  FED. R. CIV. P. 23(h);

18   *see also Van Vranken*, 901 F.Supp. 294, 299 (N.D. Cal. 1995).  The expenses advanced by

19   plaintiffs' counsel to prosecute this litigation totals $62,792.86.  The categories of expenses for

20   which plaintiffs' seek reimbursement are the type of expenses routinely charged to hourly clients,

21   and therefore the full amount should be reimbursed.  *In re Media Vision*, 913 F. Supp. 1362, 1367-

22   72 (N.D. Cal. 1996) (costs related to experts, photocopying, legal research fees, travel expenses,

23   postage, and filing fees may be reimbursed).  These costs are reasonable.

24          **C.  Incentive Award**

25          At its discretion, a court may award incentive or service awards to named plaintiffs to

26   compensate them for work done on behalf of the class and in consideration of the risk undertaken

27   in bringing the action.  *Rodriguez*, 563 F.3d at 958–59.  In this District, a $5,000 incentive award

28   is presumptively reasonable.  *Pierce v. Rosetta Stone, Ltd.*, 2013 WL 5402120, at *6 (N.D. Cal.

United States District Court
Northern District of California

16

1   Sep. 26, 2013) (citations omitted);  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir.

2   2000)(approving incentive awards of $5,000 each to two class representatives of 5,400 potential

3   class members in a settlement of $1.725 million).  The requested incentive payment of $2,500 for

4   each of the two plaintiffs who served as class representatives is reasonable.

5                                                **CONCLUSION**

6          For the reasons above, the settlement is fair, reasonable, and adequate.  I accordingly

7   GRANT final approval of the settlement, GRANT plaintiffs' fees motion, and enter judgment

8   according to the Final Order and Judgment filed concurrently herewith.

9          **IT IS SO ORDERED**.

10  Dated: July 11, 2014

11  

12  WILLIAM H. ORRICK
    United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

17